SHORT RECORD
NO. 26-8010
FILED 04/10/2026

# United States Court of Appeals

*for the*

# Seventh Circuit

Case No. 26-_____

MATTHEW DALY, on behalf of himself
and all others similarly situated,

*Plaintiff-Petitioner,*

– v. –

WEST MONROE PARTNERS INC., *et. al.*,

*Defendants-Respondents.*

ON PETITION FOR PERMISSION TO APPEAL FROM
THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, NO. 21-CV-6805
THE HONORABLE JOHN ROBERT BLAKEY, JUDGE PRESIDING

## PETITION FOR PERMISSION TO APPEAL PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23(f)

CHARLES FIELD
MYOUNGHEE CHOUNG
SANFORD HEISLER SHARP MCKNIGHT, LLP
7911 Herschel Avenue, Suite 300
La Jolla, California 92037
(619) 577-4253

MATTHEW J. SINGER
MATT SINGER LAW, LLC
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
(312) 248-9123

RUSSELL L. KORNBLITH
SANFORD HEISLER SHARP MCKNIGHT, LLP
17 State Street, Suite 3700
New York, New York 10004
(646) 402-5650

*Attorneys for Plaintiff-Petitioner*

CP COUNSEL PRESS      (800) 4-APPEAL • (625142)

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: Daly v. West Monroe Partners, Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐  **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 Matthew Daly
_____

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Sanford Heisler Sharp McKnight, LLP

 Matt Singer Law, LLC

(3)  If the party, amicus or intervenor is a corporation:

   i)  Identify all its parent corporations, if any; and

     N/A

   ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

     N/A

(4)  Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

   N/A

(5)  Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

   N/A

---

Attorney's Signature: /s/ Matthew J. Singer     Date: 4/10/2026

Attorney's Printed Name:  Matthew J. Singer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☑  No ☐

Address:  77 W. Wacker Dr., Suite 4500

 Chicago, IL 60601

Phone Number:  (312) 248-9123     Fax Number: _____

E-Mail Address: matt@mattsingerlaw.com

Save As      Clear Form

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: Daly v. West Monroe Partners, Inc.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  Matthew Daly

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  Sanford Heisler Sharp McKnight, LLP

  Matt Singer Law, LLC

(3)    If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

        N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/ Russell L. Kornblith     Date: 4/10/2026

Attorney's Printed Name: Russell L. Kornblith

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐  **No** ☑

Address: 17 State Street, Floor 37

  New York, NY 10004

Phone Number: 646-402-5646     Fax Number: 646-402-5651

E-Mail Address: rkornblith@sanfordheisler.com

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: _____

Short Caption: Daly v. West Monroe Partners, Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Matthew Daly

_____

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Sanford Heisler Sharp McKnight, LLP

Matt Singer Law, LLC

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Charles Field     Date: 4/10/2026

Attorney's Printed Name: Charles Field

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☑

Address: 7911 Herschel Avenue, Suite 300

La Jolla, CA 92037

Phone Number: 619-577-4252     Fax Number: 646-402-5651

E-Mail Address: cfield@sanfordheisler.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: _____

Short Caption: Daly v. West Monroe Partners, Inc.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

   ☐   **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  Matthew Daly

  _____

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  Sanford Heisler Sharp McKnight, LLP

  Matt Singer Law, LLC

(3)   If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

      N/A

    ii)   list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

      N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/ Myounghee Choung     Date: 4/10/2026

Attorney's Printed Name: Myounghee Choung

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: 7911 Herschel Avenue, Suite 300

  La Jolla, CA 92037

Phone Number: 619-859-6801     Fax Number: 646-402-5651

E-Mail Address: dchoung@sanfordheisler.com

# TABLE OF CONTENTS

Statement of the Case ..............................................................................1

Factual Background ...............................................................................2

Procedural History.................................................................................3

Jurisdictional Statement ........................................................................6

Statement of the Issues Presented for Review ......................................6

Summary of the Argument.....................................................................6

Standard of Review................................................................................7

Argument ...............................................................................................8

    I.    This Court's Precedents, and Those of Every Circuit to Consider the Issue, Reject Class-Action Waivers in ERISA Cases for Plan-Wide Relief....................................................................................9

    II.    Enforcing Class Waivers Is Inconsistent With ERISA.................14

        A.  ERISA § 502(a)(2) Creates a Statutory Remedy for Plan-Wide Relief. ................................................................................15

        B.  The Class Action Waivers at Issue Conflict with ERISA's Statutory Remedies for Plan-Wide Relief. ...................................18

    III.    The District Court's Ruling Leaves Ambiguity as to the Law and the Remedies Available Here. ........................................................20

A.   Sections 502(a)(2) and 409(a) Do Not Provide a Claim for Recovery to a Participant's Individual Account Where Fiduciary Breaches Injure the Plan as a Whole. ...........................21

B.   The Class Action Waiver Interferes with Non-Monetary Plan-wide Relief. .........................................................................22

IV.   The Relief Plaintiff Seeks Is Plan Wide, So Rule 23(b)(1) Mandates Inclusion of the 33 Participants Who Signed Waivers. ........23

Requested Relief ...........................................................................................26

I.   Grant the petition and order the 33 participants included in the Class ....................................................................................26

II.   Hold that class/multiparty waivers are unenforceable in this context.........................................................................................26

III.   Order an expedited schedule........................................................27

Conclusion......................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.,*
    725 F.3d 803 (7th Cir. 2013)...............................................................................8

*Am. Exp. Co. v. Italian Colors Rest.,*
    570 U.S. 228 (2013) ...........................................................................................14

*Blair v. Equifax Check Servs., Inc.,*
    181 F.3d 832 (7th Cir. 1999)...............................................................................8

*Brieger v. Tellabs, Inc.,*
    245 F.R.D. 345 (N.D. Ill. 2007) .......................................................................24

*Cedeno v. Sasson,*
    100 F.4th 386 (2d Cir. 2024)..............................................................................13

*Comer v. Micor, Inc.,*
    436 F.3d 1098 (9th Cir. 2006).............................................................................15

*Duke v. Luxottica U.S. Holdings Corp.,*
    167 F.4th 16 (2d Cir. 2026)................................................................................13

*Fish v. Greatbanc Trust Co.,*
    667 F. Supp. 2d 949 (N.D. Ill. 2009) ...............................................................17

*Harrison v. Envision Mgmt. Holding, Inc.,*
    59 F.4th 1090 (10th Cir. 2023) ..........................................................................13

*Henry v. Wilmington Tr.,*
    72 F.4th 499 (3d Cir. 2023)................................................................................13

*Koerner v. Copenhaver,*
    No. 12-1091, 2014 WL 5544051 (C.D. Ill. Nov. 3, 2014).........................17

*LaRue v. DeWolff, Boberg & Assocs., Inc.,*
    552 U.S. 248 (2008) ..................................................................................... passim

*Mass. Mut. Life Ins. Co. v. Russell,*
    473 U.S. 134 (1985) ........................................................................ 10, 15, 16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985) ...........................................................................................11

*Neil v. Zell*,
275 F.R.D. 256 (N.D. Ill. 2011) ........................................................ 17, 25

*Parker v. Tenneco, Inc.*,
114 F.4th 786 (6th Cir. 2024) ...................................................................13

*Parrott v. Int'l Bancshares Corp.*,
167 F.4th 728 (5th Cir. 2026) ...................................................................13

*Platt v. Sodexo*,
148 F.4th 709 (9th Cir. 2025) ...................................................................13

*Reliable Money Ord., Inc. v. McKnight Sales Co. Inc.*,
704 F.3d 489 (7th Cir. 2013)......................................................................8

*Smith v. Bd of Dirs of Triad Mfg, Inc.*,
13 F.4th 613 (7th Cir. 2021) ..........................................................passim

*Williams v. Shapiro*,
161 F.4th 1313 (11th Cir. 2025) ...............................................................13

**Statutes**

28 U.S.C. § 1292(e) ......................................................................................6
28 U.S.C. § 1331...........................................................................................6
29 U.S.C. § 1001 *et seq.*..............................................................................2
29 U.S.C. § 1002(2) ......................................................................................2
29 U.S.C. § 1003(a) ......................................................................................2
29 U.S.C. § 1109(a) .......................................................................... 10, 15, 21
29 U.S.C. § 1132(a)(2) ......................................................................passim
29 U.S.C. § 1132(a)(3) ....................................................................... 3, 6, 23
29 U.S.C. § 1132(e)(1) ..................................................................................6

**Rules**

Fed. R. Civ. P. 23(a) ....................................................................................4
Fed. R. Civ. P. 23(b)(1) .....................................................................passim
Fed. R. Civ. P. 23(f) ..........................................................................passim

## STATEMENT OF THE CASE

This Rule 23(f) petition seeks review of the district court's decision to exclude 33 proposed class members from a certified 113-person class seeking plan-wide relief for violations of the Employee Retirement and Income Security Act of 1974 ("ERISA"). These 33 ERISA plan participants signed agreements purporting to waive "any right . . . to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party." A-27.

These agreements, however, prohibit relief that ERISA expressly permits, namely, plan-wide relief for breaches of fiduciary duty. This relief includes removal of the plan's fiduciaries and monetary relief to make the plan whole for such breaches. The agreements are, therefore, invalid under the effective vindication doctrine articulated in *Smith v. Board of Directors of Triad Manufacturing, Inc.*, 13 F.4th 613, 620–22 (7th Cir. 2021). Accordingly, Plaintiff asks this Court to grant the Rule 23(f) petition and order that the district court's class definition should be expanded to encompass the 33 signatories of the invalid class-action waivers.

# FACTUAL BACKGROUND

Plaintiff Matthew Daly brought this action on behalf of the West Monroe Employee Stock Ownership Plan (the "Plan") and 145 other former employees of consulting firm West Monroe Partners, Inc. ("West Monroe" or the "Company"). A-1. The 146 proposed class members were participants in the Plan, a defined contribution plan within the meaning of ERISA, 29 U.S.C. § 1001 *et seq.*, ERISA § 3(2), 29 U.S.C. § 1002(2), and governed under ERISA § 4(a), 29 U.S.C. § 1003(a). *Id.* The Plan held Company stock in a trust, and shares were allocated to members of the proposed class during their tenure as employees of West Monroe in compensation for their employment. *Id.*

The Plan's trustee, Defendant Argent Trust Company, conducted annual valuations of the Company stock held in the Plan. A-2. West Monroe then used these valuations to cash out the shares of departing employees. *Id.*

In April 2021, Argent valued Company stock at $515.18 per share as of December 31, 2020. *Id.* It used this valuation to cash out 146 employees who, like Plaintiff, departed the Company in 2020. *Id.* In September 2021, the Company repurchased those shares at the $515.18 per share valuation. *Id.*

2

On October 5, 2021, West Monroe sold 50% of the Company to a private equity firm for approximately $1,616 per share—an amount more than triple the valuation paid to members of the proposed class merely three weeks earlier. A-2-3. In November 2021, West Monroe terminated the Plan, cashed out its remaining participants at $1,616 per share, and distributed the proceeds of approximately 564,000 more unallocated shares to the remaining participants. A-3.

West Monroe did not tell Plaintiff or the proposed class about the pending sale transaction, nor that the market value of Company stock was roughly triple the price they received. *Id.*

## **PROCEDURAL HISTORY**

In December 2021, Plaintiff filed this lawsuit alleging violations of ERISA, including breaches of fiduciary duties. A-34–35, 38, 66, 69–75, 77–78. He sought to bring this action as a representative of the affected class of 146 participants, and on behalf of the Plan under ERISA § 502, 29 U.S.C. §§ 1132(a)(2) and (3). A-36. The proposed class included all 146 Plan participants whose shares were redeemed at $515.18 per share. A-35–36, 66.

The district court certified the Class under Federal Rule of Civil Procedure 23(b)(1), as is typical for ERISA claims. A-1, 25, 27, 33. It found the Rule 23(a) requirements met. A-7–8. Defendants did not contest numerosity, commonality, and typicality, and, based on a reasoned and thorough review of the record, the district court rejected Defendants' challenges to Plaintiff's adequacy. *See* A-6–15.

The district court then established the applicability of ERISA §§ 502(a)(2) and 409. It traced the case law on both provisions and held that certification is appropriate, because "Plaintiff (along with the proposed Class members) alleges a reduction in value of his defined contribution accounts resulting from Defendants' alleged breach of their fiduciary duties." A-22.

Finally, the district court held that the case qualifies for certification under Rule 23(b)(1)(A) and (B). It explained that "because Plaintiff and the proposed Class bring the same claim against Defendants alleging they breached their fiduciary duties in the same course of conduct and prosecution of separate actions by various Plaintiffs would create a risk of inconsistent or varying adjudications with respect to individual members of

the class, . . . certification under Rule 23(b)(1)(A) [is] appropriate." A-26 (internal quotation marks omitted). And the district court further reasoned that "should Plaintiff succeed in showing that Defendants breached their fiduciary duties in cashing out Plan participant shares at the 2020 Valuation in September 2021, that determination 'would be dispositive of the interests of the other members not parties to the individual adjudications,' and thus Rule 23(b)(1)(B) remains satisfied." A-27.

Nonetheless, the district court excluded 33 would-be participants from the certified Class. These 33 signed severance agreements that putatively waived "any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party." A-27; A-84. It reasoned that because the waiver did not, on its face, foreclose Plan-wide remedies, it remained enforceable. A-30.

This Rule 23(f) petition follows.

## JURISDICTIONAL STATEMENT

This action arises under 29 U.S.C. §§ 1132(a)(2) and (3). The district court has subject matter jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. This Court has jurisdiction over this petition under 28 U.S.C. § 1292(e), because this appeal arises from an order entered on March 27, 2026, granting in part and denying in part class certification under Federal Rule of Civil Procedure 23(b)(1). Plaintiff timely filed this Rule 23(f) petition on April 10, 2026.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the effective vindication doctrine forbids an ERISA plan sponsor from foreclosing plan-wide remedies available under ERISA by including a class waiver in severance agreements signed by plan participants.

## SUMMARY OF THE ARGUMENT

The 33 class action waivers at issue contravene the right of Plaintiff, the Class, and the 33 Plan participants to seek Plan-wide relief, including for Defendants' breaches of fiduciary duties. This Court has previously held that an agreement that "precludes relief that has the purpose or effect of

providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant" is invalid. *Smith*, 13 F.4th at 615, 621 (internal quotation marks omitted). Such an agreement "prohibits relief that ERISA expressly permits," and is therefore invalid under the effective vindication doctrine. *Id.* at 615.

The 33 agreements here suffer from the same deficiency: They prohibit Plaintiff and the 33 signatories from obtaining Plan-wide relief that ERISA authorizes, including removal of the Plan's fiduciaries and monetary relief to make the Plan whole for *all of* Defendants' breaches. Enforced according to its terms, the district court's order could deny Plaintiff and the Plan the relief that ERISA provides. *Smith* prohibits this outcome, and this Court must therefore intercede to clarify its case law on this point, ensure that ERISA's plan-wide remedies are not vitiated by private agreement, and fulfill congressional intent to ensure full relief for the whole Plan.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 23(f) provides that "[a] court of appeals may permit an appeal from an order granting or denying class-

action certification." The Seventh Circuit has held that such appeals are appropriate to "facilitate the development of the law. . . . [T]he more fundamental the question and the greater the likelihood that it will escape effective disposition at the end of the case, the more appropriate is an appeal under Rule 23(f)." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 835 (7th Cir. 1999).

The Court reviews a denial of a motion for class certification for an abuse of discretion. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 809 (7th Cir. 2013) (citation omitted). Abuse of discretion results when a district court commits legal error or makes clearly erroneous factual findings. *Reliable Money Ord., Inc. v. McKnight Sales Co. Inc.*, 704 F.3d 489, 498 (7th Cir. 2013) (citation omitted).

## ARGUMENT

The petition addresses a critical legal issue: the enforceability of class/multiparty waivers that may foreclose plan-wide ERISA remedies. Resolving this issue will determine whether a mandatory ERISA class may

proceed as a cohesive whole. Immediate review is necessary to restore a unified class and avoid incompatible standards or piecemeal adjudications.

The district court's order enforces waivers that prevent participation in representative proceedings and in suits against multiple fiduciaries. As *Smith* explains, provisions that preclude plan-wide relief, such as fiduciary removal, are invalid, because they foreclose remedies expressly contemplated by ERISA § 409(a). 13 F.4th at 615, 621–22. A multi-circuit consensus holds that such waivers violate the effective vindication doctrine and § 410(a). *See infra* Section I. This Court's guidance is needed to prevent fragmentation of plan-wide remedies through private waivers and to fulfill congressional intent.

I. **This Court's Precedents, and Those of Every Circuit to Consider the Issue, Reject Class-Action Waivers in ERISA Cases for Plan-Wide Relief.**

ERISA protects the financial integrity of retirement plans. The express language of the statute authorizes plan participants to pursue claims *on behalf of the plan* to recover for injuries to the plan that flow from breaches of the duties of plan fiduciaries. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2);

9

ERISA § 409(a), 29 U.S.C. § 1109(a). The statutory remedies include recovery of *all plan-wide losses*, profits, and other such equitable relief. ERISA § 409(a). Addressing concerns "with the possible misuse of plan assets," ERISA's drafters crafted a statutory scheme to include "remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985).

In *Smith v. Board of Directors of Triad Manufacturing*, this Court considered an arbitration provision—there contained in the ERISA plan—that "preclude[d] a participant from seeking or receiving relief that 'has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant.'" 13 F.4th at 621. This Court held the provision unenforceable. *Id.* at 620. It explained that "the problem with the plan's arbitration provision is its prohibition on certain plan-wide remedies." *Id.* at 622. And it further reasoned that by foreclosing plan-wide remedies, such as the removal of a fiduciary, the provision violated the effective vindication doctrine, which prohibits "prospective waiver of a party's right to pursue statutory remedies."

10

*Id.* at 621 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).

The *Smith* plaintiff sought, among other things, "[r]emoval of a fiduciary—a remedy expressly contemplated by § 1109(a)." 13 F.4th at 617, 621. The *Smith* court held that because such relief "would go beyond just [Plaintiff] Smith and extend to the entire plan," the waiver that putatively forbade Smith from seeking such relief was invalid. *Id.* at 621–22.

Plaintiff sought the same relief here: "remov[al] [of] the fiduciaries who have breached their fiduciary duties and enjoin[ing] them from future unlawful conduct," as well as other Plan-wide relief, including monetary relief to make the Plan whole for Defendants' breaches of fiduciary duty in connection with the private equity sale. A-78.

And Defendants' waivers here fail for the same reasons that the arbitration provision in *Smith* did: They would prohibit the Plan from obtaining such full relief. And they would also prohibit actions against multiple defendants, which here include the Plan's sponsors and its trustees.

That Defendants here have framed their waivers in terms of "participat[ion] in any putative or certified class," does not change the result. A-27. These waivers, like the provision at issue in *Smith*, appear to prohibit either the 33 signers or Plaintiff—who is not a signatory to such an agreement—from seeking full plan wide relief, including the removal of fiduciaries from the Plan and recovery of the Plan's losses. Participation, as Defendants here frame it, is of course antecedent to "receiving relief" as the *Smith* defendants framed it; plaintiffs in *Smith* would have received relief only because of participation in the class. The conflict between ERISA and class waivers identified by *Smith* cannot be overcome through such a drafting sleight of hand: Unless Plaintiff and the other Plan participants may seek full plan-wide relief—including removal of the fiduciaries and recovery of all Plan losses sustained in connection with the private equity sale (which would include losses affecting the accounts of the 33 signers), the class action waivers here fail for the same reasons as the *Smith* provision. *See* 13 F.4th at 622 (finding that the unenforceable provision would preclude ERISA remedies with a "plan-wide effect," and rejecting the defendants' "flaw[ed]"

contention that "individualized arbitration can provide Smith and other plan participants all the relief available to them under ERISA"). Both prohibit full plan-wide relief. *Id.*

The Seventh Circuit is not unique in striking down agreements that limit plan-wide remedies. The Second, Third, Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits have all struck down provisions that would limit plan-wide remedies. *See Cedeno v. Sasson*, 100 F.4th 386 (2d Cir. 2024); *Duke v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16 (2d Cir. 2026); *Henry v. Wilmington Tr.*, 72 F.4th 499 (3d Cir. 2023); *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728 (5th Cir. 2026); *Parker v. Tenneco, Inc.*, 114 F.4th 786 (6th Cir. 2024); *Platt v. Sodexo*, 148 F.4th 709 (9th Cir. 2025); *Harrison v. Envision Mgmt. Holding, Inc.*, 59 F.4th 1090 (10th Cir. 2023); *Williams v. Shapiro*, 161 F.4th 1313 (11th Cir. 2025).

That these cases arose in context of arbitration agreements does not alter the conclusion that ERISA's statutory remedies cannot be prospectively waived by contract. As the Supreme Court explained the effective vindication doctrine, "the exception finds its origin in the desire to prevent

prospective waiver of a party's *right to pursue* statutory remedies . . . . That would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013) (internal quotation marks omitted) (emphasis in the original). In other words, the effective vindication doctrine is broader than arbitration; it covers any contractual provision that would affect "prospective waiver of a party's *right to pursue* statutory remedies." *Id.* By forbidding Plaintiff from seeking relief for the 33 proposed class members, the class waivers preclude full Plan-wide relief. The agreements thus fail for the same reasons as the provision at issue in *Smith*: They violate the effective vindication doctrine.

## II. Enforcing Class Waivers Is Inconsistent With ERISA.

Plan-wide relief is a statutory remedy under ERISA. ERISA says that a claim for breach of fiduciary duty can be brought only on behalf of the Plan. And full relief for losses resulting from fiduciary breaches is a Plan-wide remedy.

### A.   *ERISA § 502(a)(2) Creates a Statutory Remedy for Plan-Wide Relief.*

ERISA § 409(a) creates fiduciary liability and § 502(a)(2) authorizes enforcement of fiduciary duties through representative actions brought on behalf of an ERISA plan. 29 U.S.C. §§ 1109(a), 1132(a)(2). The two sections work together to provide a statutory right to recover plan-wide monetary relief. A participant's claim for fiduciary breach is representative on behalf of the plan, and the plan is to recover all losses and profits due to the plan from the breach. *See, e.g.*, *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256, 260–63 (2008). (Thomas, J., concurring); *Russell*, 473 U.S. at 140, 142 & n.9.

Section 409(a) establishes fiduciary liability for breaches "with respect to a plan." 29 U.S.C. § 1109(a). Courts are clear: Any recovery for a § 409 violation "inures to the benefit of the plan as a whole." *Russell*, 473 U.S. at 140; *see also Comer v. Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006) (stating that "money recovered on the ERISA claim would go to the plan"). Section 502(a)(2) provides that a claim for "appropriate relief under [§ 409(a)]" may be brought by the Secretary of Labor, or by a participant, beneficiary, or

fiduciary. 29 U.S.C. § 1132(a)(2). The common interest shared by these four classes is "in the financial integrity of the plan," and the list embodies congressional intent for fiduciary breach claims to be brought "in a representative capacity on behalf of the plan as a whole." *Russell*, 473 U.S. at 142 n.9; *see also LaRue*, 552 U.S. at 253.

Section 409(a) does not permit individual claims. "The plain text of § 409(a), which uses the term 'plan' five times, leaves no doubt that § 502(a)(2) authorizes recovery only for the plan. Likewise, Congress' repeated use of the word 'any' in § 409(a) clarifies that the key factor is whether the alleged losses can be said to be losses 'to the plan'" *LaRue*, 552 U.S. at 261 (Thomas, J., concurring). Thus, "[o]n their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach." *Id*. (emphasis in the original). Once losses are restored to the Plan, these assets are held in trust and legally owned by the Plan trustee. The Plan trustee must then determine how and to whom these assets are distributed.

Courts nonetheless certify class actions for claims brought under Federal Rule of Civil Procedure 23 (and typically Rule 23(b)(1)),

> because recovery for a breach of the fiduciary duty owed to an ERISA plan . . . will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole . . . a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs.

A-15 (quoting *Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011)). Class certification ensures efficient and consistent enforcement of the class's rights. *See, e.g., Koerner v. Copenhaver*, No. 12-1091, 2014 WL 5544051, at *3 (C.D. Ill. Nov. 3, 2014) ("Although parties bringing claims pursuant to ERISA § 502(a)(2) need not include class allegations, courts have held that plaintiffs bringing claims pursuant to it must 'take procedural steps to ensure the protection and adequate representation of absent plan participants.'") (citation omitted); *Fish v. Greatbanc Trust Co.*, 667 F. Supp. 2d 949, 952 (N.D. Ill. 2009) (holding that although Rule 23 certification is not required, the representative action "must be structured in a manner that will bind *all* [p]lan participants") (emphasis in the original). Class certification also ensures that if plaintiff is successful in recovering on behalf of the plan, a mechanism exists to ensure the just distribution of the recovered proceeds,

17

which would otherwise be paid into the plan and subject to distribution by the plan's fiduciaries.

The claims Plaintiff Daly brings against Defendants align with the unambiguous language of §§ 502(a)(2) and 409(a). A-4, 26–27, 38, 71–73, 78–79. Plaintiff Daly's § 502(a)(2) claims are representative actions on behalf of the Plan, not collective claims brought on behalf of other participants. Indeed, no class action is arguably even necessary for Plaintiff Daly to seek Plan-wide recovery.

>  **B.** **The Class Action Waivers at Issue Conflict with ERISA's Statutory Remedies for Plan-Wide Relief.**

The waivers at issue here, however, would interfere with this statutory regime. They purport to prohibit "any right or ability . . . to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party." A-27, 84. Read according to their terms, the agreements would constrain the certified class in at least two ways:

_First_, if, as ERISA allows, Plaintiff Daly is successful in obtaining replacement of the Plan's fiduciaries, the 33 Plan participants who signed

waivers may not be permitted to participate in this relief, leaving the Plan with two sets of fiduciaries—one responsible to the certified Class and another to the remaining 33 Plan participants who nonetheless experienced fiduciary breaches. This result is obviously as untenable as it sounds. And that is why *Smith* invalidated a similar provision. *See* 13 F.4th at 622.

*Second*, Plaintiff Daly may be denied the right to seek the Plan-wide monetary relief that § 409(a) establishes for fiduciary breaches, namely, recovery for *all* of the Plan's losses—including the underpayments attributable to shares held by the 33 Plan participants the district court excluded from its class definition. Denying Plaintiff Daly the right to full Plan-wide relief, because 33 participants signed Class waivers, is incongruous with this statutory regime, which permits Plaintiff Daly to seek "recovery of *all* plan losses caused by a fiduciary breach." *LaRue*, 552 U.S. at 261 (Thomas, J., concurring). As *Smith* put it, the agreements "prohibit[] relief that ERISA expressly permits," and therefore fail. 13 F.4th at 615.

### III. The District Court's Ruling Leaves Ambiguity as to the Law and the Remedies Available Here.

The district court resisted this conclusion, noting, in a footnote, that "there remains no practical limitation on the remedies the 33 proposed Class members may seek," because "under *LaRue*, these individuals may seek remedies for their individualized harms resulting from the alleged injury to the Plan." A-33 n.9. In the district court's view, "nothing prevents these potential plaintiffs from vindicating any potential statutory rights they may be entitled to under § 502(a) or § 409." *Id*. But the district court misreads *LaRue*, which allowed recovery of plan losses that were isolated in one participant's account. *LaRue*, 552 U.S. at 250. The implications of this footnote are thus hardly as clear cut as the district court suggests. It suggests that Plaintiff Daly may still seek Plan-wide remedies under § 502(a) or § 409. If successful, he would then obtain payment into the Plan for the losses traceable to these 33 participants' Plan accounts. Yet absent inclusion in the Class, these 33 might still be denied their shares of the recovery, because their recovery would languish in the Plan. ERISA's mandate counsels against this half measure.

*A.* *Sections 502(a)(2) and 409(a) Do Not Provide a Claim for Recovery to a Participant's Individual Account Where Fiduciary Breaches Injure the Plan as a Whole.*

Section 409(a) specifies "appropriate" relief for fiduciary breaches, which is plan-wide as a matter of law. This relief includes holding fiduciaries liable for "any profits" and "any losses" caused by their breaches along with other equitable relief to the plan. 29 U.S.C. § 1109(a). Section 502(a)(2) provides for plan-wide relief for such breaches and does not authorize claims for individualized relief. *See, e.g.*, *LaRue*, 552 U.S. at 256. As the Supreme Court explained in *LaRue*, an ERISA *plan* is entitled to recover from fiduciary breaches, regardless of whether the breach "diminishes plan assets payable to all participants or only to particular individuals." 552 U.S. 248. The remedy under § 502(a)(2) is for the *plan*, which is the victim of any fiduciary breach and the recipient of any relief.

The district court's view that the excluded 33 participants may seek as remedies "for their individualized harms resulting from the alleged injury to the Plan" conflicts with *LaRue*. Section 409(a) does not permit individual

claims. "On their face, §§ 409(a) and 502(a)(2) permit recovery of *all* plan losses caused by a fiduciary breach." *Id.* at 261. (emphasis in the original).

The district court's reasoning is thus inconsistent with *LaRue* and raises practical questions that fidelity to *LaRue* would obviate. Unless all 33 prevail in their individual lawsuits against individual defendants, the Plan is deprived of the full appropriate relief due to it.

> **B.   The Class Action Waiver Interferes with Non-Monetary Plan-wide Relief.**

And then there remains the possibility of conflicting orders replacing fiduciaries if participants are forced to bring individual actions as the district court contemplated. Plaintiff and the Class seek the replacement of the Plan's fiduciaries. A-78. This remedy is plan-wide relief contemplated by ERISA § 502(a)(2). The district court asserted that "the class action waivers at issue here pose no restriction on what remedies an individual may seek . . . ." A-32. But where does that leave Plaintiff's request for replacement of the Plan's fiduciaries—or, for that matter, such a request brought by any or all of the 33 participants the district court excluded from the Class? The district court's order creates a practical infeasibility. And to the extent that the district

court's order would foreclose this relief from either the certified Class or the 33 excluded Plan participants, *Smith* and the Supreme Court precedent on which it relies forbid such an outcome. *See Smith*, 13 F.4th at 621.

**IV.    The Relief Plaintiff Seeks Is Plan Wide, So Rule 23(b)(1) Mandates Inclusion of the 33 Participants Who Signed Waivers.**

Plaintiff seeks plan-wide remedies for all Defendants' breaches of fiduciary duty and prohibited transactions, as well as any and all equitable or other remedial relief under ERISA §§ 502(a)(2) and (3), 29 U.S.C. §§ 1132(a)(2) and (3). A-38. Plaintiff will prove that the fair market value of West Monroe stock in September 2021 was at least three times greater than the 2020 Valuation and that the fiduciaries' redemption of Plan participants' shares at the deflated 2020 Valuation was a breach of their fiduciary duties. Plaintiff will also show that Defendants withheld vital information about the upcoming private equity sale from the Class despite a duty to inform the Class of the potential for a transaction and its implications. A determination of these questions for Plaintiff will effectively answer the question for the remainder of the proposed class.

For this reason, the district court correctly applied Rule 23(b)(1) here. It explained that "[a]s with many ERISA cases, here, 'because plaintiffs bring their claims on behalf of the Plan, adjudications of the representative plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan.'" A-25 (quoting *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007)). The court added that "[D]efendants . . . have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike,'" making the class certification under Rule 23(b)(1)(A) appropriate. A-26 (citations omitted). And the district court also held that certification under Rule 23(b)(1)(B) is appropriate here, because Class members' claims concern the same actions, duties, and damages to the Plan, such that adjudication of Plaintiff's claims "as a practical matter, would be dispositive of the interests" of all Class members' claims. A-25 (quotation omitted).

Exclusion of the 33 participants from the Class would undermine Rule 23(b)(1). Claims for the 33 excluded participants challenge the same actions, duties, and damages to the Plan, because the case challenges a single

24

redemption event and seeks Plan-wide relief. Individual adjudications would create incompatible fiduciary standards and practically dispose of absent members' interests in Plan-wide relief—classic Rule 23(b)(1) concerns.

But as the district court correctly recognized,

> ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan . . . will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole . . . a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs.

A-15 (quoting *Neil*, 275 F.R.D. at 267).

This case gives no reason to upend this well-settled rule. Yet if the district court's decision is allowed to stand, it would create an exception with the potential to swallow this rule: a defendant need only insert a class waiver in its employment agreements—or pick off a single plaintiff—to vitiate any possibility of plan-wide relief. ERISA, the effective vindication doctrine, and *Smith* all forbid this outcome. And this Court should so hold here.

## REQUESTED RELIEF

Accordingly, Plaintiff seeks immediate review to restore a unified class and streamline merits adjudication. Prompt review will ensure uniform adjudications with respect to the conduct and litigants at issue—the very considerations that Rule 23(b)(1) targets. Clarification of the applicable standards will aid district courts managing similar ERISA cases. And a decision now will foreclose the possibility of piecemeal appeals of inconsistent decisions born from the individual suits the district court now encourages. Plaintiff therefore requests the following relief:

I. **Grant the petition and order the 33 participants included in the Class**

Direct the district court to include the 33 participants who signed class waivers in the certified class and proceed with certification under Rule 23(b)(1), consistent with the plan-wide nature of ERISA remedies.

II. **Hold that class/multiparty waivers are unenforceable in this context**

Conclude that waivers barring "participation" in a class or prohibiting "multiparty" actions are invalid insofar as they prospectively foreclose plan-wide remedies under §§ 409(a) and 502(a)(2) and limit suits against multiple

fiduciaries, in violation of *Smith*, the effective vindication doctrine, and § 410(a).

## III.  Order an expedited schedule

Order expedited briefing (if necessary) and disposition, given the risk of inconsistent adjudications, and because plan-wide determinations will make monetary allocations follow mechanically.

<u>CONCLUSION</u>

The exclusion of 33 identically injured participants rests on private waivers that impermissibly foreclose representative, plan-wide ERISA remedies and even bar suits against multiple fiduciaries—precisely what § 409(a) authorizes and *Smith* forbids contracting away. The above authorities confirm that such provisions violate the effective vindication doctrine and § 410(a). Immediate Rule 23(f) review is warranted to correct this legal error, restore a cohesive Rule 23(b)(1) ERISA class, and ensure uniform adjudication of plan-wide remedies arising from a single redemption event. The Court should grant the petition, vacate the exclusion order, and remand with instructions consistent with these principles.

Dated: April 10, 2026

Respectfully submitted,

/s/ Matthew J. Singer

MATTHEW J. SINGER
MATT SINGER LAW, LLC
77 West Wacker Drive, Suite 4500
Chicago, Illinois 60601
(312) 248-9123

RUSSELL L. KORNBLITH
SANFORD HEISLER SHARP MCKNIGHT, LLP
17 State Street, Suite 3700
New York, New York 10004
(646) 402-5650

CHARLES FIELD
MYOUNGHEE CHOUNG
SANFORD HEISLER SHARP MCKNIGHT, LLP
7911 Herschel Avenue, Suite 300
La Jolla, California 92037
(619) 577-4253

<u>**CERTIFICATE OF COMPLIANCE**</u>

The undersigned certifies that the foregoing Petition for Permission to Appeal complies with the type-volume limitations of Fed. R. App. 5(c)(1) because this document contains 4,995 words, excluding the accompanying documents required by Rule 5(b)(1)(E).

The undersigned further certifies that this Petition complies with the requirements of Fed. R. App. P. 32(a)(1), the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this petition has been prepared in a proportionally spaced typeface using Microsoft Word Version 2016 in 14 point Palatino Linotype font.

Dated: April 10, 2026

*/s/ Matthew J. Singer*
Matthew J. Singer
Attorney for Petitioner

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 10, 2026, the Petition for Permission to Appeal was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by sending same via e-mail to usca7_clerk@ca7.uscourts.gov. The following counsel of record have consented to service by e-mail:

Lars C. Golumbic
Samuel I. Levin
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Ave., NW,
  Suite 1200
Washington, DC 20006
(202) 861-6615
lgolumbic@groom.com
slevin@groom.com

Jeffrey A. Hesser
CASSIDAY SCHADE LLP
22 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
jhesser@cassiday.com

*Attorneys for West Monroe
Defendants*

Jeffrey S. Russell
Jacob B. Simon
Katelyn W. Harrell
BRYAN CAVE LEIGHTON PAISNER LLP
161 N. Clark Street, Suite 4300
Chicago, Illinois 60601
(312) 602-5000
jsrussell@bclplaw.com
jacob.simon@bclplaw.com
katelyn.harrell@bclplaw.com

*Attorneys for Argent Trust Company*

_/s/ Matthew J. Singer_
Matthew J. Singer
Attorney for Petitioner



APPENDIX

# TABLE OF CONTENTS

Memorandum Opinion and Order, filed March 27, 2026 ............................................. A-1

Amended Class Complaint, filed August 19, 2022 ........................................................ A-34

Agreement Between West Monroe Partners, LLC and Jamie Mize,
     filed May 22, 2024 ................................................................................................ A-81

Civil Docket for Case 1:21-cv-06805, *Daly v. West Monroe Partners, Inc., et al.*,
     in the United States District Court for the Northern District of Illinois ....... A-95

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MATTHEW DALY, on behalf of himself
and all others similarly situated,

               Plaintiff,

                  v.

WEST MONROE PARTNERNS INC.
et. al.,

               Defendants.

Case No. 21 CV 6805

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's motion for class certification pursuant to Federal Rule of Civil Procedure 23(b)(1) or, in the alternative, (b)(2). [148], [188]. Defendants, in a joint brief, oppose the motion. [192]. For the reasons explained below, the Court grants Plaintiff's motion under Rule 23(b)(1).

### I.    Background

Plaintiff Matthew Daly was a consultant and employee of West Monroe Partners, Inc. from June 2015 to November 2020. [87] ¶ 12. West Monroe Partners, Inc. ("West Monroe" or "Company") is a "digital consulting firm" incorporated in Delaware and headquartered in Chicago, Illinois. *Id.* ¶ 13. Plaintiff Daly participated in the West Monroe Employee Stock Ownership Plan (the "Plan"), a defined contribution plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2) and governed Act under ERISA § 4(a), 29 U.S.C. § 1003(a). *Id.* ¶ 33. The Plan was designed to invest primarily in Company stock and hold that stock in a trust for the

1

A-1

benefit of Plan participants—current and former employees. *Id.* ¶¶ 1, 33. West Monroe administered the Plan through the Board and the Committee (West Monroe, the Board, and the Committee, collectively referred to as the "West Monroe Defendants"). *Id.* ¶ 15. Argent Trust Company (a Tennessee corporation headquartered in Nashville, Tennessee and a defendant in this case) was the Plan's Trustee. *Id.* ¶ 16.

In April 2021, the Trustee completed an annual valuation of the Company stock held by the Plan ("2020 Valuation"). *Id.* ¶ 42. Plaintiff alleges this valuation constituted a breach of Defendants' fiduciary duties, because the valuation was too low. [148] at 3. Defendants announced the same month that, based upon the 2020 Valuation, the value of Company stock as of December 31, 2020, was $515.18 per share. [87] ¶ 42.

Plaintiff left his employment at the Company on November 9, 2020. *Id.* ¶ 12. Between June 11, 2021, and August 9, 2021, Plaintiff elected to take a distribution of his account balance from the Plan, to be executed in late September or October of 2021. *Id.* ¶ 84. Other members of the class did so as well, and, collectively, these participants in the Plan "held a vested beneficial interest in approximately 27,960 shares of Company stock." *Id.* Around September 21, 2021, the Company purchased those shares at a price of $515.18 per share "based on the 2020 Valuation," for "a total value of approximately $14,404,808." *Id.* ¶¶ 84, 85.

On October 5, 2021, about three weeks later, West Monroe sold 50% of the Company to MSD Partners, L.P. (the "MSD Transaction"), a private equity firm, at a

2

A-2

price of $1,616 per share. *Id.* ¶¶ 73, 88. In November 2021, West Monroe finalized the sale and terminated the Plan. *Id.* ¶¶ 74, 89. The remaining Plan participants received a price of $1,616 per share for the stock held in their Plan accounts. *Id.* ¶¶ 73, 74, 88, 89. The Plan additionally "'held approximately 564,000 unallocated shares—i.e., shares held in the Plan but not allocated to individual participants' accounts—which were sold as part of the MSD Transaction." [192] at 5 (citing [88] ¶ 89 n.15; [144] ¶ 89). "Most of the proceeds from the sale of the unallocated shares was distributed to the remaining participants in the Plan at the time on a pro rata basis, but $50 million of those proceeds remains in the Plan in an interest-bearing account." *Id.* (citing [54-5] § 16.5(e); [132] at 8). "If not paid in connection with a claim, the $50 million will be distributed to the West Monroe employees who still have accounts in the Plan (a group that does not include Plaintiff or anyone in the putative Class)." *Id.* (citing [54-4] at § 16.5(e)).

The West Monroe Defendants admit that "they did not make disclosures to Plaintiff" regarding the" sale, "nor the results of any valuation that occurred after the 2020 Valuation, nor any offer made by a third party to buy shares of Company stock, nor the fact that the fair market value of Company stock exceeded the 2020 Valuation," nor "if Class members did not elect distributions and remained invested in the Plan, they were likely to receive an amount substantially higher than the $515.18 per share distributed in September 2021." [144] at 52.

Plaintiff's Amended Complaint alleges that Defendants engaged in numerous breaches of their fiduciary duties, including (i) failing to conduct a prudent valuation

A-3

of the stock in 2020, (ii) failing to ensure that participants received fair market value for the stock held in their accounts, such as by conducting an up-to-date valuation for the 2021 stock redemption, and (iii) failing to timely disclose facts material to beneficiaries' interests. [148] at 6 (citing [87] ¶¶ 100–114).

To remedy these alleged "breaches of fiduciary duties and prohibited transactions, Plaintiff seeks to bring this action individually, as a representative of the affected Class of participants and beneficiaries, and on behalf of the Plan under ERISA § 502, 29 U.S.C. §1132(a)(2) and (3)," and numerous other claims. [87] ¶ 10.[1] Plaintiff now asks the Court to certify the following proposed Class under either Rule 23(b)(1) or (b)(2): "All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock." [148] at 8 (citing [87] ¶ 93).

Defendants oppose Plaintiff's motion for class certification. *See* [192].

## II. Legal Standard

To merit certification, a proposed class must first satisfy all four requirements of Rule 23(a): (1) the class must be so numerous that joinder of all members is impracticable ("numerosity"); (2) there must be questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class ("typicality"); and (4) the representative parties must fairly and adequately protect the interests of the class

---

[1] Plaintiff is seeking class certification for all Counts alleged in the Amended Complaint ([87]) except for Count VI, Failure to Produce Plan Documents. *See* [148] at 6 n.3.

4

A-4

("adequacy"). *See* Fed. R. Civ. P. 23(a). Additionally, the Seventh Circuit independently instructs that "a class must be sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012) (citing *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)). The class must also satisfy one of Rule 23(b)'s conditions. *Lacy v. Cook County*, 897 F.3d 847, 864 (7th Cir. 2018). Here, Plaintiff moves for certification under Rules 23(b)(1) and 23(b)(2).[2] *See* [148].

Rule 23's requirements are "more than 'a mere pleading standard,' and the court must satisfy itself with a 'rigorous analysis' that the prerequisites of certification are met, even if that analysis has 'some overlap with the merits of the plaintiff's underlying claim.'" *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1005 (7th Cir. 2019) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). A plaintiff bears "the burden of showing that a proposed class satisfies the Rule 23 requirements" but "need not make that showing to a degree of absolute certainty. It is sufficient if each disputed requirement has been proven by a preponderance of evidence." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). A "decision whether to certify a class is one that depends on a careful assessment of the facts, of potential differences among class members, of management challenges, and of the overall importance of the common issues of law or fact to the ultimate outcome." *Riffey v. Rauner*, 910 F.3d 314, 318 (7th Cir. 2018).

---

[2] In his Motion, "Plaintiff requests the opportunity to move for class certification under Rule 23(b)(3) and Rule 23(c)(4) should the Court deny Rule 23(b)(1) or Rule 23(b)(2) certification." [148] at 8 n.5. Defendants object to this request. *See* [192] at 14 n.7. Because the Court grants Plaintiff's motion under Rule 23 (b)(1), the Court need not reach this issue.

A-5

## III. Discussion & Analysis

### A. Certification Under Rule 23(a)

For a class action to proceed, a plaintiff must "first" show that the proposed class satisfies the "four requirements under Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Urlaub v. CITGO Petroleum Corp.*, Case No. 21 C 4133, 2024 WL 2209538, *3 (N.D. Ill May 16, 2024).

#### 1. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Though "there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002). *See also Anderson v. Weinert Enters. Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) ("While 'impracticable' does not mean 'impossible,' a class representative must show 'that it is extremely difficult or inconvenient to join all the members of the class.'") (quoting 7A C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1762 (3d ed.)).

Plaintiff's proposed class consists of himself and 145 former Plan participants, easily satisfying the numerosity requirement of Rule 23(a)(1). Defendants do not raise any arguments with respect to numerosity and therefore forfeit any objection regarding Plaintiff's satisfaction of Rule 23(a)(1). *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("Moreover, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where

6

A-6

those arguments raise constitutional issues).") (internal quotation omitted). The Court finds that the proposed class meets the numerosity requirement.

### 2. Commonality

Under Rule 23(a)(2), a Plaintiff must demonstrate "questions of law or fact common to the class." A common question is one "that is 'capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Howard v. Cook Cnty. Sheriff's Office*, 989 F.3d 587, 598 (7th Cir. 2021) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). In instances "where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.,* 764 F.3d 750, 756 (7th Cir. 2014) (citations omitted). *See also Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2) . . . Common nuclei of fact are typically manifest where . . the defendants have engaged in standardized conduct towards members of the proposed class . . . .") (quotations omitted). "Rule 23(a)(2) does not demand that every member of the class have an identical claim." *Spano v. Boeing Co.*, 633 F.3d 574, 585 (7th Cir. 2011). "It is enough that there be one or more common questions of law or fact; supplemental proceedings can then take place if, for example, the common question relates to liability of the defendant to a class and separate hearings are needed to resolve the payments due to each member." *Id.*

7

A-7

Here, Plaintiff alleges "that the defendants engaged in a single course of conduct" and that "this conduct affected all class members in the same way." *Urlaub,* 2024 WL 2209538 at\*3. As Plaintiff points out, "Defendants owed the same fiduciary duties to all 146 members of the proposed Class." [148] at 11. Whether Defendants breached those fiduciary duties by purchasing the shares of those 146 participants at the 2020 Valuation, $515.18 per share, in September 2021 will have a common answer with respect to all members of the proposed Class. *See Suchanek,* 764 F,3d at 756–58 (finding that the "district court abused its discretion in failing to recognize that" a proposed class "satisfied the commonality requirement of Rule 23(a)(2)" where the "same legal standards govern[ed] every class member's claim"). Thus, the "common nucleus of operative facts" presented here satisfies Rule 23(a)(2).

Defendants again do not raise any arguments with respect to commonality and therefore forfeit any objection regarding Plaintiff's satisfaction of Rule 23(a)(2). *See Crespo,* 824 F.3d at 674. Accordingly, the Court finds Plaintiff meets his burden with respect to commonality. *See also Neil v. Zell*, 275 F.R.D. 256, 261 (N.D. Ill. 2011) (finding Rule 23(a)(2) satisfied in an ERISA case where the "allegations against Defendants arise from the exact same common nucleus of operative facts, without factual variations between class members, and the legal claims are identical for all class members . . . and Plaintiffs' allegations all unquestionably stem from the same occurrence . . . .").[3]

---

[3] The Court addresses the effect of the class actions waivers signed by 33 members of the proposed Class below.

8

A-8

### 3. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The "typicality requirement is 'closely related' to the issue of commonality," (*Smith v. Aon Corp.*, 238 F.R.D. 609, 615 (N.D. Ill. 2006) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992))) and "is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir.2006) (quotation and citation omitted). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Smith,* 238 F.R.D. at 615 (quotation omitted). In an ERISA case, "typicality is measured by reference to defendants' actions toward the Plan as a whole, not with respect to individual defenses that might be raised with respect to how participants later may share in a recovery by the Plan." *George v. Kraft Foods Global Inc.*, 251 F.R.D. 338, 349 (N.D. Ill. 2008).

Plaintiff and the other potential Class members all have the same legal claims against the same Defendants arising from the same alleged conduct and course of events. The Seventh Circuit requires that, in class action under ERISA, "there must be a congruence between the investments held by the named plaintiff and those held by the members of the class he or she wishes to represent." *Spano*, 633 F.3d at 586. Plaintiff, along with the 145 members of the proposed Class, participated in the Plan and received a distribution in 2021 at the 2020 Valuation. *See* [148] at 14 (citing Ex.

9

A-9

1 2020 Termiantion-2021 Distribution List at 2–5). Thus, Plaintiff's claim maintains the "same essential characteristics as the claims of the class at large," satisfying Rule 23(a)(3). *Oshana*, 472 F.3d at 514.[4]

### 4. Adequacy of Representation

Finally, Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interests of the class." The "factors in this analysis are whether the named plaintiffs have (1) claims that do not conflict with those of other class members; (2) sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) competent, qualified, and experienced counsel who are able to conduct the litigation vigorously." *Wachala v. Astellas US LLC*, No. 20 C 3882, 2022 WL 408108, \*5 (N.D. Ill. Feb. 10, 2022) (citing *Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18 C 4871, 2020 WL 635972, \*4 (N.D. Ill. Feb. 11, 2020)). The Seventh Circuit has "made clear . . . that 'the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses" does not prevent class certification." *Howard,* 989 F.3d at 610 (quoting *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013)).

The claims of Plaintiff's proposed Class here all arise from the same alleged conduct. All 146 proposed Class members, including Plaintiff, were Plan participants at all relevant times, elected distributions in September 2021 at the 2020 Valuation price of $515.18 per share, and seek relief from the same alleged breaches of fiduciary

---

[4] As with numerosity and commonality, Defendants raise no specific arguments regarding typicality, thus forfeiting any objection to Plaintiff's satisfaction of the Rule. *See Crespo,* 824 F.3d at 674.

10

A-10

duty. Further, Plaintiff's declaration affirms his willingness and ability to serve as Class representative, along with his understanding of the responsibilities the role entails. *See* [148-18]. The Court concludes that Plaintiff and the proposed Class members share both "the same interest" and the "same injury" for purposes of certification, and that Plaintiff has demonstrated commitment to participating in the suit on behalf of the other Class members. *Orr v. Shicker*, 953 F.3d 490, 499 (7th Cir. 2020) (citation omitted). The Court further concludes, and Defendants do not dispute, that counsel for the proposed Class has demonstrated their adequacy. *See* Fed. R. Civ. P. 23(g); [148] at 20–22; [148-1]. Rule 23(a)(4) remains satisfied.

Defendants argue that Plaintiff fails "to demonstrate that he will fairly and adequately protect the interests of the class" because: (1) Plaintiff allegedly gave "false testimony in connection with the putative class action" in his deposition; and (2) Plaintiff remains motivated by animus against Defendants in this case, which they allege may harm the potential class members. [192] at 20, 23.

Defendants claim Plaintiff's deposition testimony is inconsistent with those allegations in his Amended Complaint claiming that he was harmed by an alleged pressure campaign by Defendants to sell his shares. *See* [192] at 23. Defendants argue that plaintiffs who demonstrate a willingness to make false statements during litigation should not be permitted to serve as class representative, and thus Plaintiff cannot meet the requirements of Rule 23(a)(4). *See id.* Defendants cite two cases for this proposition—*Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (N.D. Ill. 1990), and *In re Northfield Lab., Inc. Sec. Litig.*, 267 F.R.D. 536, 543 (N.D. Ill. 2010).

11

A-11

Both cases involved plaintiffs who made false statements in their respective depositions. In those instances, alternative explanations or interpretations of the testimony were "untenable," *Kaplan*, 132 F.R.D. at 510, and it was "obvious from the transcript that" the plaintiff "testified falsely." *In re Northfield Lab,* 267 F.R.D. at 543. Because "credibility problems interfere with" a "plaintiff's satisfaction of the typicality requirement" and the "adequacy of representation requirements," *Kaplan,* 132 F.R.D. at 510, the courts in both cases removed certain plaintiffs as class representatives. *See id.*; *In re Northfield Lab.*, 267 F.R.D. at 544.

This case is different, however, and the Court does not share Defendants' view of Plaintiff's deposition testimony. The Amended Complaint alleges that "the Company repeatedly pressured Plaintiff and Class members to make elections, against the Class's best interests and to the benefit of the Company and its leadership," citing to specific documents distributed to members of the proposed class in 2021, where Company managers encouraged participants to make an election. [87] ¶ 92. Plaintiff alleges that because "of the Company's pressure campaign, Plaintiff and all 146 members of the Class elected distributions." *Id.*

At Plaintiff's deposition, Defendants' counsel asked Plaintiff about several messages, where Plaintiff wrote that he was "leaning toward taking the entire distribution as cash now," [148-4] 62:2–3, because he felt the alternative to taking a cash election, i.e., letting the funds convert to cash and rollover into a mutual fund he could not access until the following year, "would not be a good decision." *Id.* 74:4–5. When asked by defense counsel whether communications from the Company's

12

A-12

A-13

managers caused him to make an election decision, Plaintiff testified that he "would not say" the Company's urging was the "only" reason he made a distribution election, but he "definitely noted" the managers' language. *Id.* 69:18–23. Plaintiff added that he believed if he "had been given all the information that was available," he "probably would have made a different decision," regarding the election. *Id.* 72:20–73:1.

The testimony and the allegations are not irreconcilable. *See* [87] ¶ 90 (". . . if Plaintiff and the Class were informed that value of Company stock was substantially higher than the 2020 Valuation, and/or of the impending Stock Sale, they could (and likely would) have chosen to defer their distributions and, therefore, would have received many times the $515.18 per share they received in the September 2021 distribution."). To the extent Defendants believe Plaintiff made any admissions in his deposition that affect the merits of his claim, those issues fall outside of today's review of certification. *See Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010) ("Under the current rule, certification is largely independent of the merits . . . and a certified class can go down in flames on the merits. The possibility that individual hearings will be required for some plaintiffs to establish damages does not preclude certification." (citing *Pella Corp. v. Saltzman,* 606 F.3d 391 (7th Cir.2010); *Arreola v. Godinez,* 546 F.3d 788 (7th Cir.2008)). *See also id.* at 685, 687 ("A "court may take a peek at the merits before certifying a class," but it must be "limited to those aspects of the merits that affect the decisions essential under Rule 23 . . . The chance, even the certainty, that a class will lose on the merits does not prevent its certification."). The Court declines to deny certification on this basis.

13

Defendants also argue that Plaintiff remains motivated by personal animus towards Defendants. To be sure, "a proposed representative may be inadequate when motivated by personal animus," and a "'trial court may properly consider the plaintiff's vindictiveness toward the defendant in determining whether the plaintiff is an adequate representative.'" *Neil*, 275 F.R.D. at 262 (quoting *Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir.1992)). But the record does not support the claimed disqualifying animus.

Defendants point to comments Plaintiff made in text messages where he claimed that the Company's "executives were 'reliving their Arthur Andersen days'" and "stated that he wanted to 'prove deliberate fraud' in this case rather than settle.'" [192] at 24 (quoting Ex. L, October 9, 2021 Text Messages; Ex. M, October 14, 2021 Text Messages; Ex. N, November 4,2021 Text Messages). Defendants also point to certain portions of Plaintiff's deposition where he stated that he believed there was a "general commonality of dishonesty between the Arthur Andresen fraud cases and the present case." *Id.* (quoting Daly Tr. 93:22–94:6).

Simply put, such comments do not make Plaintiff an inadequate representative for the proposed Class. Cases invalidating a plaintiff's ability to represent a class based upon animus require far more severe expressions of animosity than what Plaintiff's comments exhibit. *See Smith v. Ayres*, 977 F.2d 946, 949 (5th Cir.1992) (holding that a plaintiff was an inadequate representative where he had "an unmistakable personal and professional dispute with" the defendant and "his brief" was "peppered with vituperative epithets, pugilistic metaphors, and

14

A-14

descriptions of" the defendant "as 'satanic' and 'evil'" and plaintiff "stated that he is committed to 'ruin ten years of" the defendant's life); *Parrish v. National Football League Players Assoc.*, No. C 07–00943 WHA, 2008 WL 1925208, at \*1–2 (N.D. Cal. April 29, 2008) (finding a plaintiff an inadequate representative where, in his deposition, he compared a defendant to "Caesar, Napoleon, Idi Amin, Hitler, Stalin, Milosevic, Saddam" and wanted "to finish this fight no matter how dirty it gets or what it takes or where it goes."). Plaintiff's comments cannot compare to these expressions of disqualifying animus, and the Court finds Rule 23(a)(4) satisfied here.

## B. Certification Under Rule 23(b)(1)

The Court next analyzes whether the proposed class satisfies the requirements of Rule 23(b). "ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan . . . will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole . . . a plaintiff's victory would necessarily settle the issue for all other prospective plaintiffs." *Neil*, 275 F.R.D. at 267. Plaintiff argues that certification is appropriate here under both Rule 23(b)(1) and Rule 23(b)(2). Defendants object to certification on either ground.

### 1. Feasibility of Certification of Claims Like Plaintiff's

Before analyzing Plaintiff's motion for certification under Rule 23(b)(1), the Court first addresses Defendants' global arguments regarding the application of

15

A-15

ERISA sections § 502(a)(2) and § 409 to this motion.[5] Defendants contend that class certification is conclusively inappropriate in this case because Plaintiff is "not seeking to represent the Plan as a whole" as required by § 502(a)(2) and is not a suitable representative of the plan under the same section because of "potential conflict with the interests of other participants in the Plan." [192] at 8 (quotations omitted). According to Defendants, because Plaintiff makes no showing that "he is a suitable representative of the more than 1,350 other individuals who remained as Plan participants—let alone the Plan as a whole"—the Court must deny Plaintiff's motion. *Id.* at 12.

Established Supreme Court and Seventh Circuit precedent, however, forecloses these arguments. The relevant ERISA provisions at issue are 29 U.S.C. § 1132(a)(2) and § 1109(a). Section 1132(a)(2) "provides that a civil action may be brought 'by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title.'" *Smith v. Bd. of Dirs. of Triad Mfg.*, 13 F.4th 613, 618 (7th Cir. 2021) (quoting 29 U.S.C. § 1132(a)(2)). Section "1109(a) imposes liability for any fiduciary who breaches his duties to the plan and holds him 'personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary,'" and "also authorizes 'other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.'" *Id.* (quoting 29 U.S.C. § 1109(a)). Thus, considered together, "§ 1109(a)

---

[5] The Court notes that ERISA sections § 502(a)(2) and § 409 are codified at 29 U.S.C. § 1132(a)(2) and § 1109 (a), respectively. The Court refers to each using the appropriate citation in context.

A-16

creates fiduciary liability, and § 1132(a)(2) allows for its enforcement" in ERISA actions. *Id.*

The Supreme Court analyzed both statutes in *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 522 U.S. 258 (2008). In that case, "a plan participant alleged that a fiduciary's misconduct—failing to make certain changes to his 401(k) account—had 'depleted his interest in the [defined contribution plan] by approximately $150,000, and amounted to a breach of fiduciary duty under ERISA.'" *Id.* (quoting *LaRue*, 522 U.S. at 250) (alteration in original). The Court distinguished prior precedent interpreting "§§ 502(a)(2) and 409" as designed to "protect 'the financial integrity of the plan'" and thus remedies under those section "'protect the entire plan, rather than . . . the rights of an individual beneficiary.'" *LaRue*, 522 U.S. at 254 (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–44 (1985)). The Court held "that the 'entire plan' language" from those cases, "which appears nowhere in § 409 or § 502(a)(2)," reflects the previous domination of defined benefit plans in "the retirement plan scene." *Id.* at 255. But for "defined contribution plans, however," in contrast to defined benefits plans, "fiduciary misconduct need not threaten the solvency of the entire plan reduce benefits below the amount that participants would otherwise receive." *Id.* at 255–56. Thus, the Court found that its prior "references to the 'entire plan,'" which "accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context," because regardless of "whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts," such breaches

17

A-17

still create "the kind of harms that concerned the draftsmen of § 409." *Id.* at 255–56.

Subsequent Seventh Circuit follow suit regarding recovery under § 502(a)(2) and § 409 in the defined contribution context. *See Rogers v. Baxter Intern. Inc.*, 521 F.3d 702, 705 (7th Cir. 2008) (holding "that participants in defined contribution plans may use § 502(a)(2), and thus § 409(a), to obtain relief if losses to *an* account are attributable to a pension plan fiduciary's breach of a duty owed to the plan.") (emphasis added); *Smith*, 13 F.4th at 619 (holding that, under *LaRue,* although § 1132(a) "does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.'") (quoting *LaRue*, 522 U.S. at 256).

Defendants cite two post-*LaRue* Seventh Circuit cases—*Spano* and *Abbott*—to support their theory that the proposed Class cannot be certified because Plaintiff does not seek to recover for a "plan-wide" harm. Defendants contend that, under *Spano*, the Seventh Circuit requires Plaintiffs bringing actions under § 502(a)(2) to seek recovery for harms that diminish plan assets as a whole. *See* [192] at 9. Thus, according to Defendants, because the alleged injury here only affected some Plan participants and thus did not have a "plan-wide effect," *Spano* bars certification. Defendants also argue that *Abbott* imposes a "rule" prohibiting class certification "where some participants would either have their 'Plan assets reduced as a result of the lawsuit' or 'reap a windfall.'" *Id.* at 10 (quoting *Abbott*, 725 F.3d at 814). The Court rejects Defendants' reading of these cases.

18

A-18

First, Defendants' argument regarding *Spano* misinterprets the Seventh Circuit's holding in that case; in fact, the rule Defendants urge would run afoul of the Supreme Court's holding in *LaRue*. In *Spano v. Boeing Co.*, the Seventh "confronted for the first time the question whether an action for breach of fiduciary duty under Section 502(a)(2) . . . may be maintained as a class action when a defined-contribution retirement savings plan," and concluded "that the answer was 'maybe.'" *Abbott*, 725 F.3d at 805 (citing *Spano v. Boeing Co.*, 633 F.3d 574 (7th Cir. 2011)). *Spano* does not require that all Plan participants must be harmed by the allegedly unlawful conduct for a class action under § 502(a)(2) to proceed; instead the Seventh Circuit observed that "while *LaRue* leaves no doubt that plan beneficiaries are entitled to resort to section 502(a)(2) after a breach of fiduciary duty reduces the value of plan assets in their defined-contribution accounts," that did not definitively answer "under what circumstances employees resorting to section 502(a)(2) may properly proceed as a class under Federal Rule of Civil Procedure 23." *Spano*, 633 F.3d at 581.

The court went on to hold that "there is a greater potential for intra-class conflict in the defined contribution context," as opposed to the defined benefit context, because "a fund that turns out to be an imprudent investment over a particular time for one participant may be a fine investment for another." *Id.* at 591. Thus, "if both are included in the same class, a conflict will result and class treatment will become untenable." *Id.* at 591. Because the district court's broad certification impaired its ability to sufficiently analyze such intra-class conflicts, the Seventh Circuit reversed; but, in doing so, the court noted that "nothing we have said should be understood as

19

A-19

ruling out the possibility of class treatment for one or more better-defined and more targeted classes." *Id.* at 588, 591.

The Seventh Circuit expanded on this comment in *Abbott*. There, the plaintiff appealed the district court's denial of his motion for certification, arguing "that the proposed class, in accordance with . . . *Spano,*" and other cases, was "precisely defined and carefully tailored to ensure that no plaintiff who may have actually benefited" from the conduct at issue would "be swept into a class that seeks relief in which he has no interest (or may actively oppose)." *Abbott*, 725 F.3d at 809. The Seventh Circuit agreed, and in reversing the district court's order, admonished plaintiffs and courts to "take care to avoid certifying classes in which a significant portion of the class may have interests adverse to that of the class representative."

The court noted that the "appropriateness of class treatment in a Section 502(a)(2) case (as in other class actions) depends on the claims for which certification is sought," adding that "in *Spano* . . . we were concerned that intra-class conflict of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a) was all but inevitable" due to the breadth of the class definitions at issue. *Id.* at 813. But "the specifics of the . . . claim" in *Abbott* rendered it "unlikely that the sorts of conflicts that concerned us in *Spano* will arise," including that there was "no risk that any . . . investor who benefited" from the alleged unlawful conduct "would have her Plan assets reduced as a result" of the lawsuit, that the alleged conduct was "by nature not" prone to cause "wide swings in value that would enable some investors to reap a windfall" while others were harmed. *Id.* at 814. Because

A-20

the specific nature of the alleged harm and the definition of the proposed class eliminated the risk of intra-class conflict Rule 23(a) prohibits, the Seventh Circuit held that the district court abused its discretion in denying certification. *Id.*

Thus, a careful reading of both *Spano* and *Abbott* reveals that neither case requires that all participants of a Plan must suffer harm for a plaintiff to bring a class action under § 502(a) (again, a result which would be in tension with *LaRue*). Instead, these cases provide general guidance to district courts analyzing the appropriateness of class treatment in § 502(a)(2) claims. The Seventh Circuit "has never held . . . that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely." *Id.* at 813.

Thus, Defendants' contention that Plaintiff's claim must represent *all* Plan participants remains inapposite and incorrect as a matter of law. That argument finds no basis in *LaRue,* and it misinterprets the holdings of both *Spano* and *Abbott. See also In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 595 n.9 (3d Cir. 2009) (*LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized."); *Parker v. Tenneco Inc.*, 114 F.4th 786, 796 (6th Cir. 2024) ("*LaRue* allows an individual plaintiff to bring a § 502(a)(2) representative suit for losses to her individual plan account, even though the injury is to the plan.").

Furthermore, Defendants' reading ignores prior cases in this District certifying qualifying ERISA claims under Rule 23 where only some of the Plan participants are

21

A-21

included in the class. *See, e.g.*, *Rogers v. Baxter Intern. Inc.*, No. 04 C 6476, 2006 WL 794734, *2 (N.D. Ill. Mar. 22, 2006) (certifying a class action suit where the proposed class included a subset of the Plan at issue); *Urlaub*, 2024 WL 2209538 at*3 (same). *See also Neil*, 275 F.R.D. at 256, 266 (The question "is not whether some might have benefitted from parts of the occurrence now being challenged, but whether, going forward, some members of the Plaintiff class would be harmed by the relief being sought . . . . There are no members of the proposed class who would, for any reason, prefer that Defendants not pay damages."); *Wachala* 2022 WL 408108 at *7 ("As the Seventh Circuit later explained in *Abbott*, . . . the class definitions in *Spano* were 'extraordinarily broad'—so broad that it appeared that some class members would be harmed by the relief sought—and vague as to what investment options plaintiffs challenged. The same cannot be said of the . . . Class definition; like the definition that passed muster in *Abbott*, it is "considerably narrower" than the definitions in *Spano* and limited to Plan participants who suffered a loss . . . And, as in *Abbott*, there seems to be no risk that any participant who had gains from the alleged breaches would have his Plan assets reduced as a result of this lawsuit.").

Here, Plaintiff (along with the proposed Class members) alleges a reduction in value of his defined contribution accounts resulting from Defendants' alleged breach of their fiduciary duties. Plaintiff has "taken care to limit the class to those Plan participants who invested" in the Plan and received a distribution in September 2021. *Abbott,* 725 F.3d at 814. As the Court explained in its analysis of Rule 23(a)(2), Plaintiff, along with the 145 other members of the proposed Class, participated in the

22

A-22

same Plan and received a distribution at the same time for the same compensation ($515.18 per share per the 2020 Valuation). If Defendants breached their fiduciary duties by purchasing the shares of the proposed Class at the 2020 Valuation, all Class members will have been harmed by that breach. In other words, this case presents no risk that any "intra-class conflict of the sort that defeats both the typicality and adequacy-of-representation requirements of Rule 23(a)" and the proposed Class definition "excludes from the class any persons who did not experience injury,"—the primary concerns animating the decisions in both *Spano* and *Abbott*. *Id.* Thus, the Court finds that class treatment is appropriate for the claims for which certification is sought in this case.

The Court next addresses Defendants' arguments claiming that *Abbott* presents a separate bar to certification here. Defendants contend that the Court must deny Plaintiff's motion under *Abbott* because some Plan participants will have their "Plan assets reduced "or "reap a windfall" because of this lawsuit. [192] at 10 (quoting *Abbott,* 725 F.3d at 814). But Defendants' argument that *Abbott* created a wholesale bar against certification if there is "any risk" that a plan participant who benefited Defendants' conduct "would have her Plan assets reduced" misunderstands *Abbott*'s key holding. *See* [192] at 10 (quoting *Abbott,* 725 F.3d at 814). *Abbott* primarily pertains to concerns regarding intra-class conflict.

Further, "Plaintiff seeks relief from Defendants," and thus would not affect any funds held by Plan participants not in the proposed Class. [194] at 6. The notion that, at some later point in the litigation, the Court could "order recission of the

23

A-23

distribution of Plan assets, or that claims be paid from [the] $50 million that currently remains in the Plan" remains completely speculative at this stage. Although "all class definitions allude to the merits, in that they assume either implicitly or explicitly that the defendant's conduct has adversely affected the defined group of people . . . the class definition is a tool of case management" and it "settles the question who the adversaries are, and so it enables the defendant to gauge the extent of its exposure to liability and it alerts excluded parties to consider whether they need to undertake separate actions in order to protect their rights . . . What it does not tell us is who will win the case" nor does it resolve any issues that go to the merits. *Abbott*, 725 F.3d at 810 (citations omitted). Thus, Defendants' arguments concerning the source of any damages payments presents no wholesale bar to certification at this stage. *See Abbott*, 725 F.3d at 813–14 (holding that *Spano* did not prevent certification of plaintiffs' class in that case and if the district court's comments regarding the unlikelihood of substantial intra-class conflicts "turn out to be wrong, the district court can make further adjustments to the class definition later").

Having determined that certification remains feasible for claims like Plaintiff's, the Court considers whether the proposed class satisfies the requirements of Rule 23(b)(1) below.[6]

---

[6] The Court notes that Defendants raise several arguments concerning "procedural safeguards" and "due process rights," all of which pertain to Defendants' claim that Plaintiff maintains conflicts with other Plan participants not in the proposed Class. *See* [192] at 11–13. Because the Court finds, for the reasons explained extensively above, class treatment is appropriate for this case and that any potential for intra-class conflict remains entirely speculative at this stage, the Court does not address these arguments separately.

24

A-24

### 2. Rule 23(b)'s Requirements

Class actions under ERISA "are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan." *Neil*, 275 F.R.D. at 267 (collecting cases). A class action may be maintained under Rule 23(b)(1)(A) if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."

As with many ERISA cases, here, "because plaintiffs bring their claims on behalf of the Plan, adjudications of the representative plaintiffs' suit would, as a practical matter, be dispositive of the interests of the other participants claims on behalf of the Plan." *Brieger v. Tellabs, Inc.*, 245 F.R.D. 345, 357 (N.D. Ill. 2007). Additionally, "adjudication of the claims involves the recovery and distribution of Plan assets on behalf of the Plan rather than determination of personal causes of action brought by individuals. As a result, separate actions by individual plaintiffs would impair the ability of other participants to protect their interests if the suit proceeded outside of a class context," thus rendering certification proper under Rule 23(b)(1)(A). *Id.*

Defendants claim that because Plaintiff does not seek "to represent the Plan as a whole," this case is distinguishable from the other numerous cases which certify

A-25

similar ERISA actions. But as the Court already explained, Supreme Court and Seventh Circuit case law permit plaintiffs to bring actions on behalf of subsets of participants in a Plan for a Plan injury. Therefore, because Plaintiff and the proposed Class bring the same claim against Defendants alleging they breached their fiduciary duties in the same course of conduct and "prosecution of separate actions by various Plaintiffs would create a risk of 'inconsistent or varying adjudications with respect to individual members of the class,'" the Court finds certification under Rule 23(b)(1)(A) appropriate. *Smith,* 238 F.R.D. at 615 (quoting Fed. R. Civ. Pro. 23(b)(1)(A)). *See also Urlaub,* 2024 WL 2209538 at*3 ("The defendants are entitled to consistent rulings regarding operation of the plan . . . and have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.") (quotations omitted).

A class action may also be certified under Rule 23(b)(1)(B) if "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Plaintiffs argue that certification under 23(b)(1)(B) is also appropriate here "because the claims at issue here—breach of fiduciary duty and engaging in a prohibited transaction—must be brought in a representative capacity on behalf of the entire plan." *Neil*, 275 F.R.D. at 269. As Plaintiff notes in his Reply brief, "claims for breach of fiduciary duty, like the ones Plaintiff brings here, 'can only be brought on

A-26

behalf of plan participants.'" [194] at 10 (quoting *Rogers v. Baxter Int'l Inc.*, No. 04 C 6476, 2006 WL 794734, *11 (N.D. Ill. Mar. 22, 2006)). The Court agrees that Rule 23(b)(1)(B) certification is also proper here because "for reasons previously explained, the Court concludes that Plaintiffs' claims are typical of those of other class members and indeed are paradigmatic ERISA claims suitable for certification pursuant to 23(b)(1)(B) because a victory on these claims by one plan member would necessarily be a victory for all plan members." *Neil*, 275 F.R.D. at 268.

In other words, should Plaintiff succeed in showing that Defendants breached their fiduciary duties in cashing out Plan participant shares at the 2020 Valuation in September 2021, that determination "would be dispositive of the interests of the other members not parties to the individual adjudications," and thus Rule 23(b)(1)(B) remains satisfied. *See also Neil,* 275 F.R.D. at 268 ("Defendant does not cite any case in which a court has declined to certify an ERISA class pursuant to 23(b)(1).").[7]

## C. Effect of Class Action Waivers

The parties both admit that 33 of the 146 participants in the proposed class executed agreements with the Company where they waived "any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party." [192] Ex. O ¶ 4(d). Plaintiff contends that this waiver is unenforceable, citing *Smith v. Board of Directors of Triad Manufacturing.*

---

[7] Because the Court concludes that certification is most appropriate under Rule 23(b)(1), the Court need not reach the parties alternative arguments regarding whether the requirements of Rule 23(b)(2) are also satisfied in this case.

27

A-27

For the reasons the Court explains below, *Smith* is distinguishable from the facts presented and thus does not invalidate the class action waivers at issue.

In *Smith*, the Seventh Circuit addressed "an arbitration provision with a class action waiver" included within the retirement plan at issue. 13 F.4th 613, 616 (7th Cir. 2021). The provision directed that "with respect to any claim brought under ERISA § 502(a)(2) to seek appropriate relief under § 409," "all Covered Claims must be brought solely in the Claimant's individual capacity and not in a representative capacity or on a class, collective, or group basis, and each arbitration shall be limited solely to one Claimant's Covered Claims, and that Claimant may not seek or receive any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any Eligible Employee, Participant or Beneficiary other than the Claimant." *Id.* (quotations omitted). The Seventh Circuit held that the provision was unenforceable under the "effective vindication" exception to the general enforceability of arbitration agreements. *Id.* at 621.

The "effective vindication" exception "finds its origin in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies,'" and applies to "a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 236-37 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (emphasis in original). Thus, in *Smith,* although the Seventh Circuit acknowledged that "ERISA claims are generally arbitrable," the "plan's arbitration provision, which also contains a class action waiver, precludes a

28

A-28

participant from seeking or receiving relief "that . . . would go beyond just" the named plaintiff "and extend to the entire plan." *Id.* at 621. Because "removal of a fiduciary— a remedy expressly contemplated by § 1109(a)," fell "exactly within the ambit of relief forbidden by the plan" and could not "be reconciled" with the "plain text of § 1109(a)," the arbitration provision acted "as a 'prospective waiver of a party's right to pursue statutory remedies,'" and therefore could not be enforced. *Id.* at 622 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)).

Plaintiff argues that *Smith* controls the outcome of this issue, because he seeks the same relief as the plaintiff in that case. [194] at 14 (quoting [88] ¶ vi) (Removal of "the fiduciaries who have breached their fiduciary duties" and enjoining "them from future unlawful conduct' and other Plan-wide relief."). Thus, according to Plaintiff, the waivers here remain unenforceable for the same reason the Seventh Circuit invalidated the waivers in *Smith*: they prohibit proposed Class members from obtaining statutory, Plan-wide relief.

As in *Smith*, Plaintiff also "invokes § 1132(a)(2)'s cause of action to seek relief for (alleged) fiduciary breaches under § 1109(a)," including equitable relief. 13 F.4th at 621. Further, just as in *Smith*, the Prayer for Relief in the Amended Complaint requests that the Court "remove the fiduciaries" who allegedly breached their fiduciary duties. [87] ¶ vi. Plaintiff also asks the Cour to "order restitution and disgorgement in favor of the Plan and the Class," "impose a constructive trust for the benefit of the Plan and the Class," and "reform the Plan as appropriate to make the

29

A-29

Class whole." *Id.* ¶¶ vi–x. But the Seventh Circuit in *Smith* took care to note that "the problem with the plan's arbitration provision is not that the plan funnels its participants away from class actions . . ." but instead "is its prohibition on certain plan-wide remedies, not plan-wide representation." *Smith*, 13 F.4th at 622.

That is not the case here. The class action waiver at issue in this matter does not mention remedies, is not part of any arbitration agreement, and, in fact, does not arise from the Plan at all but instead is contained within an employment termination agreement signed by the 33 proposed Class members. *See* Ex. O, [192-16]. Thus, the issues presented in *Smith* do not arise here, and as such, that case is not controlling, because the waiver itself does not contain any language restricting statutory remedies. *See id.* (". . . Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company . . . is a party.").

That said, although "the class action waiver in this case is not encased in an arbitration provision," the *Smith* decision and other circuit court decisions on these issues remain "persuasive and relevant to the Court's analysis in this case." *Arnold v. Paredes*, 714 F.Supp.3d 962, 976 (M.D. Tenn. 2024). The Supreme Court "does not hold that a class action waiver alone violates the effective vindication doctrine." *Id.* at 977. In fact, the Court has "declined to apply that doctrine to invalidate a class action waiver." *Id.* (citing *Italian Colors*, 570 U.S. at 236-37) ("The class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates

30

A-30

those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938 . . . Or, to put it differently, the individual suit that was considered adequate to assure effective vindication of a federal right before adoption of class-action procedures did not suddenly become ineffective vindication upon their adoption.") (internal quotation marks and citations omitted).

Other circuits that have addressed the issue of class-action waivers in ERISA litigation have done so in the context of arbitration agreement enforcement. For example, in *Harrison v. Envision Management Holding, Inc. Board of Directors*, the Tenth Circuit invalidated an arbitration and class action waiver provision of a retirement plan that prevented individuals from seeking plan-wide relief. 59 F.4th 1090 (10th Cir. 2023) *cert. denied*, 144 S.Ct. 280, 217 L.Ed.2d 128. Again, the arbitration provision at issue limited the types of remedies a plaintiff may seek to individual remedies, which the Tenth Circuit observed left unclear "what remedies" the plaintiff "would be left with if . . . enforced as written." *Id.* at 1107. Relying on *Smith*, the court concluded that while the provisions "prohibition on class actions" was not "problematic," the "prohibition of any form of relief that would benefit anyone other than Harrison that directly conflicts with the statutory remedies available under 29 U.S.C. §§ 1109 and 1132(a)(2), (a)(3)," rendering the arbitration agreement unenforceable.[8] *Id.* at 1108–09 (citations omitted).

---

[8] The entire arbitration agreement became unenforceable due to a non-severability clause contained in the Plan Document. *See Harrison*, 59 F.4th at 1112.

31

The Third Circuit also confronted this issue in *Henry v. Wilmington Trust, N.A.*, invalidating a class action waiver contained within an arbitration agreement that prohibited "ESOP participants from bringing a lawsuit that seek[s] or receive[s] any remedy which has the purpose or effect of providing additional benefits or monetary or other relief to any third party." 72 F.4th 499, 507 (3rd Cir. 2023). Again relying on *Smith*, the court found that because "the class action waiver purports to prohibit statutorily authorized remedies," namely, seeking plan-wide relief, "the class action waiver and the statute cannot be reconciled," thus rendering the provision unenforceable. The court also noted that even though the plaintiff's complaint did not seek "removal of a fiduciary," the other forms of relief sought "such as restitution" were "both expressly authorized by statute and necessarily plan-wide," and therefore because the waiver required "ESOP participants to waiver their statutory right to pursue" those plan-wide "statutorily authorized remedies," the effective vindication doctrine applied. *Id.* at 508.

In sum, Seventh Circuit precedent (and case law in other circuits) hold that class action waivers that conflict with a plaintiff's ability to pursue a statutory remedy under ERISA remain barred by the effective vindication doctrine. *See Smith*, 13 F.4th at 620; *Harrison*, 59 F.4th at 1111; *Henry*, 72 F.4th at 508; *Italian Colors*, 570 U.S. at 236–37. *See also Arnold*, 714 F. Supp. 3d at 977–78 (holding the same). Because the class action waivers at issue here pose no restriction on what remedies an individual may seek, *see* Ex. O [192-16], the effective vindication exception to the general enforcement of such waivers does not apply. See *Arnold*, 714 F.Supp.3d at

32

A-32

976 (noting that the Supreme Court has "declined to apply that doctrine to invalidate a class action waiver" without more) (citing *Italian Colors*, 570 U.S. at 236–37).[9]

Because the Court finds that the class action waivers signed by 33 members of the proposed Class remain valid, those individuals may not be included in the Class the Court now certifies under Rule 23(b)(1).

## IV.    Conclusion

For the reasons explained above, the Court grants Plaintiff's motion for class certification [188] and certifies the following class, excluding the 33 proposed Class members who signed the class action waivers discussed above: "All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock who did not sign a class action waiver as part of any employment termination agreement with Company."

Date: March 27, 2026                                     Entered:

John Robert Blakey
United States District Judge

---

[9] Further, there remains no practical limitation on the remedies the 33 proposed Class members may seek. As the Court explained exhaustively above, under *LaRue*, these individuals may seek remedies for their individualized harms resulting from the alleged injury to the Plan. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 n.9 (3d Cir. 2009) (*LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a 'plan,' even if the ultimate relief may be individualized."); *Parker v. Tenneco Inc.*, 114 F.4th 786, 796 (6th Cir. 2024) ("LaRue allows an individual plaintiff to bring a § 502(a)(2) representative suit for losses to her individual plan account, even though the injury is to the plan."). Accordingly, nothing prevents these potential plaintiffs from vindicating any potential statutory rights they may be entitled to under § 502(a) or § 409.

A-33

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MATTHEW DALY, on behalf of himself and all others similarly situated, | ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 1:21-cv-06805 |
| v. | ) ) | |
| | ) | CLASS ACTION |
| WEST MONROE PARTNERS, INC.; THE BENEFITS COMMITTEE OF WEST MONROE PARTNERS, INC. and its members; THE BOARD OF DIRECTORS OF WEST MONROE PARTNERS, INC. and its members; ARGENT TRUST COMPANY; and DOES 1-3. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**AMENDED CLASS COMPLAINT**

**I. INTRODUCTION**

1. Plaintiff Matthew Daly is a participant in the West Monroe Partners, Inc. Employee Stock Ownership Plan (the "Plan"), a defined contribution plan designed to invest primarily in the stock of Defendant West Monroe Partners, Inc. ("West Monroe" or the "Company"), Plaintiff's former employer. Plaintiff brings this action individually and on behalf of the Plan and a Class of its participants and beneficiaries[1] against the Plan's fiduciaries: West Monroe, the Board of Directors of

---

[1] Plaintiff seeks to represent a class of all participants and beneficiaries of the Plan who received a distribution from the Plan in an amount determined based on Defendants' 2020 valuation of Company stock.

1

A-34

West Monroe and its members (the "Board" or the "West Monroe Board of Directors"), and the Benefits Committee of West Monroe and its members (the "Committee") (collectively, the "West Monroe Defendants"), and the Plan's trustee, Argent Trust Company ("Argent" or "the Trustee"), for breach of fiduciary duties and prohibited transactions under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"). Plaintiff also asserts a claim against West Monroe's Board of Directors and its members for breach of fiduciary duties under Delaware law.

2.      West Monroe provides professional consulting services to businesses across various industries. Plaintiff worked for West Monroe as a consultant until late 2020. Like other West Monroe employees, Plaintiff had accrued Company stock in his account in the Plan as part of his compensation for years of service to the Company. Like other departing employees, Plaintiff remained invested in the Plan until September 2021, when West Monroe bought back his stock and cashed him out of the Plan.

3.      As Plan fiduciaries, Defendants had a duty to operate the Plan (a) "solely in the interest of the participants and beneficiaries" and (b) "with the care, skill, prudence, and diligence" that a prudent person "acting in a like capacity and familiar with such matters would use." ERISA § 404(a)(1). Among other things, Defendants had a duty to ensure that Company stock held in the Plan was appraised at fair market value: the price to which a willing and informed buyer and seller would agree in an arms-length sale. In addition, when buying Company stock from participants' accounts, and when distributing the proceeds to Plan participants, Defendants had a duty to ensure that participants received fair market value in exchange for their shares. Participants trusted Defendants to perform their duties with the care and loyalty ERISA requires.

4.      Defendants breached that trust. In April 2021, Defendants appraised the fair value of equity in the Company at approximately $465 million ($515.18 per share) as of year-end 2020 (the

2

A-35

"2020 Valuation"). As the facts below make clear, the 2020 Valuation was neither careful, skillful, prudent, nor diligent, and it grossly undervalued the Company stock held in the Plan. Nonetheless, in September 2021, West Monroe used that 2020 Valuation to purchase almost 28,000 shares of Company stock from the Plan—from the accounts of Plaintiff and Class members—at the discounted price of $515.18 per share. As a result, West Monroe cashed Plaintiff and Class members out of the Plan for well below the fair value of their shares. Within weeks, the Company would reveal that its stock's true fair value was over three times higher than the price the Class received.

5.      By the time they approved that stock buy-back from the Plan, the West Monroe Defendants knew that the Company's share value far exceeded the 2020 Valuation used to pay the Class. Within weeks of making those distributions to the Class, on October 14, 2021, West Monroe announced that it had sold a 50% stake in the Company to a third-party investor, MSD Partners, L.P., at a valuation equivalent to $1,616 per share—over **three times higher** than West Monroe paid the Class. This new valuation did not come out of thin air. Long before the deal closed, the West Monroe Defendants' preparations to sell a stake in the Company would have alerted them that Company stock was worth much more than $515.18 per share.

6.      While Defendants deflated the value of participants' stock, the West Monroe Defendants enabled themselves and other Company management to profit from the upcoming sale. In January 2021, just months before Defendants cashed out the Class, the Company announced that it had "create[d] an additional avenue for its senior leaders" to "benefit from the company's rapid growth" by allowing them to buy additional equity in the Company outside the Plan.[2] West Monroe

---

[2] West Monroe, Press Release: West Monroe Adopts New Incentive Program for Directors That Fuels Firm Investment (Jan. 25, 2021), *available at* https://www.westmonroe.com/press-releases/incentive-program-directors. Specifically, the program allowed Company management to buy equity in West Monroe Partners, LLC, of which West Monroe Partners, Inc. is the sole member and on which its share value depends.

3

A-36

management (including members of the Board and the Committee) could buy equity at a knockdown price of $432.10 per share (based on the 2019 valuation). As a result, West Monroe enabled its senior leaders to buy on the cheap and capture exorbitant profits from the ensuing sale to MSD Partners. Defendants thus enriched West Monroe's senior leaders while the Class suffered millions of dollars in losses.

7.      As Plan fiduciaries, Defendants had the duty to ensure that the Plan's valuation of Company stock "remained a reasonable approximation" of the "fair market value of [the] stock at the times they relied on it." *Donovan v. Cunningham*, 716 F.2d 1455, 1473 (5th Cir. 1983); *see Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006) ("A trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent."). The West Monroe Defendants could have updated that valuation to reflect new information as West Monroe prepared and negotiated the sale to MSD Partners. But they failed to do so. Instead, they used the deflated and outdated 2020 Valuation to buy low from the Class as they sold high to MSD. And in the process, they allowed senior leaders to buy in at the artificially deflated valuation just before it ballooned. These Defendants' double-dealing violated their duties of prudence and loyalty.

8.      West Monroe's bargain buy-back of Company stock from the Plan, for less than 32 cents on the dollar, was not just imprudent and disloyal; it was also a prohibited transaction under ERISA § 406. That provision prohibits direct *or indirect* transactions between the Plan and a party-in-interest as well as self-dealing by fiduciaries for less than adequate consideration. 29 U.S.C. §§ 1106(a)–(b), 1108(e)(1). By causing the transfer of thousands of shares of Company stock from the Plan to West Monroe for a small fraction of their fair value (which increased the value of equity held by Company management), the West Monroe Defendants violated ERISA § 406.

4

A-37

9.      Moreover, the West Monroe Defendants violated ERISA § 404 by failing to disclose the higher valuation and impending sale to Class members before they elected distributions. Had Class members known these facts, they could (and likely would) have chosen to retain balances in their Plan accounts, which would have entitled each Class member to a portion of the proceeds from the sale to MSD Partners and from the liquidation of the Plan—an allocation substantially higher than the distributions they received in September 2021. Participants who retained Plan balances as of the date the MSD sale closed received allocations substantially higher than $515.18 per share in their account.

10.     To remedy Defendants' breaches of fiduciary duties and prohibited transactions, Plaintiff brings this action individually, as a representative of the affected Class of participants and beneficiaries, and on behalf of the Plan under ERISA § 502, 29 U.S.C. §1132(a)(2) and (3). Plaintiff also brings claims under Delaware law to remedy the West Monroe Board of Directors' breach of the fiduciary duties the Directors owed to Class members, who were equitable shareholders of the corporation. He seeks damages resulting from Defendants' breaches and prohibited transactions, as well as any and all equitable or other remedial relief as the Court may deem appropriate.

11.     Plaintiff also brings a claim under 29 U.S.C. § 1132(a)(1)(A) and (c)(1) based on the Company's failure to comply with his written request for the Plan and Trust Documents, instruments under which the Plan was established and operated, in violation of ERISA § 104, 29 U.S.C. § 1024(b)(4). Although Plaintiff requested copies of the Plan and Trust Documents on October 17, 2021, the Company did not provide him with the documents until December 10, 2021, in violation of ERISA § 104. Accordingly, in addition to its liability under §§ 404 and 406, the Company is subject to the penalty provided in § 502(c) for its failure to timely deliver those documents.

A-38

## II. PARTIES

### A. Plaintiff

12. Matthew Daly was a consultant and employee of West Monroe from June 15, 2015 to November 9, 2020. He had a vested balance of approximately 313 shares of Company stock in the Plan until around September 22, 2021, when he received a cash distribution in the amount of $515.18 per share. Mr. Daly suffered significant losses due to Defendants' imprudent conduct, including their undervaluation of and failure to provide adequate consideration for the stock in his Plan account.

### B. Defendants

13. West Monroe Partners, Inc. is a self-described "digital consulting firm" incorporated in Delaware and headquartered in Chicago, Illinois. At all relevant times, West Monroe was the Plan's sponsor, as well as the administrator of the Plan under ERISA § 2(16), 29 U.S.C. § 1002(16), and a named fiduciary under ERISA § 402, 29 U.S.C. § 1102(a). The Company was also a fiduciary of the Plan under 29 U.S.C. § 1002(21)(A) because it exercised discretionary authority and control respecting the management and administration of the Plan. Both the Plan Document and the Plan's Summary Plan Description named West Monroe as the Administrator of the Plan. These documents also expressly empowered the Company to determine the "Valuation Date" under the Plan—the date as of when the value of Company stock held within the Plan was to be determined—and to direct the Trustee with respect to the purchase, sale, and distribution of Company stock. *See* Plan §§ 1.28, 12.1; Plan Amend. 13 (amending § 1.28). The Company acted through the Board and the Committee.

14. The Board of Directors of West Monroe Partners, Inc. was also a named fiduciary of the Plan under 29 U.S.C. § 1102(a) as well as a fiduciary under 29 U.S.C. § 1002(21)(A). The Board has the authority to exercise all the powers of the Company, including with respect to the Plan. The Plan Document expressly named the Board as a fiduciary and empowered the Board to appoint and direct the Plan's Trustee, including with respect to the purchase, sale, and distribution of

A-39

A-40

Company stock. Specifically, the Board had the authority to direct the Trustee to sell, and the Company to repurchase, stock from the Plan, as it did in this case. The Board also had the authority and discretion to change the Valuation Date under the Plan. The Board includes management directors who are executive employees of the Company and who (on information and belief) hold equity in the Company. At the time of the decisions and transactions discussed herein (including in mid-September 2021), the Board's members included the Company's President and CEO, Chief Operating Officer, Chief People Officer, Chief Strategy Officer, and several managing directors.

15. The Benefits Committee, appointed by the Board of Directors of West Monroe, also administers the Plan on behalf of the Company. The Committee's membership overlapped with that of the Board and included the Company's Chief People Officer, Chief Financial Officer, Chief Administrative Officer, Director of Finance, and Senior Manager of ESOP and 401(k) Administration. At all relevant times, the Committee and its members were also fiduciaries under 29 U.S.C. § 1002(21)(A) because, along with the Board and its members, they exercised discretionary authority and control respecting management and administration of the Plan.

16. Argent Trust Company, a Tennessee corporation headquartered in Nashville, TN, was at all relevant times the Plan's Trustee. As Trustee, Argent was a fiduciary of the Plan under 29 U.S.C. § 1002(21)(A) because it exercised discretionary authority and/or discretionary control respecting management of the Plan and its assets. Under the terms of the Plan, the Trustee had the authority and responsibility to determine the value of Company stock and to retain an appraiser to assist in making that determination. As the legal owner of the Company stock held in the Plan, the Trustee had the power and duty to vote shares of Company stock held in the Plan and to sell Company stock held in the Plan as directed by the Company. The Trustee also had the power to "[a]t the direction of the Administrator … make payments from the Trust Fund [i.e., from Plan assets] to the

7

A-40

persons, in the manner, at the times, and in the amounts as the Trustee determine[d] to be proper in accordance with the terms of the Plan." Trust Agreement § 2-6(c). Argent also retained the power "[t]o perform any and all other acts in its judgment necessary or appropriate for the proper and advantageous management, investment, and distribution" of the Plan's assets. *Id.* § 2-6(m).

17. To the extent that Defendants delegated any of their fiduciary functions to another person or entity, the person or entity to which the function was delegated is also a fiduciary under 29 U.S.C. § 1002(21)(A) and is a Doe Defendant.

## III. JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because it is an action under 29 U.S.C. § 1132(a)(2) and (3). This Court also has subject matter jurisdiction under 29 U.S.C. § 1332(a) and (d) because Plaintiff is a citizen of Connecticut and Defendants are citizens of different states, and because at least one member of the proposed Class is a citizen of a state different from Defendants. The Court also has supplemental jurisdiction over Plaintiff's Delaware law claim under 28 U.S.C. § 1367(a).

19. This Court has general personal jurisdiction over West Monroe, which is headquartered in this District, and over any other defendants that reside in this District. This Court has specific personal jurisdiction over all Defendants, including Argent Trust Company, because they took the actions described herein in this District through the management of the Plan and its assets.

20. This District and Division are the proper venue for this action under 29 U.S.C. §1132(e)(2) and 28 U.S.C. § 1391(b) because they are the District and Division in which the subject Plan is administered and where at least one of the alleged breaches took place. They are also the District and Division in which Defendant West Monroe Partners, Inc. resides.

A-41

## IV. ERISA'S FIDUCIARY STANDARDS

### A. Fiduciary Duties of Prudence and Loyalty

21. ERISA § 404(a), 29 U.S.C. § 1104(a), imposes strict fiduciary duties of prudence and loyalty upon the Defendants as fiduciaries of the Plan. They are "the highest [duties] known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 (2d Cir. 1982) (Friendly, J.). ERISA's dual duties of prudence and loyalty apply to all fiduciary acts, including the valuation, *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016), and disposition, 29 U.S.C. § 1002(21)(A), of Plan assets.

22. The duty of prudence required Defendants to discharge their responsibilities "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." ERISA § 404, 29 U.S.C. §1104(a)(1)(B). As part of this duty, Defendants were required "to conduct an adequate inquiry into the value of [Company] stock" held by the Plan, *Allen*, 835 F.3d at 678, and to "communicate material facts affecting the interests of beneficiaries," *Solis v. Current Dev. Corp.*, 557 F.3d 772, 777 (7th Cir. 2009), among other things.

23. The duty of loyalty required Defendants to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries" and "(ii) defraying reasonable expenses of administering the plan." ERISA § 404, 29 U.S.C. § 1104(a)(1)(A). The duty of loyalty is "'[p]erhaps the most fundamental duty of a [fiduciary]'"; it requires fiduciaries to act with an "eye single" to the interests of plan participants. *Pegram v. Herdrich*, 530 U.S. 211, 224, 235 (2000).

24. ERISA § 404(a) also required Defendants to operate the Plan "in accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent" with ERISA and the duties of prudence and loyalty outlined above.

A-42

### B. Prohibited Transactions

25.     As a corollary to the duty of loyalty, ERISA § 406 also presumptively prohibits certain transactions between the Plan and a party in interest, including any plan fiduciary, the plan administrator, or the sponsoring employer. *See* 29 U.S.C. § 1002(14) (defining "party in interest"). First, ERISA § 406(a)(1), 29 U.S.C. §1106(a)(1) states:

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect –
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing of goods, services, or facilities between the plan and party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

26.     In addition, ERISA § 406(b), 29 U.S.C. § 1106(b) prohibits self-dealing by a fiduciary to the Plan. That section provides:

> A fiduciary with respect to a plan shall not—
>
> (1) deal with the assets of the plan in his own interest or for his own account,
>
> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
>
> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

27.     Engaging in any of these prohibited transactions constitutes a *per se* violation of ERISA, unless the transaction is exempt under ERISA § 408. In relevant part, ERISA § 408(e)

A-43

permits the purchase or sale of qualifying employer securities (i.e., company stock) with parties in interest or fiduciaries, but only if "such acquisition, sale, or lease is for adequate consideration," 29 U.S.C. § 1108(e)(1), or "fair market value," 29 U.S.C. § 1002(18)(B). "Fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *Eyler v. Comm'r*, 88 F.3d 445, 451 (7th Cir. 1996). Fair market value "must be determined as of the date of the transaction." D.O.L., Proposed Regulation Re: Adequate Consideration, 53 FR 17632-01.

## C. Fiduciary Liability Under ERISA

28. Fiduciaries to the Plan are liable to make good to the Plan any harm caused by their breach of fiduciary duty. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes participants and beneficiaries to sue on behalf of the Plan for the relief under ERISA § 409, 29 U.S.C. § 1109(a), which provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29. In addition, ERISA § 502(a)(3) authorizes actions by participants and beneficiaries on their own behalf: "(A) to enjoin any act or practice which violates" ERISA or the terms of the plan, or "(B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3).

## D. Duty to Monitor

30. A fiduciary who delegates its fiduciary responsibility to another nonetheless retains a duty to appoint and monitor that delegate's performance of its delegated responsibilities with the care, skill, prudence, diligence, and loyalty required under § 404, and may be held liable for failing

A-44

to discharge those duties in appointing or monitoring its delegates. 29 U.S.C. §1105(c)(2)(B).

### E. Co-Fiduciary Liability

31.    ERISA provides for co-fiduciary liability where a fiduciary knowingly participates in, or knowingly fails to cure, a breach by another fiduciary. Specifically, under 29 U.S.C. § 1105(a), a fiduciary shall be liable for a breach of fiduciary duty by a co-fiduciary if:

> (1) he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) by his failure to comply with [29 U.S.C. § 1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

32.    In addition to direct liability for their own breaches, fiduciaries are subject to co-fiduciary liability under ERISA § 405 if they participate knowingly in another's breach, enable another fiduciary to commit a breach through a breach of their own duties, or if they learn of but fail to remedy other fiduciaries' breaches of their duties. 29 U.S.C. § 1105(a)(1)–(3).

## V. THE PLAN

33.    The Plan was a defined contribution plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2) and is subject to coverage under the Act under ERISA § 4(a), 29 U.S.C. § 1003(a). Designated as an employee stock ownership plan (or "ESOP"), the Plan was designed to invest primarily in Company stock, which the Plan holds in trust for the benefit of Plan participants, who are current and former employees. West Monroe employees automatically became Plan participants on January 1, 2012, or if hired later, on the first day of the month following their employment date. The Company contributed cash and stock to the Plan. Company contributions were allocated to participant's individual accounts based on that participant's years of service and compensation.

A-45

A-46

34. The Trustee was the legal owner of the Company stock in the Plan and had the power and responsibility to vote that stock as directed by the Board for the exclusive benefit of Plan participants. Plan participants are beneficial owners of the vested Company stock in their accounts.

35. A participant's account vested according to a schedule that depends on their tenure with the Company. For participants hired before December 31, 2019, such as Plaintiff, the participant's account fully vested after three years of employment with the Company.

36. Former employees could (for a time) remain participants in the Plan and retain beneficial ownership of their Company stock. In the year after a former employee's separation, the Company would buy back the former employee's interest in Company stock. In particular, the Plan provided that a distribution of a participant's Company stock account "shall be made in the form of either (A) cash, or (B) Company Stock, subject to the requirement that the Company Stock be immediately sold back to the Company or back to the Trust at a price equal to its fair market value." Participants could receive the proceeds from the redemption in cash (subject to applicable taxes) or roll them from the Plan into a 401(k) plan or individual retirement account (IRA).

37. If a former employee failed to make an election within a 30 to 60-day election window, and the value of their account exceeded $5,000 (as did Plaintiff's), the Trustee would convert the Company shares in the participant's account into cash "based on the most recent value of the shares" and invest the proceeds "in a mutual fund in the [Plan] or transfer[] [them] to [the participant's] account in the [Company's] 401(k) plan." Jan. 2021 Summary Plan Description ("SPD") at 12. In this case, the Company represented that if Class members did not make their elections in 2021, the Trustee would convert their shares into cash before the year's end.

## VI. VALUATION OF COMPANY STOCK IN THE PLAN

38. Unlike publicly-traded stock, which is valued continuously by market makers and specialists during normal market hours, West Monroe's stock was and is private: it is not traded on

13

a public exchange and does not always have a current, readily available market price or valuation. As a result, Defendants had to determine the fair market value for Company stock in the Plan. As described in the Plan's public filings, "Fair value is the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date."[3] The Plan directed the Trustee to determine the fair market value "in good faith and based on all relevant factors for determining the fair market value of securities." Plan § 5.4.

39. After the end of each calendar year, the Trustee, with the assistance of an appraiser, conducted a valuation to determine the fair market value of Company stock as of December 31 of the prior year, and Defendants typically announced the results the following spring. Thus, for example, in April 2021, Defendants announced the Company's valuation as of December 31, 2020. As detailed below, that valuation substantially undervalued the Company as of year-end 2020.

40. The Company retained the discretion to have the Trustee value Company stock as of any other date or dates that the Company deemed "necessary or appropriate" for the valuation of Company stock held in participants' accounts. In particular, the Plan provided that, in general, the value of Company stock "must be determined as of the most recent Valuation Date under the Plan." Plan § 5.4. The Plan defined "Valuation Date" as "the last day of the Plan Year," i.e., December 31, and any "other date or dates deemed necessary or appropriate by the Administrator for the valuation of Participants' Accounts during the Plan Year." *Id.* § 1.28, amend. 13. The West Monroe Defendants retained this discretion so that they could obtain an updated valuation in the event of material changes, either positive or negative, that would affect the value of Company stock.

41. In this case, however, despite having notice that the fair market value of Company stock was substantially higher than the 2020 Valuation appraised in April 2021, the West Monroe

---

[3] See, e.g., West Monroe Partners Employee Stock Ownership Plan Form 5500 (2019), Financial Statement, at 11, available at https://www.efast.dol.gov/5500search/.

14

A-47

A-48

Defendants failed to exercise their discretion to update the value of Company stock before they redeemed the Class's shares for less than fair market value. This failure violated their fiduciary duties of prudence and loyalty under ERISA, as detailed further below.

## VII. DEFENDANTS' BREACHES OF FIDUCIARY DUTY

### A. Defendants Imprudently Undervalued Plan Assets

42. In April 2021, the Trustee completed an annual valuation of the Company stock held in the Plan (the "2020 Valuation") ███████████████████████████████████ ████████████████████████████. Based on the 2020 Valuation, in April 2021, Defendants announced that the value of Company stock as of December 31, 2020 was $515.18 per share. At the time, however, Defendants knew or should have known that the value of the Company far exceeded $515.18 per share. As detailed below, contemporaneous with the 2020 Valuation, the West Monroe Defendants were preparing to sell a stake in the Company for a substantially higher share price. Nonetheless, they used the undervalued appraisal to repurchase the shares in Class members' accounts at well below fair market value, causing Plaintiff and the Class millions of dollars in losses.

### i. Starting in 2020, West Monroe Achieved "Explosive Growth," Positioned Itself for a Sale, then Enabled High-Ranking Leaders to Capture the Profits

43. Long before the 2021 sale to MSD Partners, West Monroe took steps to drive up the Company's value, position it for a sale, and enable high-ranking employees to reap the profits.

44. To increase their value and market themselves to potential buyers, private companies typically implement a preparation strategy well before any sale. As part of that strategy, companies often first lay off employees, especially highly-compensated employees, to reduce expenses, make the company appear more profitable, and increase its attractiveness to investors.

15

A-48

45.     In October 2020, West Monroe laid off approximately 90 employees—nearly 10% of its workforce—including highly-compensated consultants. At a later internal meeting, West Monroe's leadership explained that it made the layoffs to position the Company for planned growth.

46.     On information and belief, West Monroe made the October 2020 layoffs to reduce its expenses and anticipated the terminations would raise the Company's value to potential buyers.

47.     Next, to position themselves for a sale, companies will often make acquisitions to shore up gaps in their offerings. In 2020, West Monroe acquired two companies. Both acquisitions were designed to and would have increased the Company's value as of year-end 2020.

48.     On or around November 4, 2020, West Monroe acquired Pace Harmon, a national strategy and outsourcing advisory firm. This was then the largest acquisition in the Company's history. As a result of the acquisition, West Monroe established a new office in Washington, D.C. In a Press Release, West Monroe boasted that the acquisition of Pace Harmon would add "depth in transformation advisory for West Monroe, as well as new capabilities in IT strategy and business process outsourcing, procurement, and vendor management." West Monroe added that with the acquisition of Pace Harmon, the Company would "finish 2020 with 13 consecutive years of top-line revenue growth and EBITDA growth," growth that would have raised the Company's value.[4]

49.     On or around December 1, 2020, West Monroe acquired Two Six Capital, a firm that develops data science tools to advise private equity firms. The acquisition was a strategic investment that added significant value to West Monroe's private equity consulting business, which generates a substantial portion of West Monroe's revenue. With it, West Monroe added "Intellio

---

[4] West Monroe, Press Release: West Monroe Acquires Strategy and Outsourcing Advisory Firm Pace Harmon (Nov. 4, 2020), *available at* https://www.westmonroe.com/press-releases/west-monroe-acquires-pace-harmon. EBITDA stands for "Earnings Before Interest, Taxes, Depreciation, and Amortization." Companies and analysts often calculate enterprise value by applying an appropriate multiple to EBITDA.

16

A-49

Predict," proprietary technology developed by Two Six Capital, to its proprietary Intellio® suite of tools. Along with Two Six, the Company also gained two new directors with deep experience in private equity, including one (Ian Picache) who had years of experience in advising on private equity transactions. West Monroe's Chief Strategy Officer, Tom Bolger, characterized the Two Six acquisition as "another step in a series of strategic moves" to increase West Monroe's value.[5]

50. Finally, companies preparing to sell often implement a retention initiative to prevent defections of key employees as news of the company's intent to sell starts to leak internally. In January 2021, West Monroe announced a new program (the "Capital and Profits Interest Program") to enable the Company's "directors" (around 120 of the Company's senior leaders) to acquire additional equity in the Company *outside of the Plan*. In the Company's words, this change "create[d] an additional avenue for senior leaders to invest in and benefit from the company's rapid growth, in addition to their participation in the employee stock ownership plan (ESOP)."[6] In other words, the Company opened a backdoor for directors to capture more of the Company's growth in value than its lower-level employees, who owned Company equity only through the Plan.

51. The investment banker Macquarie Capital and the law firms of Mayer Brown LLP and Polsinelli PC—three firms that would advise the Company on the October 2021 deal to sell 50% of its stock to MSD Partners—all advised the Company concerning the launch of the Capital and Profits Interest Program. On information and belief, the Company launched the program in anticipation of a potential sale of Company stock to a third-party investor.

---

[5] West Monroe, Press Release: West Monroe Acquires Two Six Capital, a Data Science Firm for Private Equity, *available at* https://www.westmonroe.com/press-releases/west-monroe-acquires-two-six-capital-data-science-firm-private-equity.

[6] West Monroe, Press Release: West Monroe Adopts New Incentive Program for Directors That Fuels Firm Investment, *available at* https://www.westmonroe.com/press-releases/incentive-program-directors.

A-50

  ii. **Public Information Suggests that Defendants Substantially Undervalued the Company as of December 31, 2020**

52. On April 13, 2021, West Monroe reported that the Company had "achiev[ed] explosive growth in 2020."[7] On April 16, 2021, however, West Monroe announced that its stock had appreciated only 19.2% during 2020 (from $432.10 as of December 31, 2019 to $ 515.18 as of December 31, 2020): by far the smallest rise in stock price since the Plan incepted. West Monroe's purported 19.2% appreciation in 2020 was also far below its compound annual growth rate ("CAGR") of 56% over the preceding seven years and 23% over the preceding 10 years.[8]

53. Table 1 shows the Plan's annual valuations for each year-end from 2012 through 2020 and the percentage change in that valuation relative to the previous year. The fourth column compares West Monroe's change in valuation with the returns of the market, represented by the Russell 2000® Index. The Russell 2000 index is a well-recognized market index made up of 2,000 small public companies with a median market capitalization of approximately $1.2 billion.[9] Whether valued at $465 million (the total equity value assessed in the 2020 Valuation) or approximately $1.4 billion (as implied by the price MSD paid), West Monroe was comparable in size to the public companies listed in the Russell 2000 index, whose yearly returns are listed below.

---

[7] West Monroe, Press Release: West Monroe Expands Human Capital Management Capabilities to Address Swelling Demand for People, Organization, and HR Consulting, *available at* https://www.westmonroe.com/press-releases/human-capital-management-expansion.

[8] West Monroe, Press Release: West Monroe Adopts New Incentive Program for Directors That Fuels Firm Investment, *available at* https://www.westmonroe.com/press-releases/incentive-program-directors.

[9] A company's "market capitalization" is equal to the number of shares of common stock outstanding multiplied by the market price of those shares.

18

A-51

| Table 1 | | | |
|---|---|---|---|
| Year | Appraised Share Value | Percent Change | Performance of the Russell 2000 Index |
| 2012 | $19 | — | — |
| 2013 | $40.9 | **115.3%** | 38.82% |
| 2014 | $70.5 | **72.4%** | 4.89% |
| 2015 | $92.8 | **31.6%** | -4.41% |
| 2016 | $119.60 | **28.9%** | 21.31% |
| 2017 | $186 | **55.5%** | 14.65% |
| 2018 | $262 | **40.8%** | -11.01% |
| 2019 | $432.10 | **64.9%** | 25.52% |
| 2020 | $515.18 | **19.2%** | 19.96% |

54. As shown in Table 1 above, 2020 was the first year since the Plan's inception that West Monroe's investment performance was lower than that of the Russell 2000 Index.

55. West Monroe's next equity valuation, at approximately $1.4 billion (or $1,616 per share) by October 2021, confirms that Defendants had grossly undervalued the Company as of December 31, 2020. A rise in value from $515.18 per share on December 31, 2020, to $1,616 per share in October 2021, would have been a 213% appreciation. It is extremely unusual for a consulting firm to more than triple in value in under ten months, and it is implausible that West Monroe did so. Far more likely, West Monroe's stock was already significantly more valuable on December 31, 2020 than the $515.18 price appraised in April, but either the Trustee failed to

A-52

A-53

conduct an adequate appraisal or the Company failed to provide the Trustee with material information, or both.

56. Indeed, there was only one public company classified in the Management and IT Consulting Services Industry (SIC Code 8742)[10] whose enterprise value (as distinct from its stock price) grew by more than 213% from December 31, 2020 to October 2021, but that company (Apollo Medical Holdings, Inc.) was an outlier, whose value jumped because it joined the S&P 600 small cap index in June 2021. Thus, no comparable company grew as much as West Monroe would have had to grow to reconcile the 2020 Valuation with the October 2021 sale price.

iii. ████████████████████████████
████████████████

57. ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████ ████████████████████
████████████████████████████████████
███████████████████████████

58. The discounted cash flow approach considers the company's actual and forecast cash flows and applies a discount rate—equal to the "weighted average cost of capital" for the firm ("WACC")—as to future cash flows to arrive at the net present value of the enterprise. For the final



A-54

year of the analysis period, the final cash flow is discounted at a terminal long-term growth rate (i.e., the rate at which the company can expect to grow in perpetuity).

59. Under this approach, West Monroe's value could have tripled in nine months (between January and October 2021) in one of only four ways: i.e., if the company's forecast earnings and cash flow tripled, if its weighted average cost of capital (WACC) decreased significantly, if the terminal growth rate increased significantly, or some combination of these three factors. On information and belief, none of these conditions occurred here.

60. First, the Company's projected net revenues for 2021–2025 ███████ which does not account for a three-fold increase in value.

61. Second, West Monroe's WACC could not reasonably have decreased significantly over the relevant period. WACC, a measure of the relative risk of an investment, comprises of the risk-free interest rate (the rate at which the government borrows) and company-specific risk factors.

███████████████████████

███████████████████████

███████████████████████

███████████████████████

███████████████████████

███████████████████████

████████████████████

62. Third, the terminal growth rate should not have been much lower in 2020 ████

███████████████████████

███████████████████████

███████████████████████

21

A-54



63.     Accordingly, it is highly unlikely that West Monroe's value tripled from December 31, 2020 to the date of the MSD transaction under the discounted cash flow approach.

66.     The market (or "guideline public company" approach) also suggests that the 2020 Valuation undervalued the Company. Under the market approach, an appraiser first selects a set of comparable publicly-traded firms and calculates a set of multiples that reflect the value of those firms (as determined by the market) relative to each comparator's financial metrics (i.e., its revenue or its EBITDA). The appraiser then uses those multiples as benchmarks to determine an appropriate multiple for the company to be valued based on relative size, expected growth, risks, and profitability. Under this approach, West Monroe's value could have tripled in nine months in one of only three ways: i.e., if the comparable market multiples tripled over the nine months between December 2020 and October 2021, if West Monroe's financial performance tripled over the same nine months, or a combination of the two. All three of these scenarios are highly unlikely, as explained below.

22

A-55

A-56

67.     The tables below show the market multiples as of December 31, 2020 and November 9, 2021 for a set of companies offering similar consulting services, including multi-faceted consulting firms, IT consultants, and strategy and management consultants. ████████████████████ ████████████████████████████████████████ **Table A** shows the multiples for the enterprise value of each company relative to its projected EBITDA, while **Table B** shows the multiples for the enterprise value of each company relative to its revenues. ████████████

████████████████████████████████████████████████████

████████████████████████████████████████

68.     As shown below, to reconcile the 2020 Valuation with the more reliable value assessed at the time of the 2021 MSD Transaction (which was supported by a contemporaneous transaction with a sophisticated arms-length buyer), West Monroe's valuation multiple would have needed to expand at an unparalleled rate████████████████████████████████

████████████████████████████████████████

23

A-56

| Table A | | | |
| --- | --- | --- | --- |
| **Multiple Expansion of West Monroe and Comparators Relative to EBITDA** | | | |
| **Company** | EBITDA Multiple (2020) | EBITDA Multiple (2021) | Percent Increase |
| ████ | █ | █ | ██ |
| ████ | | | ██ |
| ██ | █ | █ | |
| ████ | | | ██ |
| ████ | █ | █ | |
| ████ | █ | █ | █ |
| ████ | █ | █ | █ |
| ██ | █ | █ | █ |
| ████ | █ | █ | █ |
| ██ | █ | █ | █ |
| ████ | █ | █ | █ |
| ████ | █ | █ | ██ |
| ██ | █ | █ | ██ |
| ██ | █ | █ | |
| ████ | █ | █ | |

| Table B | | | |
| --- | --- | --- | --- |
| **Multiple Expansion of West Monroe and Comparators Relative to Revenue** | | | |
| **Company** | Revenue Multiple (2020) | Revenue Multiple (2021) | Percent Increase |
| ████ | █ | █ | ██ |
| ████ | | | ██ |
| ██ | █ | █ | |
| ████ | █ | █ | ██ |
| ████ | █ | █ | █ |
| ████ | █ | █ | █ |
| ████ | █ | █ | █ |
| ██ | █ | █ | █ |
| ████ | █ | █ | █ |
| ██ | █ | █ | █ |
| ████ | █ | █ | █ |
| ██ | █ | █ | █ |
| ██ | █ | █ | █ |
| ████ | █ | █ | █ |

24

A-57

A-58

69. ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ Far more likely, the 2020 Valuation assigned a deflated multiple to the Company and, therefore, appraised the Company at far lower than fair market value.

### iv. Defendants Should Have Known by April 2021 that the 2020 Valuation was Too Low

70. Information available to Defendants before April 2021, when they announced the 2020 Valuation, would have alerted a diligent fiduciary that the Company was worth more than $515.18 per share. As the Company's Directors and C-Suite executives, both the members of the Board and the Benefits Committee had access to the Company's financial statements and projections, as well as all relevant information about the Company's expected growth, risks, and profitability. As the Trustee charged with assessing the value of Plan assets, moreover, Argent should have requested all information relevant to the valuation. Even the minimal information Defendants have thus far provided reveals facts that would have raised red flags for a prudent fiduciary before April 2021.

██ ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██ ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

25

A-58

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████

> **v.** **Defendants Grossly Undervalued the Plan's Stock as of September 2021**

73.     By mid-September 2021, when the West Monroe Defendants approved the Company's repurchase of the Class's shares, it would have long been patently obvious to the West Monroe Defendants that the fair market value of West Monroe's stock was many times higher than the modest 2020 Valuation. Within four weeks, by October 5, 2021, they had valued Company stock at approximately $1,616 per share (or more)—over **three times** the 2020 Valuation—and had agreed to sell half the Company to MSD Partners for that dramatically higher price.

74.     To effectuate the sale to MSD, Defendants liquidated the Plan. On October 5, 2021, they entered into a Stock Purchase Agreement to sell *all* Company stock in the ESOP to a newly-formed corporation (WMC IntermediateCo.). As an ultimate result of that transaction, the Plan was terminated, MSD acquired a 50% stake in the Company, and West Monroe retained the other 50%.

75.     Selling a multi-billion-dollar company is a complex transaction that requires extensive planning and preparation long before the sale, especially when that sale involves liquidating an ESOP. To prepare for such a sale, companies customarily hire financial and legal advisors to assist in the process of valuation, negotiation, and review of various aspects of the transaction. On the other side of the deal, a private equity firm contemplating the purchase of 50% of a company at over a billion dollars would engage in its own process of appraisal and deliberation, including a comprehensive review of business operations, key personnel, and customer contracts.

26

A-59

Often, the parties must also obtain outside financing for the transaction. The process of preparing for and negotiating such a deal typically takes several months and often stretches on for over a year.

76. ███████████████████████████████████████████████████

████████████████████████████████ West Monroe engaged investment bankers Guggenheim Securities, LLC and Macquarie Capital to conduct a sale process. These investment bankers would have advised the Company on valuation and deal structure. The Company also retained the law firms of Katten Muchin Rosenman LLP, Mayer Brown LLP, and Polsinelli PC to provide legal advice. MSD Partners engaged Houlihan Lokey, Inc. as an advisor. Blackstone Inc. and Owl Rock Capital Corp. financed the transaction.[12]

77. As a routine and customary practice, before entering a negotiation for a corporate acquisition as large and complex as West Monroe's partial acquisition by MSD Partners, a sophisticated corporate seller such as West Monroe obtains an up-to-date valuation from a financial advisor or appraiser to inform negotiations with a prospective buyer. The seller typically obtains such a valuation more than one month in advance of any agreement to an acquisition.

78. Accordingly, before entering the October 5 agreement with MSD Partners, the West Monroe Defendants would have procured a more recent valuation of the Company in preparation for negotiations with MSD and other potential buyers. Consistent with industry practice, the size and complexity of the transaction, the likelihood of protracted negotiations, and the need for review and approval by multiple parties and advisors, they would have obtained that valuation of the Company more than one month before they entered the sale agreement on October 5, 2021.

---

[12] West Monroe, Press Release: West Monroe announces strategic investment by MSD Partners (Oct. 14, 2021), *available at* https://www.westmonroe.com/press-releases/west-monroe-announces-strategic-investment-msd-partners.

A-60

79.     Based on industry practice and the size and circumstances of the transaction, well before mid-September 2021, West Monroe would have been in active negotiations and/or a bidding process with prospective buyers in anticipation of the sale. By mid-September 2021, the ongoing negotiations ███████ for the sale of Company stock revealed that informed arms-length buyers were willing to pay a price for Company shares that was substantially higher than the 2020 Valuation ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

80.     Well before mid-September 2021, then, the West Monroe Defendants and their investment bankers would have forecasted that in an orderly transaction between market participants, the fair market value of Company stock was close to three times the 2020 Valuation.

81.     As the Company's governing body, the Board, which included C-Suite executives, would have been timely informed of all material facts regarding the Company's business, operations, and valuation, and all material facts regarding the negotiations with MSD and other potential buyers.

████████████████████████████████████████

████████████████████████████████████████

███████████████████████. The Board approved the redemption and the stock sale to MSD.

82.     On information and belief, the members of the Benefits Committee, which included C-Suite executives such as the Chief Financial Officer and Chief People Officer (who was also a member of the Board), also knew of all material facts regarding the Company's business, operations, and valuation, and all material facts regarding the negotiations with MSD Partners and other potential buyers. On information and belief, before it approved the terms of the redemption of the Class's

28

A-61

shares at the 2020 Valuation for recommendation to the Board, ██████████████████

██████████████████████████████████████.

83.    As noted above, the West Monroe Defendants had the discretion and, under the circumstances, the obligation to update the valuation of Company stock before the Company bought back shares from the Plan. Nonetheless, despite having information—including ████ likely an updated valuation—indicating that the current value of Company stock was far higher than the 2020 Valuation, the West Monroe Defendants turned a blind eye to their fiduciary duties and used the stale 2020 Valuation to cash out the Class at a price far below the fair market value of their stock.

**B. Defendants Caused the Plan to Engage in a Prohibited Transaction with West Monroe, a Fiduciary, for Less than Adequate Consideration**

84.    Plaintiff separated from the Company in November 2020. Between June 11 and August 9, 2021, Plaintiff and the rest of the Class elected a distribution of their account balances from the Plan, to be implemented (according to the Company) in late September or October of 2021. Collectively, these Plan participants held a vested beneficial interest in approximately 27,960 shares of Company stock. The Company assigned those shares a total value of approximately $14,404,808 based on the 2020 Valuation. However, based on the contemporaneous deal with MSD Partners, the actual value of the Class's shares was at least $45,184,540 (or $1,616 per share).

85.    Nonetheless, on or about September 21, 2021, West Monroe forced the Plan to transfer those 27,960 shares of Company stock to the Company at the 2020 Valuation ($515.18 per share), and Plaintiff and the Class received the proceeds of the redemption as distributions. Specifically, the Board directed Argent (as the Plan's Trustee) to release the 27,960 shares from the Plan for purchase by the Company at $515.18 per share.[13] The shares were then "immediately and

---

[13] As a member of the Benefits Committee wrote to Plaintiff, describing how the transaction would occur: "the ESOP Trustee is being directed by the Board to push out the shares, to be bought[.]"

29

A-62

automatically sold back to the Company" at the 2020 Valuation of $515.18 per share, as both the Summary Plan Description and West Monroe itself described the transaction. Next, Argent directed the Plan's recordkeeper (Principal) to distribute the proceeds to Class members (or to their IRA or 401(k) accounts, if the participant so elected), in proportion to the number of shares formerly held in each participant's account, at the 2020 Valuation of $515.18 per share.

86.     In or around late August 2021, the Benefits Committee approved the transaction described above and recommended that the Board approve the same. In mid-September 2021, the Board directed the Company's repurchase of Company stock from the Plan at or around the price of $515.18 per share. When the West Monroe Defendants directed and entered those transactions, they knew or should have known that the 2020 Valuation was well below the fair market value of the Company stock, both as of December 31, 2020 and as of mid-September 2021, the date of the decision.

87.     Plaintiff and Class members never held Company stock or exercised any control over Company stock involved in the September 2021 transaction, except for electing the ultimate destination for the proceeds.[14] The West Monroe Defendants, not the Plan participants, determined the terms of the transaction, including the timing of the sale and price the Company would pay for the shares of Company stock held in Plaintiff's and Class members' accounts in the Plan. Plan Participants could not keep Company stock or decide to sell it to anyone or on any terms other than those determined by the West Monroe Defendants. Nor was the stock in Plaintiff's account ever transferred to an account he owned other than his account in the Plan.

---

[14] As a member of the Benefits Committee wrote to Plaintiff, describing the redemption transaction, "***You are not getting stock*** so you don't have to put it in a brokerage account to 'sell' your stock. The 'sale' is handled behind the scenes; ***you will only get cash from your distribution election***." (emphasis added).

A-63

**C. The West Monroe Defendants Withheld Material Information from the Class and Deprived the Class of the Proceeds of the Sale**

88.     On October 5, 2021, West Monroe agreed to the sale of 50% of the Company to MSD Partners, a private equity firm. The sale was set to close on or about November 9, 2021. As noted earlier, to effectuate the transaction, Defendants sold the Plan's stock to WMC IntermediateCo. (the "Stock Sale"). By amendment to the Plan effective November 9, 2021, Defendants allocated the proceeds among the accounts of Plan participants who had *not* elected distributions. Plan §§ 16.2, 16.4(a), amend. 16. The amendment allocated the funds pro rata based on each such participant's Company Stock Account balance as of the last Valuation Date: December 31, 2020. *Id.* §§ 16.4(a), 16.5(b).  Participants could then choose to roll their allocations into a new stock fund in the West Monroe 401(k) plan or to receive them as cash distributions. *See id.* §§ 16.2(b), 16.5(e).

89.     On information and belief, all Plan participants (including former employees) who (a) like the Class, had held Company stock through the Plan as of January 1, 2021, and (b) unlike the Class, had not elected distributions of their accounts, received an allocation of the proceeds from the Stock Sale in an amount equal to **nine times** the value of their Company Stock Account balance as of December 31, 2020 (as assessed in the 2020 Valuation). Specifically, Plan participants who remained invested in the Plan received proceeds from the sale of the stock in their accounts, as well as proceeds from the sale of additional Plan stock allocated to them before the Stock Sale closed.[15]

90.     Accordingly, if Plaintiff and other Class members had remained invested in the Plan (whether through stock or liquid assets), they would have received a portion of the proceeds from the Stock Sale, allocated based on the balance of their Plan Stock Accounts as of December 31, 2020 (or the most recent Valuation Date under the Plan, if later). In the alternative, even absent the Stock Sale

---

[15] In addition to the approximately 300,000 shares in participants' accounts, the Plan held approximately 564,000 unallocated shares that were allocated to the remaining participants as part of the transaction.

31

A-64

and the Plan's resulting liquidation, the Trustee would have converted the Company shares in their accounts to cash "**based on the most recent value of the shares**" and invested the proceeds in a mutual fund in the Plan or transferred to their accounts in the Company's 401(k) plan. SPD at 12. As explained, the "most recent value" of Company stock was far higher than $515.18 when the Class made their elections. In either case, if Plaintiff and the Class were informed that value of Company stock was substantially higher than the 2020 Valuation, and/or of the impending Stock Sale, they could (and likely would) have chosen to defer their distributions and, therefore, would have received many times the $515.18 per share they received in the September 2021 distribution.

91.     As explained earlier, the West Monroe Defendants knew or should have known months in advance that the Company was planning to sell and liquidate the Plan and that the value of the Plan's stock was higher than the 2020 Valuation. As early as July 2021, news leaked to certain employees inside the Company that the Company was considering terminating the ESOP. Still, the West Monroe Defendants never disclosed to Plaintiff or the Class the anticipated Stock Sale or sale to MSD Partners, nor the results of any valuation that occurred after the 2020 Valuation, nor any offer made by a third party to buy shares of Company stock, nor the fact that the fair market value of Company stock exceeded the 2020 Valuation. Defendants failed to disclose that if Class members did not elect distributions and remained invested in the Plan, they were likely to receive an amount substantially higher than the $515.18 per share distributed in September 2021.

92.     Instead, the Company repeatedly pressured Plaintiff and Class members to make elections, against the Class's best interests and to the benefit of the Company and its leadership. In a document distributed to the Class in May and June 2021, the Company wrote: "**We strongly encourage you to make a distribution election now**" (bold text in original). When Plaintiff did not make an election in June 2021, on July 7, 2021, the Company's Senior Manager of ESOP and 401(k)

32

A-65

Administration wrote him to "confirm that you are working on making your election," noting that Plaintiff "had a rather large balance." On July 23, 2021, the same senior manager emailed the Class again urging them to make elections, noting that he had "tried to reach out to all of you via email, phone calls, and LinkedIn" to remind them to elect distributions. The following week, after "only six new elections were made," he wrote the Class that this was "a disappointment," and that he would "try calling again" the following week to "see if [he could] get some more elections." As a result of the Company's pressure campaign, Plaintiff and all 146 members of the Class elected distributions.

## VIII.    CLASS ACTION ALLEGATIONS

93.    Plaintiff brings this suit under ERISA § 502(a)(2) on behalf of the Plan, as well as under § 502(a)(3) individually. Plaintiff also brings a claim for breach of fiduciary duty under Delaware law. To enhance the due process protections of unnamed participants and beneficiaries of the Plan, and to obtain relief for similarly situated participants under § 502(a)(3), Plaintiff seeks to certify this action as a class action and to represent the following Class:

**Class Definition**: All participants in the Plan who received a distribution in an amount determined based on the 2020 Valuation of Company stock.

94.    This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

      a. The Class includes approximately 146 members and is so large that joinder of all its members is impracticable.

      b. There are numerous questions of law and fact common to the Class because the Defendants owed the same fiduciary duties to the Plan and to all participants and beneficiaries and took a common course of conduct as alleged herein as to the Plan that affected all class members through their participation in the Plan in the same way. Thus, questions of law and fact common to the Class include the

33

A-66

following: (1) whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. §§1109(a), 1132(a)(2), 1132(a)(3), and Delaware law; (2) whether Defendants breached their fiduciary duties to the Plan and participants by (i) employing an imprudent process for valuing Company stock in the Plan; (ii) failing to conduct, obtain, or use an up-to-date valuation for the 2021 stock redemption; (iii) failing to disclose to the Class material information that would have affected their distribution decision; (iv) causing the Plan to sell company stock to West Monroe for less than fair market value; and (v) making distributions to the Class for less than fair market value; (3) whether the transfer of Company stock from the Plan to West Monroe was a prohibited transaction under ERISA; (4) what are the losses to the Plan and the Class resulting from each breach of fiduciary duty; and (5) what Plan-wide equitable and other relief the court should impose in light of Defendants' breaches of duty.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant at all relevant times and remains a participant under 29 U.S.C. § 1002(7). Plaintiff, like the Class, received a distribution in 2021 based on the undervalued 2020 Valuation. Thus, all Class members were harmed by Defendants' breaches of fiduciary duties and prohibited transactions.

d. Plaintiff is an adequate representative of the Class because Plaintiff was a Plan participant at all relevant times, remains a participant under 29 U.S.C. § 1002(7), has no interest that conflicts with the Class, is committed to the vigorous representation of the Class, and has engaged experienced and competent attorneys to represent the Class.

A-67

e. There are no substantial individual questions of law or fact among Class members on the merits of this Action.

95. Prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendants in respect to the discharge of their fiduciary duties to the Plan and the Class and personal liability to the Plan and the Class. Moreover, adjudications by individual participants and beneficiaries regarding the alleged breaches of fiduciary duties and remedies for the Plan and the Class would, as a practical matter, be dispositive of the interests of the participants and beneficiaries not parties to the adjudication or would substantially impair or impede those participants' and beneficiaries' ability to protect their interests. Therefore, this action should be certified as a class action under Rule 23(b)(1)(A) or (B).

96. Additionally, or in the alternative, certification under Rule 23(b)(2) is appropriate because the Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

97. Additionally, or in the alternative, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B). A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all participants and beneficiaries is impracticable, the losses suffered by individual participants and beneficiaries may be small and it is impracticable for individual members to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this

35

A-68

matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

98. Additionally, or alternatively, this action may be certified as to particular issues under Rule 23(c)(4), including but not limited to the Defendants' liability to the Plan and the Class for their alleged misconduct.

99. Plaintiff's counsel, Sanford Heisler Sharp, LLP and Matt Singer Law, LLC, will fairly and adequately represent the interests of the Classes and is best able to represent the interests of the Classes under Rule 23(g).

## IX. CAUSES OF ACTION

### COUNT I

### Breach of Fiduciary Duty

### (Violation of ERISA § 404, 29 U.S.C. § 1104)
### (Against All Defendants)

100. The allegations in this Complaint are realleged and incorporated herein by reference.

101. At all relevant times, Defendants were fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A) because the Board and West Monroe were named as fiduciaries in the Plan Document, because Argent was the Plan's Trustee, and because all Defendants exercised authority and control with respect to the management of the Plan and its assets.

102. As a former employee of West Monroe and as a Plan participant, Plaintiff trusted Defendants to manage with care, diligence, and disinterest the Company stock held in his account, which was part of his compensation for his years of dedicated service to the Company.

103. ERISA § 404(a) required Defendants to administer the Plan, to value and dispose of Company stock held in the Plan, and to engage in transactions with respect to the Plan with the "care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a

36

A-69

like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Allen*, 835 F.3d at 678 (quoting 29 U.S.C. § 1104(a)(1)).

104. In valuing Company stock, ERISA 404(a) also required Defendants to conduct a careful, diligent, and prudent investigation that (among other things): (a) considered all the relevant facts and circumstances then prevailing; (b) applied sound business principles of valuation; and (c) was sufficient to determine the fair market value of Company stock as of December 31, 2020.

105. In addition, the duty of prudence required Defendants to ensure that their valuation "remained a reasonable approximation" of the current "fair market value of [Company] stock at the times they relied on it" to administer the Plan and dispose of Plan assets, *Donovan*, 716 F.2d at 1473, including when Defendants sold Company stock to West Monroe and made distributions to Plan participants. *See* ERISA § 404(a), 29 U.S.C. § 1104(a)(1)(B) (requiring a fiduciary to act with prudence "under the circumstances *then prevailing*" (emphasis added)). This duty required Defendants to ensure that participants received fair market value for the stock held in their accounts.

106. Prudence also required Defendants to timely disclose "material facts affecting the interests of beneficiaries." *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 466 (7th Cir. 2010).

107. ERISA § 404(a) also imposes a duty of loyalty, requiring Defendants to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of (i) providing benefits to participants and their beneficiaries" and "(ii) defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). "Where it might be possible to question the fiduciaries' loyalty," the fiduciaries must "at a minimum … engage in an intensive and scrupulous independent investigation of their options to insure [sic] that they act in the best interests of the plan beneficiaries." *Leigh v. Engle*, 727 F.2d 113, 126 (7th Cir. 1984).

A-70

108.     The duties of prudence and loyalty require a fiduciary "to take impartial account of the interests of all beneficiaries"; a fiduciary may not unreasonably favor one group of participants or beneficiaries over another. *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996).

109.     Defendant Argent breached the duty of prudence because it failed to conduct, review, and otherwise act with respect to the 2020 Valuation with the care, skill, prudence, and diligence of a prudent fiduciary.

110.     The West Monroe Defendants breached the duty of prudence and loyalty when they: (a) failed to monitor, review, and otherwise act with respect to the 2020 Valuation with the care, skill, prudence, and diligence of a prudent fiduciary; (b) failed to direct, conduct, obtain, or use an up-to-date valuation of Company stock to redeem Plan participants' Company stock and make distributions to participants in September 2021; (c) failed to timely disclose information material to participants' distribution decision; (d) caused the Plan to sell Company stock to West Monroe for less than fair market value; and therefore (e) caused the Plan to pay Plaintiff and the Class substantially less than fair market value for the vested shares of Company stock in their accounts; and (f) inequitably deprived Plaintiff and the Class of proceeds and other value from the Stock Sale.

111.     At all relevant times, the West Monroe Defendants knew or should have known that these acts and omissions would enrich themselves and certain other current holders of equity in West Monroe Partners, Inc. and West Monroe Partners, LLC at the Class's expense.

112.     Defendants' breaches of fiduciary duties substantially impaired the Plan's use and value, including the value of shares of Company stock held in Plaintiff's account.

113.     As a direct and proximate result of Defendants' breaches of fiduciary duties, the West Monroe Defendants and certain West Monroe employees were unjustly enriched, and the Plan,

A-71

Plaintiff, and the Class suffered millions of dollars in losses, for which Defendants are jointly and severally liable pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

114.     Each of the Defendants is liable to make good to the Plan the losses resulting from the above-described breaches and to restore to the Plan any profits resulting from the breaches. Each is also subject to other equitable or remedial relief as appropriate pursuant to 29 U.S.C. §§ 1109(a), 1132(a)(2), and 1132(a)(3), including constructive trust, equitable surcharge, and restitution.

## COUNT II

### Prohibited Transactions

**(Violation of ERISA § 406, 29 U.S.C. § 1106)**
**(Against the West Monroe Defendants)**

115.     Plaintiff restates and incorporates the allegations contained in the Complaint.

116.     By causing the direct or indirect transfer of Company stock from the Plan to Defendant West Monroe, causing the Company to purchase such stock for less than fair market value, by failing to update the valuation of Company stock, and by otherwise using Company stock for the benefit of Defendant West Monroe and certain of its senior employees, the West Monroe Defendants caused the Plan to engage in a transaction that they knew or should have known constituted a direct or indirect:

> a.  Sale or exchange of property between the Plan and a party in interest under 29 U.S.C. § 1106(a)(1)(A);
>
> b.  Transfer of Plan assets to a party in interest or use of Plan assets by or for the benefit of a party in interest under 29 U.S.C. § 1106(a)(1)(D).

117.     In causing the direct or indirect transfer of Company stock held by the Plan to Defendant West Monroe, causing the Company to purchase such stock at less than fair market value,

39

A-72

causing participants to receive less than fair market value for their vested interests in Company stock, and in engaging in the other acts and omissions set forth above, the West Monroe Defendants:

    a. Dealt with the assets of the Plan in their own interest and for their own account in violation of 29 U.S.C. § 1106(b)(1);

    b. Acted in a transaction involving the Plan on behalf of a party whose interests were adverse to the Plan or the interests of its participants or beneficiaries, in violation of 29 U.S.C. § 1106(b)(2); and

    c. Received consideration for their own personal account from a party dealing with the Plan in connection with a transaction involving assets of the Plan, in violation of 29 U.S.C. § 1106(b)(3).

118. Defendants did not provide, and the Plan and the Class did not receive, adequate consideration for the transactions described above.

119. As a direct result of these prohibited transactions, the West Monroe Defendants were unjustly enriched, and the Plan and the Class suffered millions of dollars in losses, for which the West Monroe Defendants are jointly and severally liable for damages and appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1109(a).

## COUNT III

### Breach of Co-Fiduciary Duty
### (Violation of ERISA § 405, 29 U.S.C. § 1105(a)(1)-(3))

### (Against All Defendants)

120. Plaintiff restates and incorporates the allegations contained in the Complaint.

121. A fiduciary with respect to a plan is liable for the breach "of another fiduciary" for the same plan if "he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach," 29 U.S.C. § 1105(a)(1), or if, "by

40

A-73

his failure to comply with [his fiduciary duties] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach," *id.* § 1105(a)(2), or if "he has knowledge of a breach by some other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach," *id.* § 1105(a)(3).

122. The West Monroe Defendants are liable as co-fiduciaries with respect to each other's violations because they participated knowingly in their co-fiduciaries' breaches; imprudently and disloyally enabled other fiduciaries to breach their duties under ERISA; and enabled their co-fiduciaries to commit the breaches and failed to make any reasonable efforts to remedy them.

123. As Trustee of the Plan, Argent evaluated and approved the Stock Sale in connection with the transaction with MSD Partners. Indeed, Argent was a party to the October 5, 2021 Stock Purchase Agreement. Thus, Argent must have known that the fair market value of company stock was approximately three times the 2020 Valuation by October 5, 2021.

124. Argent therefore knew by October 5, 2021 that the West Monroe Defendants redeemed the Class's shares for less than fair market value, but it failed to take steps to remedy the violation, for example, by reporting the West Monroe Defendants to the Department of Labor.

## COUNT IV

**Failure to Monitor**
**(Violation of ERISA § 404, 29 U.S.C. § 1104)**

**(Against All Defendants)**

125. Plaintiff restates and incorporates the allegations contained in the Complaint.

126. To the extent any of the Defendants delegated their fiduciary responsibilities to another fiduciary, the Defendant had an obligation under ERISA § 404 to prudently appoint such delegates and to ensure that they performed any delegated tasks both prudently and loyally.

127. The Defendants breached their fiduciary monitoring duties by, among other things:

A-74

a. Failing to act with required care, skill, prudence, and diligence in selecting and appointing their delegates;

b. Failing to monitor their appointees, to evaluate their performance, or to have a system in place for doing so, and standing idly by as their appointee's imprudent actions undervalued Plan assets, caused their transfer to the Company for less than adequate consideration, and made distributions to Plan participants for less than the fair market value of the assets;

c. Failing to monitor their appointees' fiduciary process, which would have alerted any prudent fiduciary to the potential breaches in the failure to prudently and loyally value Plan assets and disposing of Plan assets for less than fair market value;

d. Failing to ensure that the monitored fiduciaries had a prudent process in place for valuing, disposing of Plan assets, and making distributions to participants; and

e. Failing to remove appointees whose performance was inadequate.

128. The Board failed to prudently monitor the Benefits Committee, the West Monroe Defendants failed to prudently monitor Argent, and Argent failed to prudently monitor ▮▮▮▮ to the extent that any of these Defendants delegated fiduciary responsibilities to those persons or entities.

129. As a direct result of these breaches of fiduciary duty, West Monroe and certain of its employees were unjustly enriched and the Plan and Plan participants suffered substantial losses. Had Defendants prudently discharged their fiduciary monitoring duties, such unjust enrichment would not have occurred and the Plan and Plan participants would not have suffered such losses.

**COUNT V**

**Breach of Fiduciary Duties**
**(Violation of Delaware Law)**

**(Against the West Monroe Board of Directors)**

42

A-75

130. The Board of Directors of West Monroe owes fiduciary duties of care and loyalty to the Company's stockholders. *Dohmen v. Goodman*, 234 A.3d 1161, 1168 (Del. 2020). These duties include the duty to abstain from unfairly favoring certain shareholders over other shareholders. *See Montgomery v. Aetna Plywood, Inc.*, 956 F. Supp. 781, 787 (N.D. Ill. 1997). The duties of care and loyalty extend to equitable owners of Company shares, such as Plan participants, as well as to legal owners. *See*, *e.g.*, *Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 478 (Del. Ch. 2011).

131. "When directors of a Delaware corporation are on both sides of a transaction, they are required to demonstrate their utmost good faith and the most scrupulous inherent fairness of the bargain." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983). "The requirement of fairness is unflinching in its demand that where one stands on both sides of a transaction, he has the burden of establishing its entire fairness, sufficient to pass the test of careful scrutiny by the courts." *Id.* A fair deal requires "fair dealing" (which "embraces questions of when the transaction was timed" as well as "how it was initiated, structured, negotiated") and a "fair price." *Id.*

132. Corporate officers and directors also have a "duty of candor" to shareholders, meaning they "may not mislead any stockholder by use of corporate information to which the latter is not privy." *Id.* (citing *Lynch v. Vickers Energy Corp.*, 383 A.2d 278, 281 (Del. 1977)).

133. At the time of the transactions and events set forth in this Complaint, several members of the West Monroe Board of Directors were officers or managing employees of the Company and held substantial shares of Company stock. By engaging in the acts and omissions set forth above, causing the Plan to transfer Company stock from the Plan to West Monroe at less than fair market value, and failing to timely disclose material information concerning the value of the shares to the Class before directing the purchase, the West Monroe Board of Directors favored the interests of certain directors and other shareholders over the interests of the Plan and the Class.

43

A-76

134. The Directors are therefore liable to the Plan and the Class for damages and appropriate equitable relief under Delaware law.

## COUNT VI

### Failure to Produce Plan Documents
### (Violation of ERISA § 104, 29 U.S.C. § 1024(e)(4))

135. ERISA § 104, 29 U.S.C. § 1024(b)(4) provides that a Plan "administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

136. ERISA § 502(c) provides that an administrator who fails to comply with a participant's request for such documents "within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1). ERISA § 502(a)(1)(A) authorizes a participant to sue for such relief. *See* 29 U.S.C. § 1132(a)(1)(A).

137. Under ERISA, the term "participant" includes any "former employee" of a sponsoring employer "who is or may become eligible to receive a benefit of any type" from the Plan. 29 U.S.C. § 1002(7). Plaintiff is a Plan participant because he has a colorable claim to monetary relief from the Plan and therefore is or may become eligible to receive a benefit from it.

138. On October 17, 2021, Plaintiff requested by email copies of the Plan and Trust Documents governing the Plan, which are "instruments under which the Plan is established and operated" within the meaning of ERISA § 104, 29 U.S.C. § 1024(b)(4).

139. The Company did not comply with Plaintiff's request until December 10, 2021.

A-77

140.     Therefore, the Company is liable to Plaintiff for the $100 monetary penalty for each day that it failed to provide the requested documents as required under 29 U.S.C. §§ § 1024(b)(4) and 1132(c)(1), and for such equitable relief the court deems just and proper.

## PRAYER FOR RELIEF

For these reasons, Plaintiff, on behalf of the Plan and all similarly situated Plan participants and beneficiaries, respectfully requests that the Court:

i)     find and adjudge that the Defendants have breached their fiduciary duties and engaged in prohibited transactions, as described in the Complaint above;

ii)    find and adjudge that the Defendants are personally liable to make good to the Plan losses resulting from each breach of fiduciary duty and prohibited transaction, and to otherwise restore the Plan to the position it would have occupied but for the breaches of fiduciary duty and prohibited transactions;

iii)   find and adjudge that the Defendants are liable to the Plan and the Class for damages and appropriate equitable relief;

iv)    determine the method by which losses under 29 U.S.C. § 1109(a) should be calculated;

v)     order all accountings and appraisals necessary to determine the amounts Defendants must make good to the Plan under 29 U.S.C.§ 1109(a) and to determine the amounts necessary to make the Class whole under 29 U.S.C. § 1132(a)(3) and Delaware law;

vi)    remove the fiduciaries who have breached their fiduciary duties and enjoin them from future unlawful conduct;

vii)   surcharge against the Defendants and in favor of the Plan and/or the Class all losses suffered by the Plan and/or the Class and any profits gained by Defendants from their unlawful conduct;

45

A-78

viii) order restitution and disgorgement in favor of the Plan and the Class;

ix) impose a constructive trust for the benefit of the Plan and the Class;

x) reform the Plan as appropriate to make the Class whole;

xi) certify the Class, appoint the Plaintiff as a class representative, and appoint Sanford Heisler Sharp LLP and Matt Singer Law, LLC as Class Counsel;

xii) impose the monetary penalty described in Count VI;

xiii) award to the Plaintiff and the Class their attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) and the common fund doctrine;

xiv) order the Defendants to pay interest to the extent allowed by law; and

xv) grant other equitable or remedial relief as the Court deems appropriate.

Dated: August 19, 2022

*/s/ Charles Field*

Charles Field*
**SANFORD HEISLER SHARP, LLP**
2550 Fifth Avenue, 11th Floor
San Diego, CA 92101
Telephone: (619) 577-4242
Facsimile: (619) 577-4250
cfield@sanfordheisler.com

David Sanford*
Russell Kornblith*
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Fl.
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
rkornblith@sanfordheisler.com

Kevin Sharp*

46

A-79

**SANFORD HEISLER SHARP, LLP**
611 Commerce St., Suite 3100
Nashville, TN 37203
Phone: (615) 434-7001
Facsimile: (615) 434-7020
ksharp@sanfordheisler.com

Sean Ouellette*
James Hannaway*
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Avenue SE, Suite 300
Washington, D.C. 20003
Phone: (646) 402-5644
Facsimile: (202) 499-5199
souellette@sanfordheisler.com
jhannaway@sanfordheisler.com

Matthew J. Singer
**MATT SINGER LAW, LLC**
77 W. Wacker Dr., Suite 4500
Chicago, IL 60601
Telephone: (312) 248-9123
matt@mattsingerlaw.com

*Attorneys for Plaintiff and the Proposed Class*

*\* Admitted Pro Hac Vice*

A-80

# EXHIBIT O

A-81



AGREEMENT

BETWEEN

**WEST MONROE PARTNERS, LLC**

AND

JAMIE MIZE

This Separation and Release Agreement (the "Agreement") is made by and between Jamie Mize (the "Employee") and West Monroe Partners, LLC, a Delaware limited liability company ("WMP" or the "Company").

1.     **Termination of Employment.**   Employee acknowledges that Employee's employment with the Company terminated on October 15, 2020 (the "Termination Date").

2.     **Consideration.** In consideration for Employee signing this Agreement and complying with its terms, including cooperating with WMP on reasonable transition related activities,  the Company agrees to the following:

(a) to continue to pay Employee's base salary ▬▬▬▬▬▬▬▬ pursuant to its regular payroll practices for fourteen (14) weeks from the Termination Date ("Job Search Period"), less usual and customary payroll deductions;

(b) to continue to maintain Employee's coverage under the Company's health care plan through the month in which the Job Search Period ends; and

(c) to provide Employee with one (1) month(s) of outplacement counseling and services, as described in the enclosed information sheet, through Challenger, Gray & Christmas, Inc., as long as Employee commences using this service within 90 days of the Termination Date.

The benefits set forth above will be provided starting on the next regularly scheduled pay period following the Company's receipt of an original of this Agreement signed by Employee; provided, however, that if Employee worked for the Company in Minnesota, such benefits will be provided starting on the next regularly scheduled pay period following the Company's receipt of an original of this Agreement signed by Employee and after completion of the fifteen (15) day revocation period with no revocation by Employee.

3.     **No Consideration Absent Execution of this Agreement**. Employee understands and agrees that Employee would otherwise not receive the severance benefits specified in

Page **1** of **13**

A-82



Paragraph 2 except for Employee's execution of this Agreement and the fulfillment of the promises contained herein.

4.      **General Release, Claims Not Released, and Related Provisions**.

(a)      <u>General Release of All Claims</u>.  Employee on Employee's own behalf and on behalf of Employee's heirs, executors, administrators, successors and assigns and any person or entity acting by or through Employee (the "Releasing Parties") waives, releases, holds harmless, and forever discharges the Company and its parents, divisions, subsidiaries, partnerships, affiliates, employee benefit plans and programs and other related organizations (collectively, "Entities") and each of such Entities' past, present, and future representatives, joint ventures, trustees, fiduciaries, equity holders, administrators, directors, officers, agents, partners, members, employees, attorneys, and the predecessors, successors, and assigns of each of them (hereinafter referred to as the "Released Parties") of and from any and all claims, known and unknown, asserted or unasserted which Employee has or may have against the Released Parties as of the date of executive of this Agreement, including, but not limited to, any alleged violation of the following, or any applicable laws set forth on Exhibit "A" as amended:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan);
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Genetic Information Nondiscrimination Act;
- The Equal Pay Act;
- The Sarbanes-Oxley Act retaliation provisions;
- The False Claims Act retaliation provisions;
- The Dodd-Frank Wall Street Reform and Consumer Protection Act retaliation provisions;
- Applicable state laws governing Employee's employment, including, without limitation, those set forth on the attached Exhibit "B";
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law, including, without limitation, breach of contract, breach of a covenant of good faith and fair dealing, interference with business opportunity or contracts, negligence, misrepresentation, fraud, detrimental reliance, personal injury, assault, battery, defamation, false light, invasion of privacy, infliction of emotional distress, retaliation, constructive discharge, or wrongful discharge;
- all claims and any obligations or causes of action arising under the Employee Stock Ownership Plan or  severance (including under any severance pay plan governed by state or federal law);
- any basis for recovering costs, fees, or other expenses, including

Confidential and Proprietary

Confidential

WM_0136552

A-83

DocuSign Envelope ID: 27C5F4E7-E69B-40B6-A7EF-E152BE1C4B1E



attorneys' fees incurred in these matters

(b) <u>Claims Not Released.</u> Employee is not waiving any rights Employee may have to (i) his/her own vested accrued employee benefits under the Company's health, welfare or retirement benefits plans as of the Termination Date; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes or the right to indemnification as required under California law; (iii) pursue claims which by law cannot be waived by signing this Agreement; and/or (iv) enforce this Agreement.

(c) <u>Governmental Agencies.</u> Nothing in this Agreement prohibits, prevents, or otherwise limits Employee from filing a charge with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency (e.g., EEOC, NLRB, SEC, etc.) or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

(d) <u>Collective/Class Action Waiver</u>. If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which the Company or any other Released Parties identified in this Agreement is a party.

5. <u>Waiver of California Civil Code § 1542 (for Employees who lived and/or worked for the Company in California).</u> To effect a full and complete general release as described above, Employee expressly waives and relinquishes all rights and benefits of section 1542 of the Civil Code of the State of California, and does so understanding and acknowledging the significance and consequence of specifically waiving section 1542. Section 1542 of the Civil Code of the State of California states as follows, which states:

**A general release does not extend to claims that the creditor or releasing party which the creditor does not know or suspect to exist in his or her favor at the time of executing the release and that, if, which if known by him or her, would must have materially affected his or her settlement with the debtor or released party.**

Thus, notwithstanding the provisions of section 1542, and to implement a full and complete release and discharge of the Released Parties, Employee expressly acknowledges this Agreement is intended to include in its effect, without limitation, all claims Employee does not know or suspect to exist in Employee's favor at the time of signing this Agreement, and that this Agreement contemplates the extinguishment of any such claims. Employee warrants Employee has read this Agreement, including this waiver of California Civil Code section 1542, and that Employee has consulted with or had the opportunity to consult with counsel of Employee's choosing about this Agreement and specifically about the waiver of section 1542, and that Employee understands this Agreement and the section 1542 waiver, and so Employee freely and

Confidential and Proprietary

WM_0136553

A-84



knowingly enters into this Agreement. Employee further acknowledges that Employee later may discover facts different from or in addition to those Employee now knows or believes to be true regarding the matters released or described in this Agreement, and even so Employee agrees that the releases and agreements contained in this Agreement shall remain effective in all respects notwithstanding any later discovery of any different or additional facts. Employee expressly assumes any and all risk of any mistake in connection with the true facts involved in the matters, disputes, or controversies released or described in this Agreement or with regard to any facts now unknown to Employee relating thereto. Notwithstanding any other provisions of this Agreement, except where otherwise required by law, California law, including California choice of law and venue requirements, shall apply to California employees.

6. **Acknowledgments and Affirmations.** Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against WMP in any forum or form.

Employee also affirms that Employee has been paid and/or has received all compensation, wages, bonuses, commissions, vacation, sick pay, expenses, predictability pay, stock or unit options or other equity interests and/or benefits which are due and payable as of the date Employee signs this Agreement, and Employee has been reimbursed for all necessary expenses or losses incurred by Employee within the scope of Employee' employment. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act or state or local leave or disability accommodation laws.

Employee further affirms that Employee has no unreported workplace injuries or occupational diseases.

Employee also affirms that Employee has not been retaliated against for reporting any allegations of wrongdoing by WMP or its officers, including any allegations of corporate fraud.

Employee and the Company acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation or legal process and to request or receive confidential legal advice, and nothing in this agreement shall be deemed to impair those rights. Moreover, nothing in this Agreement prohibits or prevents Employee from testifying in any administrative, legislative, or judicial proceeding concerning any criminal conduct or unlawful employment practices (including, but not limited to sexual harassment) on the part of the Company or any agents or employees of the Company.

7. **Return of Property**. Employee represents to the Company that Employee has returned, or will return, all of the property and documents of the Company, its subsidiaries and affiliates in Employee's possession or control, including all:

    (a)    equipment, computer hardware or software;

    (b)    keys;

    (c)    customer, sales, manufacturing, and financial records and files; and

Page 4 of 13

Confidential and Proprietary

DocuSign Envelope ID: 27C5F4E7-E69B-40B6-A7EF-E152BE1C4B1F



(d)      any other customer, sales, confidential, and financial information, regardless of how stored.

8.      **Duty to Assist**. Employee will furnish the information and cooperation that the Company requests for the transition of Employee's duties. Employee will also assist the Company with any litigation in which it is, or may become, a party. Employee's reasonable, prior approved, and properly documented out-of-pocket expenses incurred in assisting in litigation will be promptly reimbursed. It is not anticipated that in providing assistance any major effort will be required of Employee.

9.      **Limited Disclosure**. Employee will keep this Agreement confidential and not reveal its contents to anyone except Employee's lawyer, immediate family, and financial or tax consultant, any federal, state or local government agency, pursuant to a duly issued and served subpoena and/or as otherwise permitted by this Agreement. If Employee does reveal this Agreement to any of the foregoing, Employee will inform that person that the Agreement is confidential and cannot be further disclosed. Further, if Employee receives a subpoena or other request for this Agreement, or to testify regarding this Agreement, Employee will notify the Company by the next business day. Nothing in this Agreement has the purpose or effect of preventing Employee from making truthful disclosures about alleged unlawful employment practices.

10.      **Attorney's Fees**. If Employee brings an action or other proceeding against a Released Party concerning a matter that is covered by the release contained in this Agreement, then the Released Party will be entitled to an award of reasonable attorneys' fees from Employee to the extent the Released Party is a prevailing party in enforcing the release.

11.      **No Admission**. This Agreement is the compromise of actual or possible claims and nothing herein, nor any payment made pursuant to this Agreement, will constitute, or be construed as, an admission of any charge or allegation or concession of liability, which is expressly denied. Neither this Agreement nor any payment made pursuant to this Agreement is admissible in evidence against the Company for any purpose, except for seeking its enforcement.

12.      **Waiver**. Any waiver, express or implied, by either party of any breach of this Agreement will not be considered a waiver of a subsequent breach.

13.      **Entire Agreement**. This Agreement sets forth the entire agreement between the parties hereto, except for any written intellectual property, restrictive covenant, non-competition, non-solicitation, or confidentiality agreements between Employee and the Company, which shall remain in full force and effect. If any such agreements are in conflict with each other, they shall be construed to provide the maximum protection for the Company. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement. Any amendment, alteration or addition to this Agreement must be made in writing dated and signed by all the parties hereto.

14.      **Binding Agreement**. This Agreement will be binding upon and inure to the benefit of the Company and the Employee, and their respective representatives, heirs, successors

Page **5** of **13**

Confidential and Proprietary

WM_0136555

A-86

DocuSign Envelope ID: 27C5F4E7-E69B-40B6-A7EF-E152BE1C4B1E



and assigns.

15.   **Enforcement**. Any promise or covenant included in this Agreement, except for the general release contained in the Agreement, that is found by a court to be unreasonably broad in any respect will be modified and enforced to the extent reasonable. If a court refuses, however, to enforce a promise or covenant either as drafted or modified, then the unenforceable promises or covenant will be disregarded, except for the general release, and all of the remaining parts of the Agreement may still be enforced by either party.

16.   **Headings**. The headings appearing in this Agreement are solely for the convenience of the reader and will not affect the interpretation or meanings of the provisions set forth.

17.   **Assignment**. This Agreement, and any rights and obligations hereunder, may not be assigned or delegated by the Employee.

18.   **Parties in Interest**. Except as expressly contemplated hereby, this Agreement will be binding upon and inure solely to the benefit of each party hereto, and nothing in this Agreement is intended to confer upon any other person any rights or remedies of any nature whatsoever under or by reason of this Agreement. WMP and its affiliates are expressly entitled to the benefits inuring to them under this Agreement.

19.   **Counterparts/Alternative Signatures.**  This Agreement may be executed in separate counterparts, each of which when so executed and delivered will be deemed an original, but all of which together will constitute one and the same instrument. This Agreement may be executed by facsimile, electronic submission, or electronic signature.  Facsimile, electronic submission, or electronic signatures will be fully binding and effective for all purposes and given the same effect as original signatures.

20.   **Acknowledgement of Employee**.  Employee acknowledges that Employee has been advised to consult an attorney prior to the signing of this Agreement.  Employee further represents and certifies that Employee has carefully read all of the provisions of this Agreement, that Employee understands them and is knowingly and voluntarily agreeing to this Agreement, without duress or coercion, that Employee has full knowledge of its contents and consequences, that Employee has been afforded the opportunity to have an attorney review this Agreement on Employee's behalf and that neither the Company nor its agents, representatives or attorneys have made any representations concerning the terms or effects of this Agreement other than those contained herein.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO FORTY-FIVE (45) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT.**

**EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DO NOT RESTART OR AFFECT IN**

Confidential and Proprietary

Confidential

WM_0136556

A-87

DocuSign Envelope ID: 27C5F4E7-E69B-40B6-A7EF-E152BE1C4B1E



ANY MANNER THE ORIGINAL UP TO FORTY-FIVE (45) CALENDAR DAY CONSIDERATION PERIOD.

FOR EMPLOYEES WHO WORKED IN MINNESOTA ONLY: EMPLOYEE MAY REVOKE THIS AGREEMENT FOR A PERIOD OF FIFTEEN (15) CALENDAR DAYS FOLLOWING THE DAY EMPLOYEE SIGNS THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD IS EXPIRED. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO KRISTIN HEATH AT 311 WEST MONROE ST., 14TH FLOOR, CHICAGO, IL 60606, KHEATH@WMP.COM, AND STATE, "I HEREBY REVOKE MY ACCEPTANCE OF OUR SEPARATION AND RELEASE AGREEMENT." THE REVOCATION MUST BE DELIVERED TO KRISTIN HEATH OR HIS/HER DESIGNEE WITHIN FIFTEEN (15) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT.

EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.

IN WITNESS WHEREOF, the parties have knowingly and voluntarily executed this Agreement as of the date first above written.

**WEST MONROE PARTNERS, LLC**

By: _Kristin Heath_
E283CF8D1E05459...

Name: Kristin Heath

Its: Sr. Manager, Talent Business Partner

**EMPLOYEE**

_Jamie Mize_
DC3CFF94A735418...
JAMIE MIZE

4844-1260-2290, v. 2

Page 7 of 13

Confidential and Proprietary

WM_0136557

A-88



EXHIBIT A

## ARIZONA

- Arizona Wage Payment Act;
- Arizona Civil Rights Act, Ariz. Rev. Stat. §§ 41-1461-41-1468;
- Arizona Medical Marijuana Act, A.R.S. Title 36, Ch. 28.1 et. seq.;
- Arizona Employment Protection Act, A.R.S. § 23-1501;
- Arizona Constructive Discharge Act, A.R.S. § 23-1502;
- Fair Wages and Healthy Families Act, A.R.S. § 23-363; A.R.S. § 23-371;
- Any other Arizona statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

## CALIFORNIA

- California Civil Code, § 1542;
- Code of Civil Procedure, § 1001;
- Civil Code 1670.11;
- California Fair Employment and Housing Act, Cal. Gov't Code § 12900 et seq.;
- California Family Rights Act, Cal. Gov't Code § 12945.2 et seq.;
- California Parental Leave Law, Cal. Lab. Code § 230.7 et seq.;
- California Unruh Civil Rights Act, Cal. Civ. Code § 51 et seq.;
- California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 et seq.;
- California Paid Sick Leave Laws, Cal. Lab. Code §§ 246-249;
- California Domestic Violence Victim Employment Leave Law, Cal. Lab. Code § 230.1;
- California Equal Pay Law, Cal. Lab. Code § 1197.5;
- California WARN Act, Cal. Lab. Code § 1400 et seq.;
- California Consumer Credit Reporting Agencies Act, Cal. Civ. Code § 1785 et seq.;
- California Investigative Consumer Reporting Agencies Act, Cal. Civ. Code § 1786 et seq.;
- Statutory provisions regarding the Confidentiality of AIDS Information, Cal. Health & Safety Code § 120775 et seq.;
- California Apprenticeship Program Bias Law, Cal. Lab. Code § 3070 et seq.;
- California Occupational Safety and Health Act, as amended, California Labor Code § 6300 et. seq., and any applicable regulations thereunder;
- California Military Personnel Bias Law, Cal. Mil. & Vet. Code § 394;
- Statutory provision regarding California Family and Medical Leave, Cal. Lab. Code § 233;
- Statutory provisions regarding California Electronic Monitoring of Employees, Cal. Lab. Code § 435;
- California Obligations of Investigative Consumer Reporting Agencies Law, Cal. Civ. Code. § 1786.10 et seq.;
- California Political Activities of Employees Law, Cal. Lab. Code § 1101 et seq.
- California Court Leave Law, Cal. Lab. Code § 230;
- Any other provisions of the California Labor Code that lawfully may be released;
- Any other California statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties that lawfully may be released;

Page **8** of **13**

Confidential and Proprietary



## ILLINOIS

- Illinois Human Rights Act, 775 ILCS 5/1-101;
- 820 ILCS 305/4(h) of the Illinois Workers' Compensation Act;
- Illinois common law regarding retaliation or discrimination for filing a workers' compensation claim;
- Illinois Equal Pay Act, 820 ILCS 112/1 et. seq.;
- Illinois School Visitation Rights Act 820 Ill. Comp. Stat. 147/40;
- Illinois AIDS Confidentiality Act;
- Illinois Right to Privacy in the Workplace Act, 820 ICLS 55/1 et. seq.;
- Illinois Genetic Information Privacy Act, 410 ILCS 513/1 et. seq.;
- Illinois One Day Rest in Seven Act 820 Ill Comp. Stat 140/1 et seq.;
- Illinois Eight Hour Work Day Act;
- Illinois Health and Safety Act 820 Ill. Comp. Stat. 219/15;
- Illinois Whistleblower Act, 740 ILCS 174/1;
- Illinois Victims' Economic Safety and Security Act, 820 ILCS 180/1 et seq.;
- Illinois Worker Adjustment and Retraining Notification Act, 820 ILCS 65/1;
- Illinois Personnel Records Review Act 820 ILCS 40/0.01-40/13;
- Illinois Criminal Identification Act;
- Illinois Voter Leave Act 10 Ill. Comp. Stat. 5/17-15, 5/7-42;
- Illinois Family Military Leave Act 820 Ill. Comp. Stat. 151/25;
- Illinois Joint Agency Rules of Sex Discrimination;
- Illinois Joint Agency Rules on National Origin Discrimination;
- Illinois Human Rights Commission Rules on Handicap Discrimination;
- Illinois Human Rights Commission Rules on Unfavorable Military Discharge Discrimination;
- Smoke Free Illinois Act 410 ILCS 82/1 et seq.;
- Illinois Blood Donation Leave Act 820 Ill. Comp. Stat. 149/1 et seq.;
- Illinois Civil Patrol Leave Law 820 Ill. Comp. Stat. 148/1 et seq.;
- Illinois Jury Duty Leave Law 705 Ill. Comp. Stat. 305/4.1(a); 705 Ill. Comp. Stat. 310/10.1(a);
- Illinois Official Meetings Leave Law;
- Illinois Witness Duty Leave Law 725 Ill. Comp. Stat. 5/115-18;
- Illinois Working Mothers in the Workplace Act;
- Illinois common law claims for unlawful retaliatory discharge in violation of public policy;
- Illinois Employee Sick Leave Act 820 Ill. Comp. Stat. Ann. 191/21(a);
- Illinois Child Bereavement Leave Act 820 Ill. Comp. Stat. 154/5;
- Illinois Biometric Information Privacy Act;
- Illinois Workplace Transparency Act;
- Any other Illinois statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

## MICHIGAN

- Elliott-Larsen Civil Rights Act, Mich. Comp. Laws §§ 37-2101 et seq.;

Confidential and Proprietary

Confidential

WM_0136559

A-90



- Michigan Persons with Disabilities Civil Rights Act, Mich. Comp. Laws §§ 37.1101 et seq.;
- Michigan Whistleblower Protection Act, Mich. Comp. Laws §§ 15.361 et seq.;
- Michigan Statutory Provision Regarding Retaliation/Discrimination for Filing a Workers' Compensation Claim, Mich. Comp. Laws §§ 418.125, 418.301(11);
- Michigan AIDS Testing and Confidentiality Act, Mich. Comp. Laws §§ 333.5131 et seq.;
- Michigan Minimum Wage Law, Mich. Comp. Laws §§ 408.381 et seq.;
- Michigan Social Security Number Privacy Act §§ 445.81 et seq.;
- Michigan Legal Day's Work Law, Mich. Comp. Laws §§ 408.401 et seq.;
- Michigan Payment of Wages and Fringe Benefits Law, Mich. Comp. Laws §§ 408.471 et seq.;
- Bullard-Plawecki Employment Right to Know Act, Mich. Comp. Laws §§ 423.501 et seq.;
- Michigan Occupational Safety and Health Act, Mich. Comp. Laws §§ 408.1001 et seq.;
- Michigan Paid Medical Leave Act, Mich. Comp. Laws §§ 408.961 et seq.;
- Any other Michigan statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

**MINNESOTA**
- Minnesota Human Rights Act – Minn. Stat. §363.01 *et seq.*;
- Minnesota Whistleblower Protection – Minn. Stat. §181.931 to §181.935 (a) and (b);
- Retaliation for Filing a Worker's Compensation Claim – Minn. Stat. §176.82(1) – (2);
- Minnesota Parental Leave Act – Minn. Stat. §181.940 *et seq.*;
- Minnesota Age Discrimination Act – Minn. Stat. § 181.81 *et seq.*;
- Minnesota Equal Pay For Equal Work Law - Minn. Stat. §181.66 *et seq.*;
- Minnesota Fair Labor Standards Act 0 Minn. Stat. §177.21 *et seq.*;
- Minnesota Discrimination for Lawful Activities Law - Minn. Stat. §181.938;
- Minnesota Wage Payment and Work Hour Laws;
- Minnesota Occupational Safety and Health Act – Minn. Stat. Ch. 182;
- Minnesota's Personnel Record Review Statute – Minn. Stat. 181.960 *et seq.*;
- Laws enacted under the Minnesota Women's Economic Security Act;
- Any other Minnesota statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

**MONTANA**
- Montana Human Rights Act – Mont. Code Ann. §49-1-101 *et seq.*;
- Montana Equal Pay Law – Mont. Code Ann. §39-3-104;
- Montana AIDS Prevention Act – Mont. Code Ann. §§50-16-1003 *et seq.*;
- Montana Smokers' Rights Law – Mont. Code Ann. §§39-2-313 *et seq.;*
- Montana Wrongful Discharge from Employment Act – Mont. Code Ann. §39-2-900 *et seq.*;
- Montana Wage Payment and Work Hour Laws, Mont. Code Ann. §39-3-101 *et seq.*;
- Montana Safety Act – Mont. Code Ann. Title 50, Ch. 71;
- Montana Drug Testing Law Regulation of blood and urine testing – Mont. Code Ann. §39-2-205 *et seq.*;
- Montana Unfair Trade Practices Act, Mont. Code Ann. §33-18-101 *et seq.*,
- Montana Military Leave Law- Mont. Code Ann. § 10-1-1001 *et seq.*;

Page **10** of **13**
Confidential and Proprietary

Confidential

WM_0136560

A-91

DocuSign Envelope ID: 27C5F4E7-E69B-40B6-A7EF-E152BE1C4B1F



- Montana Crime Victims' Rights Law- Mont. Code Ann. § 46-24-205;
- Montana Laws on Blacklisting and Protection of Discharged Employees – Mont. Code Ann. § 39-2-801 *et seq.*;
- Any other Montana statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

## NEW YORK
- The New York State Civil Rights Act, as amended;
- The New York State Human Rights Law, as amended;
- The New York Equal Pay Act, as amended;
- The New York State Labor Law, as amended;
- The New York State Labor Relations Act;
- The New York State Workers' Compensation Law's Retaliation provisions, as amended;
- The New York State Disability Benefits Law's Retaliation provisions, as amended;
- The New York Non-Discrimination for Legal Activities Law;
- The New York Whistleblower Law;
- The New York Wage and Hour Laws and Wage Payment Laws;
- The New York Minimum Wage Law, as amended;
- The New York City Administrative Code and Charter, as amended;
- The New York City Human Rights Law, as amended;
- The New York City Civil Rights Law;
- The New York Workers' Compensation Law;
- The New York Occupational Safety and Health Law;
- Any other New York statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

## OHIO
- Ohio Fair Employment Practice Law, Ohio Rev. Code § 4112.01 et seq., including but not limited to Ohio Rev. Code §§ 4112.02, 4112.99, and 4112.14;
- Ohio Whistleblower Protection Law, Ohio Rev. Code § 4113.51 et seq.;
- Ohio statutory provisions regarding retaliation/discrimination for filing a workers' compensation claim, Ohio Rev. Code § 4123.90;
- Ohio state wage payment and work hour laws, including but not limited to Ohio Rev. Code § 4111.01 et seq.;
- Ohio Uniformed Services Employment and Reemployment Act, Ohio Rev. Code § 5903.02;
- Ohio Contractual or Promissory Estoppel Claims;
- Any other Ohio statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

## PENNSYLVANIA
- Pennsylvania Equal Pay Act, as amended, 43 P.S. § 336.1;
- Pennsylvania Minimum Wage Act, as amended 43 Pa. Stat. Ann. §§ 333.101 et seq.; 34 Pa. Code §§ 231.1 et seq.;
- Pennsylvania Human Relations Act, 43. P.S. § 951;
- Pennsylvania Pregnancy Guidelines;
- Pennsylvania Guidelines on Sexual Harassment;

Confidential and Proprietary

Confidential

WM_0136561

A-92



- Pennsylvania Disability Discrimination Rules;
- Pennsylvania Occupational Safety and Health Laws;
- Pennsylvania Wage and Hour Laws;
- Pennsylvania Bona Fide Occupational Qualifications Rules;
- Pennsylvania Religious Freedom Protection Act, 71 P.S. § 2401;
- Pennsylvania Affirmative Action Guidelines;
- Pennsylvania Military Leave and Re-Employment Rights Laws;
- Pennsylvania Whistleblower Law, 43 P.S. § 1421 et. seq.;
- Pennsylvania statutes regarding Personnel Files; Criminal Records; Wage Complaints; Retaliation;
- Any other Pennsylvania statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

## TEXAS

- Texas Commission on Human Rights Act;
- Texas Health and Safety Code;
- Texas Payday Act;
- Texas Labor Code;
- Texas Civil Practice & Remedies Code;
- Texas Labor Code;
- Texas Pay Day Act;
- Any other Texas statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

## WASHINGTON

- Washington Fair Credit Reporting Act, RCW 19.182;
- Washington Consumer Protection Act, RCW 19.86;
- Washington Law Against Discrimination, as amended, RCW 49.60;
- Washington Minimum Wage Act, as amended, RCW 49.46;
- Washington Wage Payment Act, as amended, RCW 49.48;
- Washington wage deduction/rebate statutes, as amended, RCW 49.52;
- Washington Family Leave Act, as amended, RCW 49.78;
- Washington Family Care Act, as amended, RCW 49.12.265;
- Washington's Domestic Violence Leave Law, RCW 49.76;
- Washington's Military Family Leave Law, RCW 49.77;
- Washington's Veteran's and Veteran's Affairs statute, RCW 73;
- Washington Equal Pay Act, RCW 49.12.175;
- Washington Industrial Safety and Health Act ("WISHA"), RCW 49.17;
- Washington Healthy Starts Act, RCW 43.70;
- Washington Paid Sick Leave Law, RCW 49.46.200 210;
- Washington Paid Family & Medical Leave Act, RCW 50A.04;
- Any provision of Title 49 of the Revised Code of Washington;
- Any provision of Title 296 of the Washington Administrative Code;
- The Industrial Welfare Act of Washington, RCW 49.12, as amended, to the extent permitted by law;

Confidential and Proprietary

Confidential

WM_0136562

A-93

DocuSign Envelope ID: 27C5F4E7-E69B-40B6-A7EF-E152BE1C4B1E



- Any claim alleging the exception to the Industrial Insurance Act of Washington, established by RCW 51.24.020, for injury inflicted with "deliberate intention";
- Any claim for breach of any term or condition of an employee handbook or policy manual, including any claim for breach of any promise of specific treatment in specific situations;
- Any claim alleging retaliation for exercising any rights under Title 51 RCW;
- Any other Washington statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties;

## WISCONSIN

- Wisconsin Fair Employment Act, Wis. Stat. § 111.31, *et seq.*;
- Wisconsin Family and Medical Leave Act, Wis. Stat. § 103.10, Wis. Stat. § 102.35;
- The Wisconsin WARN Act, Wis. Stat. § 109.07, *et seq.*;
- The Wisconsin statutory provisions regarding retaliation and/or discrimination for filing a worker's compensation claim, Wis. Stat. § 102.35;
- The Wisconsin Employees' Right to Know Act, Wis. Stat. § 101.58, *et seq.*;
- The Wisconsin AIDS Testing Act, Wis. Stat. Ann. § 103.15, *et seq.*, 252.13-15, and 631.90;
- The Wisconsin Personnel Records Act, Wis. Stat. § 103.13, *et seq.*;
- The Wisconsin Minimum Wage Act, Wis. Stat. § 104.001, *et seq.*;
- The Wisconsin Wage Payments, Claims, and Collections Act, Wis. Stat. § 109.01, *et seq.*
- Any other Wisconsin wage-hour and wage-payment laws or regulations;
- Any other Wisconsin statute, law, rule, or regulation relating to labor and employment, including but not limited to, any claim for unpaid wages and/or penalties.

Confidential and Proprietary

Confidential

WM_0136563

A-94

**United States District Court**
**Northern District of Illinois - CM/ECF NextGen 1.8 (rev. 1.8.5) (Chicago)**
**CIVIL DOCKET FOR CASE #: 1:21-cv-06805**

Daly v. West Monroe Partners, Inc. et al
Assigned to: Honorable John Robert Blakey
Cause: 29:1001 E.R.I.S.A.: Employee Retirement

Date Filed: 12/22/2021
Jury Demand: None
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**<u>Plaintiff</u>**

**Matthew Daly**
*on behalf of himself and all others similarly*
*situated*

represented by **Kevin Sharp**
Sanford Heisler Sharp McKnight, LLP
611 Commerce Street
Suite 3100
Nashville, TN 37203
615-434-7001
Fax: 615-434-7020
Email: ksharp@sanfordheisler.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Charles Henry Field , Jr.**
Sanford Heisler Sharp McKnight
7911 Herschel Ave
Ste 300
La Jolla, CA 92037
619-577-4252
Fax: 619-577-4250
Email: cfield@sanfordheisler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David Sanford**
Sanford Heisler Sharp, LLP
1350 Avenue of the Americas
31st Floor
New York, NY 10019
646-402-5656
Fax: Not a member
Email: dsanford@sanfordheisler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Russell Kornblith**
Sanford Heisler Sharp McKnight, LLP
17 State Street
Ste 37th Floor
New York
New York, NY 10004

A-95

646-402-5646
Fax: 646-402-5651
Email: rkornblith@sanfordheisler.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Matthew Jason Singer**
Matt Singer Law, LLC
77 W. Wacker Dr.
Suite 4500
Chicago, IL 60601
3122489123
Fax: Active
Email: matt@mattsingerlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**West Monroe Partners, Inc.**                     represented by   **Elizabeth L. Woods**

341 Pineridge Dr
Winston Salem, NC 27104
772-485-2307
Email: ewoods@groom.com
*ATTORNEY TO BE NOTICED*

**Jeffrey Aaron Hesser**
Cassiday Schade LLP
222 West Adams Street
Suite 2900
Chicago, IL 60606
(312) 444-2473
Fax: Not a member
Email: jhesser@cassiday.com
*ATTORNEY TO BE NOTICED*

**Lars C. Golumbic**
Groom Law Group, Chtd.
1701 Pennsylvania Ave., NW
Washington, DC 20005
(202) 861-6615
Fax: Pro Hac Vice
Email: lgolumbic@groom.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Meredith Foster Kimelblatt**
Groom Law Group, Chtd.
1701 Pennsylvania Avenue NW
Washington, DC 20007
(202) 861-5412
Fax: Pro Hac Vice
Email: mkimelblatt@groom.com

A-96

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel Isaac Levin**
Groom Law Group, Chartered
1701 Pennsylvania Ave., N.w.
Washington, DC 20006
(202) 857-0620
Fax: Pro Hac Vice
Email: slevin@groom.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**<u>Defendant</u>**

**Argent Trust Company**                      represented by **Jacob Simon**
Bryan Cave Leighton Paisner LLP
211 N. Broadway St.
Suite 3600
St. Louis, MO 63102
(314) 259-2000
Fax: Pro Hac Vice
Email: jacob.simon@bclplaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeffrey Russell**
Bryan Cave Leighton Paisner LLP
211 N. Broadway St.
Suite 3600
St. Louis, MO 63102
(314) 259-2000
Fax: Pro Hac Vice
Email: jsrussell@bclplaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Katelyn W Harrell**
Bryan Cave Leighton Paisner LLP
1201 W. Peachtree Street, NW
One Atlantic Center
Ste 14th Floor
Atlanta, GA 30309
404-572-6668
Fax: 404-572-6999
Email: katelyn.harrell@bclplaw.com
*ATTORNEY TO BE NOTICED*

**Kristopher Fernandez**
Litchfield Cavo LLP
303 W. Madison St.
Suite 300
Chicago, IL 60606
312-781-6610
Email: fernandez@litchfieldcavo.com

A-97

*ATTORNEY TO BE NOTICED*

**Lars C. Golumbic**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Does 1-30**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/22/2021 | | CASE ASSIGNED to the Honorable Ronald A. Guzman. Designated as Magistrate Judge the Honorable Sheila M. Finnegan. Case assignment: Random assignment. (cm, ) (Entered: 12/22/2021) |
| 12/22/2021 | | CLERK'S NOTICE: Pursuant to Local Rule 73.1(b), a United States Magistrate Judge of this court is available to conduct all proceedings in this civil action. If all parties consent to have the currently assigned United States Magistrate Judge conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial proceedings, all parties must sign their names on the attached Consent To form. This consent form is eligible for filing only if executed by all parties. The parties can also express their consent to jurisdiction by a magistrate judge in any joint filing, including the Joint Initial Status Report or proposed Case Management Order. (cm, ) (Entered: 12/22/2021) |
| 12/22/2021 | 1 | COMPLAINT filed by Matthew Daly; Filing fee $ 402, receipt number 0752-18991857. (Singer, Matthew) (Entered: 12/22/2021) |
| 12/22/2021 | 2 | CIVIL Cover Sheet (Singer, Matthew) (Entered: 12/22/2021) |
| 12/22/2021 | 3 | ATTORNEY Appearance for Plaintiff Matthew Daly by Matthew Jason Singer (Singer, Matthew) (Entered: 12/22/2021) |
| 12/22/2021 | 4 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-18992948. (Field, Charles) (Entered: 12/22/2021) |
| 12/22/2021 | 5 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-18994315. (Ouellette, Sean) (Entered: 12/22/2021) |
| 12/23/2021 | 6 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-18995917. (Attachments: # 1 Supplement)(Kornblith, Russell) (Entered: 12/23/2021) |
| 12/28/2021 | 7 | WAIVER OF SERVICE returned executed by Matthew Daly. Argent Trust Company waiver sent on 12/23/2021, answer due 2/21/2022. (Singer, Matthew) (Entered: 12/28/2021) |
| 12/28/2021 | 8 | MINUTE entry before the Honorable Ronald A. Guzman: Attorneys Charles Henry Field, Jr., Russell Kornblith and Sean Ouellette's motion to appear pro hac vice on behalf of Plaintiff Matthew Daly 4 , 5 , 6 is granted. Mailed notice. (kp, ) (Entered: 12/28/2021) |
| 01/03/2022 | 9 | WAIVER OF SERVICE returned executed by Matthew Daly. West Monroe Partners, Inc. waiver sent on 12/23/2021, answer due 2/21/2022. (Ouellette, Sean) (Entered: 01/03/2022) |
| 01/03/2022 | 10 | WAIVER OF SERVICE returned executed by Matthew Daly. The Board of Directors of West Monroe Partners, Inc. waiver sent on 12/23/2021, answer due 2/21/2022. (Ouellette, Sean) (Entered: 01/03/2022) |

| | | |
|---|---|---|
| 01/03/2022 | 11 | WAIVER OF SERVICE returned executed by Matthew Daly. The Benefits Committee of West Monroe Partners, Inc. waiver sent on 12/23/2021, answer due 2/21/2022. (Ouellette, Sean) (Entered: 01/03/2022) |
| 02/10/2022 | 12 | MOTION by Plaintiff Matthew Daly for order *Appointing Interim Class Counsel* (Field, Charles) (Entered: 02/10/2022) |
| 02/10/2022 | 13 | MEMORANDUM by Matthew Daly in support of motion for order 12 *Appointing Interim Class Counsel* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Field, Charles) Modified on 2/10/2022 (rc, ). (Docket Text Modified by Clerks Office.) (Entered: 02/10/2022) |
| 02/11/2022 | 14 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-19147901. (Golumbic, Lars) (Entered: 02/11/2022) |
| 02/11/2022 | 15 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney Lars C. Golumbic's motion to appear pro hac vice on behalf of defendants' The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc. and West Monroe Partners, Inc. 14 is granted. Mailed notice. (kp, ) (Entered: 02/11/2022) |
| 02/11/2022 | 16 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-19148335. (Attachments: # 1 Appendix Appendix A - Bar Admissions, # 2 Supplement Letter from David Sanford)(Sanford, David) (Entered: 02/11/2022) |
| 02/14/2022 | 17 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney David Sanford's motion to appear pro hac vice on behalf of Plaintiff Matthew Daly 16 is granted. Mailed notice. (kp, ) (Entered: 02/14/2022) |
| 02/14/2022 | 18 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-19153962. (Kimelblatt, Meredith) (Entered: 02/14/2022) |
| 02/14/2022 | 19 | ATTORNEY Appearance for Defendant Argent Trust Company by John R Landis (Landis, John) (Entered: 02/14/2022) |
| 02/14/2022 | 20 | ATTORNEY Appearance for Defendant Argent Trust Company by Jeffrey Andrew Soble (Soble, Jeffrey) (Entered: 02/14/2022) |
| 02/14/2022 | 21 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-19154022. (Levin, Samuel) (Entered: 02/14/2022) |
| 02/14/2022 | 22 | ATTORNEY Appearance for Defendant Argent Trust Company by Samantha Ann Saddler (Saddler, Samantha) (Entered: 02/14/2022) |
| 02/14/2022 | 23 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-19154367. (Jacob, Gregory) (Entered: 02/14/2022) |
| 02/14/2022 | 24 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number 0752-19154450. (RICE, DEANNA) (Entered: 02/14/2022) |
| 02/14/2022 | 25 | RESPONSE by Nathan A Uleryin Opposition to MOTION by Plaintiff Matthew Daly for order *Appointing Interim Class Counsel* 12 *Counsel in Related Case's Position Statement Opposing Plaintiff's Motion for Appointment of Interim Counsel* (Muench, Patrick) (Entered: 02/14/2022) |
| 02/15/2022 | 26 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff filed a motion for appointment of interim class counsel 12 . Counsel in a related case has filed a response and indicates it will seek reassignment of the related case to this Court. Plaintiff's motion to appoint class counsel is held in abeyance pending a motion for reassignment. Mailed notice. (kp, ) (Entered: 02/15/2022) |

| | | |
|---|---|---|
| 02/15/2022 | 27 | MINUTE entry before the Honorable Ronald A. Guzman: Attorneys Meredith Foster Kimelblatt and Samuel Isaac Levin's motion to appear pro hac vice 18 , 21 on behalf of defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc. and West Monroe Partners, Inc. is granted. Mailed notice. (kp, ) (Entered: 02/15/2022) |
| 02/15/2022 | 28 | MINUTE entry before the Honorable Ronald A. Guzman: Attorneys Gregory Jacob and Deanna Marie Rice's motion to appear pro hac vice 23 , 24 on behalf of defendant Argent Trust Company is granted. Mailed notice. (kp, ) (Entered: 02/15/2022) |
| 02/15/2022 | 29 | MOTION by Defendant Argent Trust Company for extension of time to file *Responsive Pleading (Unopposed)* (Jacob, Gregory) (Entered: 02/15/2022) |
| 02/16/2022 | 30 | MINUTE entry before the Honorable Ronald A. Guzman: Defendant Argent Trust Company's motion for an extension of time to file its responsive pleading 29 is granted. Argent Trust Company has until March 15, 2022 to answer or otherwise plead. A new date will be set, if necessary, based on the results of anticipated motion practice before the Court. Mailed notice. (kp, ) (Entered: 02/16/2022) |
| 02/16/2022 | 31 | MINUTE entry before the Honorable Ronald A. Guzman: The Court clarifies its order located at docket 30 ; the deadline for the filing of responsive pleadings is extended to March 15, 2022 for all defendants. Mailed notice. (kp, ) (Entered: 02/16/2022) |
| 02/16/2022 | 32 | ATTORNEY Appearance for Intervenor Plaintiff Nathan A Ulery by Patrick Owen Muench (Muench, Patrick) (Entered: 02/16/2022) |
| 02/16/2022 | 33 | MOTION by Intervenor Plaintiff Nathan A Ulery to reassign case (Attachments: # 1 Exhibit A - Complaint in Nathan A. Ulery v. West Monroe Partners, Inc., et al.)(Muench, Patrick) (Entered: 02/16/2022) |
| 02/22/2022 | 34 | MINUTE entry before the Honorable Ronald A. Guzman: Any objection to Intervenor-Plaintiff Nathan A. Ulery's motion to reassign case 33 shall be filed no later than February 24, 2022. Mailed notice. (kp, ) (Entered: 02/22/2022) |
| 02/28/2022 | 35 | ATTORNEY Appearance for Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. by Daniel J. Broderick, Jr (Broderick, Daniel) (Entered: 02/28/2022) |
| 02/28/2022 | 36 | ATTORNEY Appearance for Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. by Brendan R. Youngblood (Youngblood, Brendan) (Entered: 02/28/2022) |
| 03/02/2022 | 37 | ORDER. Signed by the Honorable Ronald A. Guzman on 3/2/2022. Mailed notice. (kp, ) (Entered: 03/02/2022) |
| 03/02/2022 | 38 | ENTERED IN ERROR. (kp, ) Modified on 3/3/2022 (kp, ). (Entered: 03/03/2022) |
| 03/03/2022 | 39 | NOTICE of Correction 38 . (kp, ) (Entered: 03/03/2022) |
| 03/08/2022 | 40 | MOTION by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. for extension of time to file answer regarding complaint 1 *or to Otherwise Respond [Unopposed & Joint with Defendant Argent Trust]* (Golumbic, Lars) (Entered: 03/08/2022) |
| 03/08/2022 | 41 | MINUTE entry before the Honorable Ronald A. Guzman: The Daly Defendants' motion for an extension of time to answer or otherwise plead 40 is granted. The Daly Defendants' responsive pleadings are due no later than April 19, 2022, unless directed otherwise. Mailed notice. (kp, ) (Entered: 03/08/2022) |

| | | |
|---|---|---|
| 04/04/2022 | 42 | MINUTE entry before the Honorable Ronald A. Guzman: Before the Court is Plaintiff Ulery's motion to consolidate (No. 22 C 781, Dkt. # 19). Defendants do not object to full consolidation of Daly v. West Monroe (21 C 6805) and Ulery v. West Monroe (22 C 781). Plaintiff Daly contends consolidation for pretrial purposes only is appropriate. No later than April 8, 2022, Plaintiff Daly is directed to file a brief statement providing specific reasons supporting his objection to full consolidation, including reasons why one amended complaint covering all claims as to both named plaintiffs is unworkable. Mailed notice. (kp, ) (Entered: 04/04/2022) |
| 04/08/2022 | 43 | RESPONSE by Plaintiff Matthew Daly (Field, Charles) (Entered: 04/08/2022) |
| 04/14/2022 | 44 | MINUTE entry before the Honorable Ronald A. Guzman: Before the Court is Plaintiff Ulery's Motion to Consolidate Cases (No. 22 C 781, Dkt. # 19). While Defendants do not object to consolidation, Plaintiff Daly states that he objects to full consolidation due to Plaintiff Ulery's "unique" position as a former high-ranking executive and former board member at West Monroe Partners, Inc., who may have had access to information relevant to the claims alleged in these two actions and also may have participated in fiduciary decisions at issue. Plaintiff Daly does not oppose the filing of an amended complaint covering all claims as to both named plaintiffs, nor does he object to consolidated discovery. Plaintiff Daly contends, however, that Plaintiff Ulery's "apparent" conflict of interest and atypicality make him unlikely to act as an appropriate class representative and could create confusion at a joint trial. Neither Plaintiff Ulery nor Plaintiff Daly made the Court aware of the possibility of a significant conflict of interest when the motion to reassign was presented to the Court. No later than April 21, 2022, Plaintiff Daly is directed to file a statement indicating why he has not, therefore, waived any objection to full consolidation of the cases. By the same date, Defendants are directed to file a statement summarizing their anticipated motion practice in this case, both in the event of full consolidation or partial consolidation for purposes of discovery. Mailed notice. (kp, ) (Entered: 04/14/2022) |
| 04/15/2022 | 45 | MOTION by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc. for extension of time *to file responsive pleading.* (Golumbic, Lars) (Entered: 04/15/2022) |
| 04/18/2022 | 46 | MINUTE entry before the Honorable Ronald A. Guzman: Defendants' motion for an extension of time to file their responsive pleadings 45 is granted in part. The date for the filing of Defendants' responsive pleadings is stayed pending the Court's ruling on Plaintiff's Ulery's motion to consolidate. The Court will set a date for responsive pleadings to be filed when it rules on the motion to consolidate. Mailed notice. (kp, ) (Entered: 04/18/2022) |
| 04/21/2022 | 47 | RESPONSE by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to set deadlines,,,,,, 44 *Defendants' Response to April 14, 2022 Order.* (Golumbic, Lars) (Entered: 04/21/2022) |
| 04/21/2022 | 48 | RESPONSE by Plaintiff Matthew Daly (Field, Charles) (Entered: 04/21/2022) |
| 05/03/2022 | 49 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff Ulery's motion to consolidate pursuant to Federal Rule of Civil Procedure 42(a) (No. 22 C 781, Dkt. # 19) is granted in part. Due to the potential conflict of interest between the named plaintiffs, the Court consolidates Daly v. West Monroe Partners, Inc., et al. (No. 21 C 6805) and Ulery v. West Monroe Partners, Inc., et al. (No. 22 C 781) for pretrial purposes only at this time. Ulery may renew his motion for full consolidation after discovery is completed. After the Court appoints interim class counsel, the Court will order appointed interim counsel to file a consolidated amended complaint and a proposed discovery schedule. |

| | | |
|---|---|---|
| | | Plaintiff Daly has filed a motion for appointment of interim class counsel. Any response/cross-motion for appointment is due no later than May 16, 2022. Any reply shall be filed no later than May 27, 2022. Ruling to be made electronically. Mailed notice. (kp, ) (Entered: 05/03/2022) |
| 05/16/2022 | 50 | RESPONSE by Nathan A Uleryin Opposition to MOTION by Plaintiff Matthew Daly for order *Appointing Interim Class Counsel* 12 *and Plaintiff Ulery's Memorandum of Law in Support of Motion for Appointment of Interim Class Counsel* (Attachments: # 1 Exhibit A - Declaration of Gregory Y. Porter, # 2 Exhibit B - Declaration of Nathan A. Ulery, # 3 Exhibit C - Declaration of Robert A. Izard, # 4 Exhibit D - Declaration of Daniel P. Williams, # 5 Exhibit E - Declaration of David Wiggs, # 6 Exhibit F - Declaration of David Johnson)(Muench, Patrick) (Entered: 05/16/2022) |
| 05/17/2022 | 51 | EXHIBIT by Intervenor Plaintiff Nathan A Ulery *Corrected Exhibit B - Declaration of Nathan Ulery* regarding response in opposition to motion,, 50 (Muench, Patrick) (Entered: 05/17/2022) |
| 05/26/2022 | 52 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19506314. (Attachments: # 1 Supplement)(Sharp, Kevin) (Entered: 05/26/2022) |
| 05/26/2022 | 53 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney Kevin Sharp's motion to appear pro hac vice on behalf of Plaintiff Matthew Daly 52 is granted. Mailed notice. (kp, ) (Entered: 05/26/2022) |
| 05/27/2022 | 54 | REPLY by Matthew Daly to response in opposition to motion,, 50 *to appoint interim class counsel* (Attachments: # 1 Exhibit F, # 2 Exhibit G, # 3 Exhibit H, # 4 Exhibit I, # 5 Exhibit J, # 6 Exhibit K, # 7 Exhibit L)(Field, Charles) (Entered: 05/27/2022) |
| 06/02/2022 | 55 | MOTION by Attorney Daniel J. Broderick to withdraw as attorney for The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc.. No party information provided (Youngblood, Brendan) (Entered: 06/02/2022) |
| 06/02/2022 | 56 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney Daniel J. Broderick, Jr.'s motion to withdraw as attorney on behalf of defendants West Monroe Partners, Inc., The Benefits Committee of West Monroe Partners, Inc.v and The Board of Directors of West Monroe Partners, Inc. 55 is granted. Mailed notice. (kp, ) (Entered: 06/02/2022) |
| 06/03/2022 | 57 | REPLY by Intervenor Plaintiff Nathan A Ulery to response in opposition to motion,, 50 *Plaintiff Ulery's Reply Memorandum of Law in Support of Motion for Appointment of Interim Class Counsel* (Attachments: # 1 Exhibit H, # 2 Exhibit I, # 3 Exhibit J, # 4 Exhibit K, # 5 Exhibit L, # 6 Exhibit M, # 7 Exhibit N, # 8 Exhibit O)(Muench, Patrick) (Entered: 06/03/2022) |
| 06/07/2022 | 58 | MOTION by Plaintiff Matthew Daly for leave to file *Sur-Reply in Opposition to Ulery's Motion for Interim Class Counsel* (Attachments: # 1 Exhibit Sur-reply in Opposition to Ulery's Motion for Interim Class Counsel, # 2 Exhibit Declaration of Charles Field) (Field, Charles) (Entered: 06/07/2022) |
| 06/07/2022 | 59 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff Daly'smotion for leave to file sur-reply in opposition to Plaintiff Ulery's motion to appoint interim class counsel 58 is granted. Mailed notice. (kp, ) (Entered: 06/07/2022) |
| 06/07/2022 | 60 | SUR-REPLY by Plaintiff Matthew Daly to response in opposition to motion,, 50 *Ulery's Motion to Appoint Interim Class Counsel* (Attachments: # 1 Exhibit M)(Field, Charles) (Entered: 06/07/2022) |
| 06/15/2022 | 61 | MEMORANDUM Opinion and Order: The Court grants Daly's motion for appointment of interim counsel 12 and appoints Sanford Heisler Sharp, LLP as interim class counsel |

A-102

| | | and Matthew Singer as local counsel. The Court denies Ulery's motion to appoint interim class counsel 50 . Interim class counsel shall file a consolidated amended complaint by July 8, 2022. Defendants shall answer or otherwise plead to the consolidated amended complaint by July 29, 2022. In the event Defendants move to dismiss the consolidated amended complaint, they shall make every effort possible to file a consolidated motion. If Defendants require additional pages, they shall seek leave of Court to file an enlarged brief well ahead of the responsive-pleading deadline. The Court directs the parties to confer, no later than July 11, 2022, to discuss the nature and bases of their claims and defenses and the possibilities for a prompt settlement or resolution of the case. The parties shall also discuss deadlines for Rule 26(a)(1) disclosures and a proposed discovery plan. A written initial status report and proposed discovery plan shall be filed no later than July 25, 2022. Plaintiff Daly is responsible for initiating such a meeting, and all lead counsel for all parties are required to participate. Failure or refusal to participate in such a meeting or to cooperate in the preparation of the written report may constitute a basis for sanctions. In-person status hearing set for July 28, 2022 at 11:00 a.m. Signed by the Honorable Ronald A. Guzman on 6/15/2022. Mailed notice. (kp, ) (Entered: 06/15/2022) |
|---|---|---|
| 06/21/2022 | 62 | NOTICE of Voluntary Dismissal by Nathan A Ulery (Muench, Patrick) (Entered: 06/21/2022) |
| 06/21/2022 | 63 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff Nathan Ulery having filed a notice of voluntary dismissal, case number 22 C 781 is dismissed and the matter is terminated. Mailed notice. (kp, ) (Entered: 06/21/2022) |
| 06/24/2022 | 64 | MOTION by Plaintiff Matthew Daly for order *Modifying Schedule* (Field, Charles) (Entered: 06/24/2022) |
| 06/24/2022 | 65 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff's motion to modify the schedule set in the Court's 6/15/22 memorandum opinion and order 64 is granted. The 7/8/22 date for filing a consolidated amended complaint is stricken; the rest of the Court's 6/15/22 order stands. Mailed notice. (kp, ) (Entered: 06/24/2022) |
| 07/07/2022 | 66 | ATTORNEY Appearance for Defendant Argent Trust Company by Brenton Warren Vincent (Vincent, Brenton) (Entered: 07/07/2022) |
| 07/22/2022 | 67 | MOTION by Attorney Jeffrey A. Soble, John R. Landis, and Samantha A. Saddler to withdraw as attorney for Argent Trust Company. No party information provided (Soble, Jeffrey) (Entered: 07/22/2022) |
| 07/22/2022 | 68 | MOTION by Defendant Argent Trust Company for leave to file excess pages (Vincent, Brenton) (Entered: 07/22/2022) |
| 07/22/2022 | 69 | MOTION by Attorney Gregory Jacob and Deanna M. Rice to withdraw as attorney for Argent Trust Company. No party information provided (Jacob, Gregory) (Entered: 07/22/2022) |
| 07/22/2022 | 70 | MINUTE entry before the Honorable Ronald A. Guzman: Defendant Argent Trust Company's motion to withdraw as attorneys Samantha Ann Saddler, Jeffrey Andrew Soble, Gregory Jacob, Deanna Marie Rice and John R Landis 67 , 69 is granted. Defendant Argent Trust Company's unopposed motion for leave to file a brief in excess of fifteen pages 68 is granted. Mailed notice. (kp, ) (Entered: 07/22/2022) |
| 07/25/2022 | 71 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19679378. (Woods, Elizabeth) (Entered: 07/25/2022) |
| 07/25/2022 | 72 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney Elizabeth L. Woods's motion to appear pro hac vice on behalf of defendants West Monroe Partners, Inc., The |

| | | |
|---|---|---|
| | | Benefits Committee of West Monroe Partners, Inc. and The Board of Directors of West Monroe Partners, Inc. 71 is granted. Mailed notice. (kp, ) (Entered: 07/25/2022) |
| 07/25/2022 | 73 | STATUS Report *Joint Report Pursuant to Rule 26(f)* by Matthew Daly (Field, Charles) (Entered: 07/25/2022) |
| 07/27/2022 | 74 | MINUTE entry before the Honorable Ronald A. Guzman: The in-person status hearing set for 7/28/2022 at 11:00 a.m. has been changed to a telephonic status hearing instead. Throughout the telephonic hearing, each speaker will be expected to identify themselves for the record before speaking. Please note that the conference call-in will be used by all cases that are on the court's calendar for the said date, therefore counsel must be in a quiet area while on the line and must have the telephone muted until your case is called. Members of the public and media will be able to call in to listen to this hearing. The call-in number is (888) 684-8852 and the access code is 1246152. Counsel of record will receive an email the day before the telephonic hearing with instructions to join the call. Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. Mailed notice. (kp, ) (Entered: 07/27/2022) |
| 07/29/2022 | 75 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19694061. (Hannaway, James) (Entered: 07/29/2022) |
| 07/28/2022 | 76 | MINUTE entry before the Honorable Ronald A. Guzman: Telephonic status hearing held on 7/28/2022. The Court adopts the jointly proposed discovery schedule as follows: Initial disclosures shall be exchanged by 8/11/2022. Amendment of pleadings to be made no later than 2/7/2023. Motion for class certification shall be completed by 4/7/2023. All fact discovery shall be completed by 7/7/2023. Responses by 5/7/2023 and replies by 5/21/2023. The end of fact discovery will be 7/7/2023. Initial expert disclosures 8/7/2023. Rebuttal expert disclosures 9/12/2023 and the end of expert discovery 10/12/2023. The parties are admonished that the Court considers this a very ample schedule and is not likely to approve any extensions. A joint status report shall be filed one week prior to the next status hearing. All discovery issues and discovery supervision, without authority to extend the discovery cutoff dates, are referred to the Magistrate Judge. Mailed notice. (kp, ) (Entered: 07/29/2022) |
| 07/28/2022 | 77 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Sheila M. Finnegan for the purpose of holding proceedings related to: Discovery supervision and all discovery disputes without authority to extend the discovery cutoff date. Mailed notice. (kp, ) (Entered: 07/29/2022) |
| 07/29/2022 | 78 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendants Argent Trust Company, Does 1-30, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. (Golumbic, Lars) (Entered: 07/29/2022) |
| 07/29/2022 | 79 | MEMORANDUM by Argent Trust Company, Does 1-30, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. in support of Motion to Dismiss for Failure to State a Claim, 78 (Golumbic, Lars) (Entered: 07/29/2022) |
| 08/01/2022 | 80 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney James Hannaway's motion to appear pro hac vice on behalf of Plaintiff Matthew Daly 75 is granted. Mailed notice. (kp, ) (Entered: 08/01/2022) |

| 08/03/2022 | 81 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19707669. (Russell, Jeffrey) (Entered: 08/03/2022) |
|---|---|---|
| 08/03/2022 | 82 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-19707701. (Lewis, Robert) (Entered: 08/03/2022) |
| 08/03/2022 | 83 | ATTORNEY Appearance for Defendant Argent Trust Company by Kristopher Fernandez (Fernandez, Kristopher) (Entered: 08/03/2022) |
| 08/04/2022 | 84 | MINUTE entry before the Honorable Ronald A. Guzman: Attorneys Jeffrey Russell and Robert Milton's motion to appear pro hac vice on behalf of defendant Argent Trust Company 81 , 82 is granted. Mailed notice. (kp, ) (Entered: 08/04/2022) |
| 08/05/2022 | 85 | MINUTE entry before the Honorable Sheila M. Finnegan: This case has been referred for discovery supervision. Magistrate Judge telephone status is set on 8/11/2022 at 10:00 a.m. The toll-free number for the next hearing is 877-336-1831, access code 5995354. Persons granted remote access to proceedings are reminded of the prohibition against recording and rebroadcasting of court proceedings. Mailed notice (sxw) (Entered: 08/05/2022) |
| 08/11/2022 | 86 | MINUTE entry before the Honorable Sheila M. Finnegan: Magistrate Judge telephone status hearing held on 8/11/2022. Plaintiff reports that he recently issued written discovery, and will be filing an amended complaint by 8/19/2022 that will moot the pending motion to dismiss. By 9/22/2022, parties are to file a joint status report. Should the parties choose to engage in a settlement conference, they are to contact the courtroom deputy for scheduling. Mailed notice (sxw, ) (Entered: 08/11/2022) |
| 08/19/2022 | 87 | AMENDED complaint by Matthew Daly against All Defendants (Field, Charles) (Entered: 08/19/2022) |
| 08/19/2022 | 88 | SEALED DOCUMENT by Plaintiff Matthew Daly (Field, Charles) (Entered: 08/19/2022) |
| 08/19/2022 | 89 | MOTION by Plaintiff Matthew Daly to seal document sealed document 88 (Field, Charles) (Entered: 08/19/2022) |
| 08/23/2022 | 90 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff's motion to provisionally seal the amended complaint 89 is before the Court. The case has been referred to the magistrate judge for discovery supervision. Accordingly, Plaintiff's motion to provisionally seal the amended complaint 89 is granted with the understanding that the issue of a permanent seal will be addressed with the magistrate judge at the time the parties move for a protective order. The Court reminds the parties that "[i]n the Seventh Circuit, documents that are placed in the court record 'that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality.'" Wachala v. Astellas US LLC, No. 20 C 3882, 2022 WL 408108, at *2 (N.D. Ill. Feb. 10, 2022) (citing Baxter Int'l, Inc. v. Abbott Lab'ys, 297 F.3d 544, 545 (7th Cir. 2002)). Mailed notice. (kp, ) (Entered: 08/23/2022) |
| 08/30/2022 | 91 | MOTION by Defendant Argent Trust Company for leave to file excess pages *[Joint Motion for Leave to File Excess Pages]*, MOTION by Defendant Argent Trust Company for extension of time *[Joint Motion for Extension of Time]* (Fernandez, Kristopher) (Entered: 08/30/2022) |
| 08/31/2022 | 92 | MINUTE entry before the Honorable Ronald A. Guzman: Defendants' joint motion for an extension of time to respond to the amended complaint and for leave to file excess pages 91 is granted in part and entered and continued in part. The motion for an extension of time is granted. Defendants' motion to dismiss the amended complaint is due September 16, 2022, Plaintiff's response is due October 14, 2022, and any reply is due October 31, |

| | | |
|---|---|---|
| | | 2022. Ruling to be made via electronic notification. Regarding the request for leave to file a 30-page motion to dismiss, the Court notes that it values concision and economy in the briefs filed before it. Further, a motion to dismiss should not contain a lengthy recitation of the facts. With these points in mind, Defendants shall file by September 7, 2022 a brief statement (no more than 2 pages) indicating whether they still believe they need more than 25 pages for their motion to dismiss, and if so, the specific reasons therefor. Mailed notice. (kp, ) (Entered: 08/31/2022) |
| 09/07/2022 | 93 | JOINT FILING by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. regarding their motion for leave to file excess pages (Golumbic, Lars) (Docket Text Modified by Clerk's Office on 9/8/2022) (kp, ). (Entered: 09/07/2022) |
| 09/16/2022 | 94 | MOTION by Defendants Argent Trust Company, Does 1-30, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to dismiss *Joint Motion to Dismiss* (Fernandez, Kristopher) (Entered: 09/16/2022) |
| 09/16/2022 | 95 | MEMORANDUM by Argent Trust Company in support of motion to dismiss, 94 (Fernandez, Kristopher) (Entered: 09/16/2022) |
| 09/16/2022 | 96 | MOTION by Defendant Argent Trust Company to seal document *Defendants' Joint Motion to File Document Under Seal* (Fernandez, Kristopher) (Entered: 09/16/2022) |
| 09/16/2022 | 97 | SEALED EXHIBIT by Defendant Argent Trust Company regarding memorandum in support of motion 95 (Fernandez, Kristopher) (Entered: 09/16/2022) |
| 09/22/2022 | 98 | MOTION by Defendant West Monroe Partners, Inc.Motion for Entry of Agreed Confidentiality Order (Attachments: # 1 Exhibit A - Agreed Confidentiality Order, # 2 Exhibit B - Redline Comparison Model Confidentiality and Agreed Confidentiality) (Golumbic, Lars) (Entered: 09/22/2022) |
| 09/22/2022 | 99 | STATUS Report *Joint Status Report Pursuant to August 11, 2022 Order* by Matthew Daly (Kornblith, Russell) (Entered: 09/22/2022) |
| 09/22/2022 | 100 | MINUTE entry before the Honorable Sheila M. Finnegan: The Court has reviewed the joint status report dated 9/22/2022. The parties are given until 10/19/2022 to (1) submit a joint proposed ESI Protocol or, to the extent necessary, competing proposed ESI Protocols; and (2) submit a joint report regarding the resolution of the provisionally sealed and proposed provisionally sealed documents in this case. Mailed notice (sxw) (Entered: 09/22/2022) |
| 09/23/2022 | 101 | MINUTE entry before the Honorable Sheila M. Finnegan: Joint Motion for Entry of Agreed Confidentiality Order 98 is granted. Mailed notice (sxw) (Entered: 09/23/2022) |
| 09/23/2022 | 102 | AGREED CONFIDENTIALITY Order signed by the Honorable Sheila M. Finnegan on 9/23/2022. Mailed notice (sxw) (Entered: 09/23/2022) |
| 10/14/2022 | 103 | RESPONSE by Matthew Dalyin Opposition to MOTION by Defendants Argent Trust Company, Does 1-30, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to dismiss *Joint Motion to Dismiss* 94 (Field, Charles) (Entered: 10/14/2022) |
| 10/14/2022 | 104 | MOTION by Plaintiff Matthew Daly to seal *Unredacted Opposition to Defendants' Joint Motion to Dismiss* (Field, Charles) (Entered: 10/14/2022) |
| 10/14/2022 | 105 | OPPOSITION by Plaintiff Matthew Daly *to Motion to Dismiss the Amended Complaint* (Field, Charles) Modified on 10/24/2022 (jg, ). (Entered: 10/14/2022) |

| | | |
|---|---|---|
| 10/19/2022 | 106 | STIPULATION *and Proposed Order Regarding the Production of Electronically Stored Information* (Kornblith, Russell) (Entered: 10/19/2022) |
| 10/19/2022 | 107 | STATUS Report *Joint Status Report* by The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. (Golumbic, Lars) (Entered: 10/19/2022) |
| 10/21/2022 | 108 | MINUTE entry before the Honorable Sheila M. Finnegan: The Court has reviewed the joint status report dated 10/19/2022 regarding resolution of provisionally sealed and proposed provisionally sealed documents in the case. By agreement, the document filed at Dkt 105 will be unsealed. The Clerk of Court is directed to unseal that document. As to the other two documents described in the JSR, the West Monroe Defendants and Argent are given until 11/10/2022 to file motions to seal portions of these documents. Based on the JSR, Plaintiff does not plan to oppose these motions. By 11/21/2022, the parties are to file a joint status report regarding discovery progress, including whether they have resolved disputes over responses to written discovery. Mailed notice (sxw) (Entered: 10/21/2022) |
| 10/31/2022 | 109 | REPLY by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to motion to dismiss, 94 *In Support of Their Joint Motion to Dismiss* (Golumbic, Lars) (Entered: 10/31/2022) |
| 11/10/2022 | 110 | MOTION by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to seal *[Joint Motion]* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Golumbic, Lars) (Entered: 11/10/2022) |
| 11/14/2022 | 111 | MOTION by Plaintiff Matthew Daly for leave to file *Surreply in Opposition to Motion to Dismiss* (Attachments: # 1 Exhibit 1. Surreply in Opposition to Motion to Dismiss, # 2 Exhibit A. West Monroe Responses to Requests for Admission)(Field, Charles) (Entered: 11/14/2022) |
| 11/14/2022 | 112 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff's motion for leave to file a sur-reply 111 is granted in part. Plaintiff may file a sur-reply of no more than 7 pages no later than November 21, 2022. Defendants may file a sur-response of no more than 7 pages no later than December 2, 2022. The Court admonishes the parties that motions for additional pages or additional briefing shall be filed before any proposed brief is filed, even as an exhibit, so the Court may set appropriate page limitations, as necessary. Mailed notice. (kp, ) (Entered: 11/14/2022) |
| 11/21/2022 | 113 | SUR-REPLY by Plaintiff Matthew Daly to motion to dismiss, 94 (Field, Charles) (Entered: 11/21/2022) |
| 11/21/2022 | 114 | Exhibit A to Sur-Reply by Matthew Daly (Field, Charles) (Entered: 11/21/2022) |
| 11/21/2022 | 115 | STATUS Report *Pursuant to October 21, 2022 Order* by Matthew Daly (Field, Charles) (Entered: 11/21/2022) |
| 11/22/2022 | 116 | MINUTE entry before the Honorable Sheila M. Finnegan: The Court has reviewed the joint status report dated 11/21/2022. The parties are to file an updated report by 12/20/2022 that identifies any unresolved disputes over written discovery. Mailed notice (sxw) (Entered: 11/22/2022) |
| 11/22/2022 | 117 | ORDER Regarding the Production of Electronically Stored Information ("ESI") signed by the Honorable Sheila M. Finnegan on 11/22/2022. Mailed notice (sxw) (Entered: 11/22/2022) |

| | | |
|---|---|---|
| 12/02/2022 | 118 | SUR-REPLY by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to motion to dismiss, 94 (Golumbic, Lars) (Entered: 12/02/2022) |
| 12/20/2022 | 119 | STATUS Report *Pursuant to November 22, 2022 Order* by Matthew Daly (Field, Charles) (Entered: 12/20/2022) |
| 12/27/2022 | 120 | MINUTE entry before the Honorable Sheila M. Finnegan: The Court has reviewed the joint status report dated 12/20/2022, indicating that written discovery is ongoing and there are no disputes requiring the Court's attention. The parties are to file an updated status report by 2/7/2023. Mailed notice (ec) (Entered: 12/27/2022) |
| 12/29/2022 | 121 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/30/2022) |
| 01/09/2023 | 122 | TRANSCRIPT OF PROCEEDINGS held on 7/28/22 before the Honorable Ronald A. Guzman. Order Number: 44163. Court Reporter Contact Information: Nancy LaBella, nlabella.ilnd@gmail.com, 312-435-6890. <br><br> IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings. <br><br> Redaction Request due 1/30/2023. Redacted Transcript Deadline set for 2/9/2023. Release of Transcript Restriction set for 4/10/2023. (Labella, Nancy) (Entered: 01/09/2023) |
| 01/24/2023 | 123 | NOTICE by Argent Trust Company *Notice of Withdrawal of Appearance* (Russell, Jeffrey) (Entered: 01/24/2023) |
| 02/01/2023 | 124 | MOTION by Attorney Sean Ouellette to withdraw as attorney for Matthew Daly. No party information provided (Kornblith, Russell) (Entered: 02/01/2023) |
| 02/01/2023 | 125 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney Sean Ouellette's motion to withdraw as attorney on behalf of Plaintiff Matthew Daly 124 is granted. Mailed notice. (kp, ) (Entered: 02/01/2023) |
| 02/07/2023 | 126 | STATUS Report *Pursuant to December 27, 2022 Order* by Matthew Daly (Field, Charles) (Entered: 02/07/2023) |
| 02/07/2023 | 127 | MINUTE entry before the Honorable Sheila M. Finnegan: The Court has reviewed the joint status report dated 2/7/2023, indicating that written discovery is ongoing and there |

| | | |
|---|---|---|
| | | are no disputes requiring the Court's attention. Telephone status hearing is set for 2/28/2023 at 9:30 a.m. The toll-free number for the next hearing is 877-336-1831, access code 5995354. Persons granted remote access to proceedings are reminded of the prohibition against recording and rebroadcasting of court proceedings. Mailed notice (sxw) (Entered: 02/07/2023) |
| 02/28/2023 | 128 | MINUTE entry before the Honorable Sheila M. Finnegan: Magistrate Judge telephone status hearing held on 2/28/2023 and continued to 5/2/2023 at 9:15 a.m. The parties have responded to written discovery and have no disputes, though they are conferring on search terms and custodians to be used for additional searches for responsive ESI. Any motions to compel written discovery are to be filed by 3/30/2023. Also by that date, Plaintiff is to issue, and the parties are to confer about, the Rule 30(b)(6) topics. The toll-free number for the next hearing is 877-336-1831, access code 5995354. Persons granted remote access to proceedings are reminded of the prohibition against recording and rebroadcasting of court proceedings. Mailed notice (sxw) (Entered: 02/28/2023) |
| 03/01/2023 | 129 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number AILNDC-20396133. (Fernandez, Kristopher) (Entered: 03/01/2023) |
| 03/07/2023 | 130 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 150, receipt number BILNDC-20412839. (Simon, Jacob) (Entered: 03/07/2023) |
| 03/07/2023 | 131 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney Jacob Simon's motion for leave to appear pro hac vice on behalf of Defendant Argent Trust Company 130 is granted. Mailed notice. (kp, ) (Entered: 03/07/2023) |
| 03/15/2023 | 132 | MEMORANDUM Opinion and Order: For the reasons stated below, Defendants' joint motion to dismiss 94 is granted in part and denied in part. Plaintiff's claims against the individual Board or Committee members are dismissed without prejudice. Defendants' motion is denied with respect to the remaining claims. Signed by the Honorable Ronald A. Guzman on 3/15/2023. Mailed notice. (kp, ) (Entered: 03/15/2023) |
| 03/23/2023 | 133 | MOTION by Defendants Argent Trust Company, Does 1-30, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. for extension of time to file answer regarding sealed document 88 *Defendants' Unopposed Motion to Extend Time to Answer* (Golumbic, Lars) (Entered: 03/23/2023) |
| 03/23/2023 | 134 | MINUTE entry before the Honorable Ronald A. Guzman: Defendants' request for an extension of time to file their answers 133 is granted. Defendants' answers are due no later than April 12, 2023. Mailed notice. (mma, ) (Entered: 03/23/2023) |
| 03/24/2023 | 135 | MOTION by Plaintiff Matthew Daly for extension of time *to file Motion for Class Certification* (Field, Charles) (Entered: 03/24/2023) |
| 03/24/2023 | 136 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff's motion for an extension of time to file a motion for class certification 135 is granted. Plaintiff's motion for class certification is due April 21, 2023, Defendants' response is due May 21, 2023, and any reply is due June 4, 2023. Ruling to be made via electronic notification. Mailed notice. (kp, ) (Entered: 03/24/2023) |
| 03/24/2023 | 137 | STATUS Report *Joint Status Report in Response to February 28, 2023 Minute Entry* by Matthew Daly (Field, Charles) (Entered: 03/24/2023) |
| 04/10/2023 | 138 | ATTORNEY Appearance for Defendant West Monroe Partners, Inc. by Jeffrey Aaron Hesser (Hesser, Jeffrey) (Entered: 04/10/2023) |
| 04/10/2023 | 139 | MOTION by Attorney Brendan R. Youngblood to withdraw as attorney for The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe |

A-109

| | | |
|---|---|---|
| | | Partners, Inc., West Monroe Partners, Inc.. No party information provided (Hesser, Jeffrey) (Entered: 04/10/2023) |
| 04/10/2023 | 140 | MINUTE entry before the Honorable Ronald A. Guzman: Attorney Brendan R. Youngblood's motion to withdraw as attorney on behalf of defendant West Monroe Partners, Inc. 139 is granted. Mailed notice. (kp, ) (Entered: 04/10/2023) |
| 04/11/2023 | 141 | MINUTE entry before the Honorable Ronald A. Guzman: On the Court's own motion, the in-person status hearing set for 4/12/2023 at 10:00 a.m. is stricken and reset to 4/12/2023 at 10:30 a.m. (TIME CHANGE ONLY) Mailed notice. (kp, ) (Entered: 04/11/2023) |
| 04/11/2023 | 142 | MINUTE entry before the Honorable Ronald A. Guzman: The in-person status hearing set for 4/12/2023 at 10:30 a.m. is stricken. Mailed notice. (kp, ) (Entered: 04/11/2023) |
| 04/12/2023 | 143 | ANSWER to amended complaint by Argent Trust Company(Fernandez, Kristopher) (Entered: 04/12/2023) |
| 04/12/2023 | 144 | *The West Monroe Defendants'* ANSWER to amended complaint by The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc.(Golumbic, Lars) (Entered: 04/12/2023) |
| 04/18/2023 | 145 | MOTION by Plaintiff Matthew Daly for leave to file excess pages (Field, Charles) (Entered: 04/18/2023) |
| 04/18/2023 | 146 | MINUTE entry before the Honorable Ronald A. Guzman: Plaintiff's motion for leave to file brief in excess of fifteen pages 145 is granted. Mailed notice. (kp, ) (Entered: 04/18/2023) |
| 04/21/2023 | 147 | MOTION by Plaintiff Matthew Daly to certify class Responses due by 5/21/2023 (Field, Charles) (Entered: 04/21/2023) |
| 04/21/2023 | 148 | MEMORANDUM by Matthew Daly in support of motion to certify class 147 (Attachments: # 1 Declaration of C. Field, # 2 Exhibit 1 to Field Decl., # 3 Exhibit 2 to Field Decl., # 4 Exhibit 3 to Field Decl., # 5 Exhibit 4 to Field Decl., # 6 Exhibit 5 to Field Decl., # 7 Exhibit 6 to Field Decl., # 8 Exhibit 7 to Field Decl., # 9 Exhibit 8 to Field Decl., # 10 Exhibit 9 to Field Decl., # 11 Exhibit 10 to Field Decl., # 12 Exhibit 11 to Field Decl., # 13 Exhibit 12 to Field Decl., # 14 Exhibit 13 to Field Decl., # 15 Exhibit 14 to Field Decl., # 16 Exhibit 15 to Field Decl., # 17 Exhibit 16 to Field Decl., # 18 Declaration of M. Daly, # 19 Declaration of R. Kornblith, # 20 Declaration of D. Sanford, # 21 Declaration of K. Sharp, # 22 Declaration of M. Singer)(Field, Charles) (Entered: 04/21/2023) |
| 04/21/2023 | 149 | SEALED DOCUMENT by Plaintiff Matthew Daly (Attachments: # 1 Exhibit 1 to Field Decl., # 2 Exhibit 5 to Field Decl., # 3 Exhibit 6 to Field Decl., # 4 Exhibit 8 to Field Decl., # 5 Exhibit 9 to Field Decl., # 6 Exhibit 10 to Field Decl., # 7 Exhibit 11 to Field Decl., # 8 Exhibit 12 to Field Decl., # 9 Exhibit 15 to Field Decl.)(Field, Charles) (Entered: 04/21/2023) |
| 04/21/2023 | 150 | MOTION by Plaintiff Matthew Daly to seal document sealed document, 149 *Unredacted Memorandum of Law and Exhibits* (Field, Charles) (Entered: 04/21/2023) |
| 05/02/2023 | 151 | MINUTE entry before the Honorable Sheila M. Finnegan: Magistrate Judge telephone status hearing held on 5/2/2023 and continued to 6/1/2023 at 9:15 a.m. The parties report written discovery is ongoing, and they are conferring on the topics and scheduling of Rule 30(b)(6) depositions. They will also soon be serving subpoenas on third parties for depositions of corporate representatives and this may lead to disputes over scope. To the extent there are disputes relating to the Rule 30(b)(6) topics or other discovery, the parties are given until 5/31/2023 to raise these with the Court. By agreement, this may be done in a joint status report setting forth each side's position. Otherwise, the moving party is to |

| | | |
|---|---|---|
| | | file a motion by 5/31/2023, with response filed by 6/7/2023. Motion hearing (if any) is set on 6/15/2023 at 3:30 p.m. in courtroom 2214; however, this may be converted to a video or telephone hearing if the Court does not require argument or only a very small number of issues are raised. The parties are reminded of the fact discovery deadline of 7/7/2023 set by the district judge. The toll-free number for the next hearing is 877-336-1831, access code 5995354. Persons granted remote access to proceedings are reminded of the prohibition against recording and rebroadcasting of court proceedings. Mailed notice (sxw) (Entered: 05/02/2023) |
| 05/12/2023 | 152 | ORDER OF THE EXECUTIVE COMMITTEE: It appearing that the following cases are currently assigned to the Hon. Ronald A. Guzman. Judge Guzman has requested that these cases be reassigned to another judge of this Court pursuant to 28 USC §294(b); therefore IT IS HEREBY ORDERED THAT the Clerk of Court shall reassign the cases listed below to the district judges of this Court. Case reassigned to the Honorable John Robert Blakey for all further proceedings. Honorable Ronald A. Guzman no longer assigned to the case. Signed by Honorable John Robert Blakey on 05/12/2023. (rc, ) (Entered: 05/12/2023) |
| 05/16/2023 | 153 | MINUTE entry before the Honorable John Robert Blakey: This case has been reassigned to the calendar of the Honorable John Robert Blakey. During the course of the litigation, the attorneys must appear at all hearing dates set by the Court or noticed by the parties. If an attorney has a conflict with a set court date, the attorney must notify Judge Blakey's Courtroom Deputy, Gloria Lewis, at gloria_lewis@ilnd.uscourts.gov. If appropriate, the Court will then reset the matter. Advising opposing counsel of a scheduling conflict is not a substitute for communicating directly with the Court. The litigants are ordered to review and fully comply with all of this Court's own standing orders, which are available on Judge Blakey's information page on the Court's official website: http://www.ilnd.uscourts.gov/. The case remains with Magistrate Judge Finnegan for discovery supervision, and all set dates and deadlines stand. Mailed notice (gel, ) (Entered: 05/16/2023) |
| 05/19/2023 | 154 | MEMORANDUM by Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. in Opposition to motion to certify class 147 (Attachments: # 1 Declaration of L. Golumbic, # 2 Exhibit A to L. Golumbic Declaration, # 3 Exhibit B to L. Golumbic Declaration, # 4 Exhibit C to L. Golumbic Declaration, # 5 Exhibit D to L. Golumbic Declaration, # 6 Exhibit E to L. Golumbic Declaration, # 7 Exhibit F to L. Golumbic Declaration, # 8 Exhibit G to L. Golumbic Declaration, # 9 Exhibit H to L. Golumbic Declaration, # 10 Exhibit I to L. Golumbic Declaration, # 11 Exhibit J to L. Golumbic Declaration, # 12 Exhibit K to L. Golumbic Declaration, # 13 Exhibit L to L. Golumbic Declaration, # 14 Exhibit M to L. Golumbic Declaration, # 15 Exhibit N to L. Golumbic Declaration, # 16 Exhibit O to L. Golumbic Declaration, # 17 Exhibit P to L. Golumbic Declaration)(Golumbic, Lars) (Entered: 05/19/2023) |
| 05/19/2023 | 155 | SEALED DOCUMENT by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. (Attachments: # 1 Exhibit I to L. Golumbic Declaration, # 2 Exhibit L to L. Golumbic Declaration, # 3 Exhibit M to L. Golumbic Declaration, # 4 Exhibit N to L. Golumbic Declaration)(Golumbic, Lars) (Entered: 05/19/2023) |
| 05/19/2023 | 156 | MOTION by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to seal *document sealed document, 155* <br><br> Presented before Presiding Judge |

| | | |
|---|---|---|
| | | (Golumbic, Lars) (Entered: 05/19/2023) |
| 05/31/2023 | 157 | STATUS Report *Joint Status Report in Response to May 2, 2023 Minute Entry* by Matthew Daly<br><br>Presented before Magistrate Judge<br><br>(Field, Charles) (Entered: 05/31/2023) |
| 06/01/2023 | 158 | MINUTE entry before the Honorable Sheila M. Finnegan: Magistrate Judge telephone status hearing held on 6/1/2023 and continued to 8/1/2023 at 9:15 a.m. Parties are to promptly file any discovery motions (serving non-parties if seeking compliance with subpoenas), so they mav be resolved well in advance of the discovery deadline. If such motions are filed, the response is due within 7 days, and the Court will set the matter for a hearing and ruling as soon as feasible. The toll-free number for the next hearing is 877-336-1831, access code 5995354. Persons granted remote access to proceedings are reminded of the prohibition against recording and rebroadcasting of court proceedings. Mailed notice (sxw) (Entered: 06/02/2023) |
| 06/02/2023 | 159 | REPLY by Plaintiff Matthew Daly to motion to certify class 147 (Attachments: # 1 Declaration of Charles Field, # 2 Exhibit 1 to Decl. of Charles Field)(Field, Charles) (Entered: 06/02/2023) |
| 06/06/2023 | 160 | MOTION by Plaintiff Matthew Daly for extension of time to complete discovery<br><br>Presented before Presiding Judge<br><br>(Field, Charles) (Entered: 06/06/2023) |
| 06/06/2023 | 161 | NOTICE of Motion by Charles Henry Field, Jr for presentment of motion for extension of time to complete discovery 160 before Honorable John Robert Blakey on 6/14/2023 at 11:00 AM. (Field, Charles) (Entered: 06/06/2023) |
| 06/06/2023 | 162 | MINUTE entry before the Honorable John Robert Blakey: Plaintiff's unopposed motion for extension of time to complete discovery 160 is granted and fact discovery shall be completed on or before 9/7/2023; initial expert disclosures shall be completed on or before 10/12/2023; rebuttal expert disclosures shall be completed on or before 11/13/2023 and expert discovery shall be completed on or before 12/12/2023. Counsel is reminded that all motions shall be noticed for presentment or may be stricken. Mailed notice (gel, ) (Entered: 06/06/2023) |
| 06/07/2023 | 163 | MINUTE entry before the Honorable John Robert Blakey: The Court grants the various unopposed motions to seal 96 , 104 , 110 , 150 , 156 and will rule on the pending class certification motion 147 in due course. Mailed notice (gel, ) (Entered: 06/07/2023) |
| 06/16/2023 | 164 | MOTION by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. for leave to file *For Leave to File a Surreply in Opposition to Plaintiff's Motion for Class Certification*<br><br>Presented before Presiding Judge<br><br>(Attachments: # 1 Exhibit A)(Golumbic, Lars) (Entered: 06/16/2023) |
| 06/30/2023 | 165 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Defendants' motion for leave to file a surreply 164 and directs Defendants to file their 4-page surreply by 7/7/23. The parties are reminded that all motions must be noticed for presentment; the |

| | | |
|---|---|---|
| | | Court will strike any future motions that fail to comply with its standing orders. Mailed notice (gel, ) (Entered: 06/30/2023) |
| 07/07/2023 | 166 | SUR-REPLY by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to motion to certify class 147 , reply 159 *Defendants Surreply in Opposition to Plaintiff's Motion for Class Certification* (Attachments: # 1 Declaration Lars C. Golumbic, # 2 Exhibit A to L. Golumbic Declaration, # 3 Exhibit B Part 1 to L. Golumbic Declaration, # 4 Exhibit B Part 2 to L. Golumbic Declaration, # 5 Exhibit B Part 3 to L. Golumbic Declaration)(Golumbic, Lars) (Entered: 07/07/2023) |
| 07/10/2023 | 167 | ATTORNEY Appearance for Defendant Argent Trust Company by Katelyn W Harrell (Harrell, Katelyn) (Entered: 07/10/2023) |
| 08/01/2023 | 168 | MINUTE entry before the Honorable Sheila M. Finnegan: Magistrate Judge telephone status hearing held on 8/1/2023, and continued to 9/6/2023 at 9:15 a.m. The parties report continued progress in completing written and oral discovery prior to the 9/7/2023 fact discovery deadline but a fair amount remains to be done. By 8/31/2023, the parties are to file a joint status report. The toll-free number for the hearing is 877-336-1831, access code 5995354. Persons granted remote access to proceedings are reminded of the prohibition against recording and rebroadcasting of court proceedings. Mailed notice (sxw) (Entered: 08/02/2023) |
| 08/14/2023 | 169 | MOTION by Plaintiff Matthew Daly for extension of time to complete discovery<br><br>Presented before District Judge<br><br>(Attachments: # 1 Text of Proposed Order)(Field, Charles) (Entered: 08/14/2023) |
| 08/14/2023 | 170 | NOTICE of Motion by Charles Henry Field, Jr for presentment of motion for extension of time to complete discovery 169 before Honorable John Robert Blakey on 8/23/2023 at 11:00 AM. (Field, Charles) (Entered: 08/14/2023) |
| 08/15/2023 | 171 | MINUTE entry before the Honorable John Robert Blakey: The Court grants the parties' motion to extend time 169 and sets revised case management dates as follows: the parties shall complete fact discovery by 9/28/23, disclose initial experts by 11/2/23, disclose rebuttal experts by 12/8/23, and complete expert discovery by 1/26/24. and reports by 12/8/23. The Court strikes the 8/23/23 Notice of Motion date and also expands the referral in this case to authorize Magistrate Judge Finnegan to manage all discovery-related dates. Mailed notice (gel, ) (Entered: 08/15/2023) |
| 08/31/2023 | 172 | STATUS Report *Joint Status Report in Response to August 1, 2023 Minute Entry* by Matthew Daly<br><br>Presented before Magistrate Judge<br><br>(Field, Charles) (Entered: 08/31/2023) |
| 09/01/2023 | 173 | MINUTE entry before the Honorable Sheila M. Finnegan: The Court has reviewed the 8/31/2023 joint status report indicating there are no discovery disputes and requesting to reset the 9/6/2023 telephone status given the district judge's extension of the fact discovery deadline to 9/28/2023. The 9/6/2023 telephone status is cancelled and reset to 10/3/2023 at 9:30 a.m. for the parties to confirm that fact discovery has been completed. The toll-free number for the hearing is 877-336-1831, access code 5995354. Persons granted remote access to proceedings are reminded of the prohibition against recording and rebroadcasting of court proceedings. Mailed notice (sxw) (Entered: 09/01/2023) |

| | | |
|---|---|---|
| 09/19/2023 | 174 | NOTICE by Russell Kornblith of Change of Address (Kornblith, Russell) (Entered: 09/19/2023) |
| 09/19/2023 | 175 | NOTICE by David Sanford of Change of Address (Sanford, David) (Entered: 09/19/2023) |
| 10/03/2023 | 176 | NOTICE by Charles Henry Field, Jr of Change of Address (Field, Charles) (Entered: 10/03/2023) |
| 10/03/2023 | 177 | MINUTE entry before the Honorable Sheila M. Finnegan: Magistrate Judge telephone status hearing held on 10/3/2023. The parties report that fact discovery is completed except for some small follow-up items described during the hearing that they expect to resolve in the next two weeks. Joint status report is due by 10/20/2023 with update. If the parties would like to schedule a settlement conference, they may contact the courtroom deputy at any time for available dates. Mailed notice. (as, ) (Entered: 10/03/2023) |
| 10/20/2023 | 178 | STATUS Report *Joint Status Report in Response to October 3, 2023 Minute Entry* by West Monroe Partners, Inc. <br><br> Presented before District Judge <br><br> (Levin, Samuel) (Entered: 10/20/2023) |
| 10/23/2023 | 179 | MINUTE entry before the Honorable Sheila M. Finnegan: Telephone status hearing is set for 11/7/2023 at 9:15 a.m. The toll-free number for the hearing is 877-336-1831, access code 5995354. Persons granted remote access to proceedings are reminded of the prohibition against recording and rebroadcasting of court proceedings. Mailed notice (sxw) (Entered: 10/23/2023) |
| 11/01/2023 | 180 | STIPULATION *Joint Stipulation Regarding Stay of Case Pending Exhaustion of Administrative Claim* (Golumbic, Lars) (Entered: 11/01/2023) |
| 11/02/2023 | 181 | MINUTE entry before the Honorable John Robert Blakey: By stipulation 180 , the Court hereby stays this matter pending resolution of Plaintiff's administrative claim, vacates all set dates and deadlines, and denies without prejudice Plaintiff's class certification motion 147 . The parties shall file an updated status report by 4/5/24 or within two weeks of any decision on Plaintiff's administrative claim, whichever occurs first. Mailed notice (gel, ) (Entered: 11/02/2023) |
| 11/02/2023 | 182 | MINUTE entry before the Honorable Sheila M. Finnegan: In light of the district judge's order granting a stay of this matter and vacating all set dates and deadlines 179 , the telephone status hearing on 11/7/2023 is cancelled. Mailed notice (sxw) (Entered: 11/02/2023) |
| 12/28/2023 | 183 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide |

| | | |
|---|---|---|
| | | additional information. Signed by the Executive Committee on 12/28/2023: Mailed notice. (tg, ) (Entered: 12/28/2023) |
| 04/05/2024 | 184 | STATUS Report *[Joint] in Response to November 2, 2023 Minute Entry* by West Monroe Partners, Inc.<br><br>Presented before Magistrate Judge<br><br>(Levin, Samuel) (Entered: 04/05/2024) |
| 04/08/2024 | 185 | MINUTE entry before the Honorable John Robert Blakey: Based upon the representations in the parties' 4/5/24 status report 184 , the Court orders the parties to file an updated status report by 4/22/24 confirming that the administrative claim process is complete and proposing reasonable case management dates. Mailed notice (gel, ) (Entered: 04/08/2024) |
| 04/22/2024 | 186 | STATUS Report *Joint Status Report in Response to April 8, 2024 Minute Order* by West Monroe Partners, Inc.<br><br>Presented before District Judge<br><br>(Levin, Samuel) (Entered: 04/22/2024) |
| 04/24/2024 | 187 | MINUTE entry before the Honorable John Robert Blakey: Based upon the representations in the parties' 4/22/24 status report 186 , the Court lifts the stay imposed 11/2/23, see 181 , and sets additional case management dates as follows: Plaintiff shall file any class certification motion by 5/1/24, Defendant shall respond by 5/22/24, and Plaintiff shall file any reply by 6/5/24; additionally, the parties shall disclose initial experts and reports by 7/12/24, disclose rebuttal experts and reports by 8/23/24, and complete all expert discovery by 10/4/24. The Court encourages the parties to exhaust all possibility of settlement before spending time and money on expert discovery; to this end, if he has not yet done so, Plaintiff shall make a formal, written demand by 5/8/24, and Defendants shall respond in writing by 5/15/24. If at any time the parties agree that a settlement conference with Magistrate Judge Finnegan could be helpful, they should call chambers to so advise. Absent such agreement, the parties shall file an updated status report by 9/20/24, confirming that they have exhausted all possibility of settlement, confirming that they are on track to complete all discovery by 10/4/24, and indicating definitively whether either side will seek summary judgment. Mailed notice. (kp, ) (Entered: 04/24/2024) |
| 05/01/2024 | 188 | MOTION by Plaintiff Matthew Daly to certify class *(Renewed)*<br><br>Presented before District Judge<br><br>Responses due by 5/22/2024 (Field, Charles) (Entered: 05/01/2024) |
| 05/01/2024 | 189 | NOTICE of Motion by Charles Henry Field, Jr for presentment of motion to certify class 188 before Honorable John Robert Blakey on 5/8/2024 at 11:00 AM. (Field, Charles) (Entered: 05/01/2024) |
| 05/07/2024 | 190 | MINUTE entry before the Honorable John Robert Blakey: Having already set a briefing schedule for Plaintiff's motion to certify 188 , see 187 , the Court strikes the 5/8/24 Notice of Motion date. Mailed notice (gel, ) (Entered: 05/07/2024) |
| 05/10/2024 | 191 | ATTORNEY Appearance for Defendant Argent Trust Company by Zeke Nathaniel Katz (Katz, Zeke) (Entered: 05/10/2024) |

| | | |
|---|---|---|
| 05/22/2024 | 192 | MEMORANDUM by Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. in Opposition to motion to certify class 188 (Attachments: # 1 Declaration of L. Golumbic, # 2 Exhibit A to L. Golumbic Declaration, # 3 Exhibit B to L. Golumbic Declaration, # 4 Exhibit C to L. Golumbic Declaration, # 5 Exhibit D to L. Golumbic Declaration, # 6 Exhibit E to L. Golumbic Declaration, # 7 Exhibit F to L. Golumbic Declaration, # 8 Exhibit G to L. Golumbic Declaration, # 9 Exhibit H to L. Golumbic Declaration, # 10 Exhibit I to L. Golumbic Declaration, # 11 Exhibit J to L. Golumbic Declaration, # 12 Exhibit K to L. Golumbic Declaration, # 13 Exhibit L to L. Golumbic Declaration, # 14 Exhibit M to L. Golumbic Declaration, # 15 Exhibit N to L. Golumbic Declaration, # 16 Exhibit O to L. Golumbic Declaration, # 17 Exhibit P to L. Golumbic Declaration, # 18 Exhibit Q to L. Golumbic Declaration, # 19 Exhibit R to L. Golumbic Declaration)(Golumbic, Lars) (Entered: 05/22/2024) |
| 05/22/2024 | 193 | SEALED DOCUMENT by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. (Attachments: # 1 Exhibit I to L. Golumbic Declaration, # 2 Exhibit L to L. Golumbic Declaration, # 3 Exhibit M to L. Golumbic Declaration, # 4 Exhibit N to L. Golumbic Declaration)(Golumbic, Lars) (Entered: 05/22/2024) |
| 06/05/2024 | 194 | REPLY by Plaintiff Matthew Daly to motion to certify class 188 (Attachments: # 1 Declaration of C. Field, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5)(Field, Charles) (Entered: 06/05/2024) |
| 06/05/2024 | 195 | MOTION by Plaintiff Matthew Daly to seal document reply 194<br><br>Presented before District Judge<br><br>(Attachments: # 1 Notice of Filing Plaintiff's motion for leave to file unredacted Reply and a supporting exhibit under seal)(Field, Charles) (Entered: 06/05/2024) |
| 06/05/2024 | 196 | SEALED DOCUMENT by Plaintiff Matthew Daly *Unredacted Reply* (Attachments: # 1 Exhibit 5)(Field, Charles) (Entered: 06/05/2024) |
| 06/05/2024 | 197 | NOTICE of Motion by Charles Henry Field, Jr for presentment of motion to seal document, 195 before Honorable John Robert Blakey on 6/12/2024 at 11:00 AM. (Field, Charles) (Entered: 06/05/2024) |
| 06/10/2024 | 198 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Plaintiff's motion to seal 195 and strikes the 6/12/24 Notice of Motion date. Mailed notice (gel, ) (Entered: 06/10/2024) |
| 06/18/2024 | 199 | MOTION by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. for Leave to File a Surreply in Opposition to Plaintiff's Renewed Motion for Class Certification<br><br>Presented before District Judge<br><br>(Attachments: # 1 Notice of Filing Defendants' Motion for Leave to File a Surreply in Opposition to Plaintiff's Renewed Motion for Class Certification)(Golumbic, Lars) (Entered: 06/18/2024) |
| 06/21/2024 | 200 | RESPONSE by Matthew Dalyin Opposition to MOTION by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. for Leave to File a |

| | | |
|---|---|---|
| | | Surreply in Opposition to Plaintiff's Renewed Moti 199 (Field, Charles) (Entered: 06/21/2024) |
| 06/21/2024 | 201 | MOTION by Attorney Brenton Vincent to withdraw as attorney for Argent Trust Company. No party information provided<br><br>Presented before Magistrate Judge<br><br>(Katz, Zeke) (Entered: 06/21/2024) |
| 06/26/2024 | 202 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Defendants' motion for leave to file a two-page sur-reply 199 and strikes the 6/26/24 Notice of Motion date. The Court also grants Defendant's motion for leave to withdraw the appearance of Brenton Vincent 201 and directs the Clerk to remove Attorney Vincent's name from the docket in this case. Mailed notice (gel, ) (Entered: 06/26/2024) |
| 06/28/2024 | 203 | SUR-REPLY by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to motion to certify class 188 (Golumbic, Lars) (Entered: 06/28/2024) |
| 09/20/2024 | 204 | STATUS Report *Joint Status Report in Response to April 24, 2024 Minute Order* by Argent Trust Company, West Monroe Partners, Inc.<br><br>Presented before District Judge<br><br>(Levin, Samuel) (Entered: 09/20/2024) |
| 09/23/2024 | 205 | MINUTE entry before the Honorable John Robert Blakey: The parties shall file an updated status report by 10/11/24 confirming that expert discovery is complete and proposing a reasonable summary judgment briefing schedule. Mailed notice (gel, ) (Entered: 09/23/2024) |
| 10/11/2024 | 206 | MOTION by Plaintiff Matthew Daly to compel *the Production of Documents and Related Testimony From Defendants' Expert*<br><br>Presented before Magistrate Judge<br><br>(Attachments: # 1 Declaration of R. Kornblith, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8)(Field, Charles) (Entered: 10/11/2024) |
| 10/11/2024 | 207 | MOTION by Plaintiff Matthew Daly to seal *Defendants' Expert Report and Deposition Testimony Excerpts*<br><br>Presented before Magistrate Judge<br><br>(Kornblith, Russell) (Entered: 10/11/2024) |
| 10/11/2024 | 208 | SEALED DOCUMENT by Plaintiff Matthew Daly *Exhibit 2* (Attachments: # 1 Exhibit 3) (Kornblith, Russell) (Entered: 10/11/2024) |
| 10/11/2024 | 209 | STATUS Report *Joint Status Report in Response to September 23, 2024 Minute Entry* by Matthew Daly<br><br>Presented before District Judge<br><br>(Field, Charles) (Entered: 10/11/2024) |

| | | |
|---|---|---|
| 10/22/2024 | 210 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Plaintiff's unopposed motion to seal 207 and orders Defendants to respond to Plaintiff's motion to compel 206 by 11/4/24. Additionally, having reviewed the parties' 10/11/24 status report 209 , the Court sets additional case management dates as follows: Defendants shall move for summary judgment by 1/17/25; Plaintiff shall respond by 3/18/25; and Defendants shall file any reply by 4/17/25. This is a generous schedule, and the Court will not extend it absent a proper showing. Mailed notice (gel, ) (Entered: 10/22/2024) |
| 10/31/2024 | 211 | MOTION by Plaintiff Matthew Daly to set a briefing schedule *(Joint Motion to Modify Briefing Schedule)*<br><br>Presented before District Judge<br><br>(Field, Charles) (Entered: 10/31/2024) |
| 11/05/2024 | 212 | MINUTE entry before the Honorable John Robert Blakey: Plaintiff's joint motion to modify briefing schedule 211 is granted and any response to Plaintiff's motion to compel shall be filed on or before 11/11/2024 and any reply shall be filed on or before 11/25/2024. All parties' motions for summary judgment and related briefing shall follow the briefing schedule previously set by the Court (see 210 ). Counsel is reminded that all motions shall be noticed for presentment or may be stricken. Mailed notice (gel, ) (Entered: 11/05/2024) |
| 11/11/2024 | 213 | RESPONSE by West Monroe Partners, Inc., The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., Argent Trust Companyin Opposition to MOTION by Plaintiff Matthew Daly to compel *the Production of Documents and Related Testimony From Defendants' Expert*<br><br>Presented before Magistrate Judge<br><br>206 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K)(Golumbic, Lars) (Entered: 11/11/2024) |
| 11/25/2024 | 214 | REPLY by Matthew Daly to response in opposition to motion,, 213 (Attachments: # 1 Exhibit 1)(Kornblith, Russell) (Entered: 11/25/2024) |
| 12/27/2024 | 215 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/27/2024: Mailed notice. (tg, ) (Entered: 12/27/2024) |
| 12/27/2024 | 216 | MINUTE entry before the Honorable John Robert Blakey: The Court denies Plaintiff's motion to compel and declines to order Defendants' expert to produce expert reports governed by confidentiality orders in other cases, as Plaintiff has failed to articulate any prejudice from not having access to prior reports or testimony from other cases. The |

| | | |
|---|---|---|
| | | Court also denies Plaintiff's request to depose Mr. May for an additional two hours concerning his prior reports or testimony. The prior summary judgment schedule stands. Mailed notice. (evw, ) (Entered: 12/30/2024) |
| 12/31/2024 | 217 | MINUTE entry before the Honorable Sheila M. Finnegan. All matters relating to the referral have been completed so the referral is closed. Mailed notice (sxw) (Entered: 12/31/2024) |
| 01/08/2025 | 218 | MOTION by Defendants West Monroe Partners, Inc., The Benefits Committee of West Monroe Partners, Inc. for leave to file excess pages *JOINT MOTION FOR LEAVE TO FILE BRIEF IN EXCESS OF FIFTEEN PAGES*<br><br>(Hesser, Jeffrey) (Entered: 01/08/2025) |
| 01/08/2025 | 219 | NOTICE of Motion by Jeffrey Aaron Hesser for presentment of motion for leave to file excess pages 218 before Honorable John Robert Blakey on 1/15/2025 at 11:00 AM. (Hesser, Jeffrey) (Entered: 01/08/2025) |
| 01/13/2025 | 220 | MINUTE entry before the Honorable John Robert Blakey: The Court grants the parties' joint motion for leave to file oversized briefs 218 and strikes the 1/15/25 Notice of Motion date. The parties may file opening and response briefs of up to 20 pages; Defendants' reply shall comply with LR 7.1. Mailed notice. (evw, ) (Entered: 01/14/2025) |
| 01/17/2025 | 221 | MOTION by Plaintiff Matthew Daly for partial summary judgment<br><br>(Kornblith, Russell) (Entered: 01/17/2025) |
| 01/17/2025 | 222 | MEMORANDUM by Matthew Daly in support of motion for partial summary judgment 221 (Kornblith, Russell) (Entered: 01/17/2025) |
| 01/17/2025 | 223 | RULE 56.1 Statement by Matthew Daly regarding motion for partial summary judgment 221 (Attachments: # 1 Declaration of R. Kornblith, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 7, # 9 Exhibit 8, # 10 Exhibit 9, # 11 Exhibit 10, # 12 Exhibit 11, # 13 Exhibit 12, # 14 Exhibit 13, # 15 Exhibit 14, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 23, # 25 Exhibit 24, # 26 Exhibit 25)(Kornblith, Russell) (Entered: 01/17/2025) |
| 01/17/2025 | 224 | NOTICE of Motion by Russell Kornblith for presentment of motion for partial summary judgment 221 before Honorable John Robert Blakey on 1/31/2025 at 11:00 AM. (Kornblith, Russell) (Entered: 01/17/2025) |
| 01/17/2025 | 225 | MOTION by Plaintiff Matthew Daly to seal<br><br>(Kornblith, Russell) (Entered: 01/17/2025) |
| 01/17/2025 | 226 | SEALED DOCUMENT by Plaintiff Matthew Daly *Memorandum in Support* (Attachments: # 1 Statement of Material Facts, # 2 Exhibit 1, # 3 Exhibit 4, # 4 Exhibit 6, # 5 Exhibit 7, # 6 Exhibit 10, # 7 Exhibit 11, # 8 Exhibit 12, # 9 Exhibit 15, # 10 Exhibit 17, # 11 Exhibit 18, # 12 Exhibit 19, # 13 Exhibit 20, # 14 Exhibit 22, # 15 Exhibit 23, # 16 Exhibit 24, # 17 Exhibit 25)(Kornblith, Russell) (Entered: 01/17/2025) |
| 01/17/2025 | 227 | NOTICE of Motion by Russell Kornblith for presentment of motion to seal 225 before Honorable John Robert Blakey on 1/31/2025 at 11:00 AM. (Kornblith, Russell) (Entered: 01/17/2025) |
| 01/17/2025 | 228 | MOTION by Defendant Argent Trust Company for summary judgment<br><br>(Katz, Zeke) (Entered: 01/17/2025) |

| | | |
|---|---|---|
| 01/17/2025 | 229 | MEMORANDUM by Argent Trust Company in support of motion for summary judgment 228 (Katz, Zeke) (Entered: 01/17/2025) |
| 01/17/2025 | 230 | MOTION by Defendants West Monroe Partners, Inc., The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., Argent Trust Company to seal<br><br>(Attachments: # 1 Text of Proposed Order)(Golumbic, Lars) (Entered: 01/17/2025) |
| 01/17/2025 | 231 | NOTICE of Motion by Lars C. Golumbic for presentment of motion to seal, 230 before Honorable John Robert Blakey on 1/31/2025 at 11:00 AM. (Golumbic, Lars) (Entered: 01/17/2025) |
| 01/17/2025 | 232 | RULE 56.1(d) Statement by Argent Trust Company regarding motion for summary judgment 228 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62)(Katz, Zeke) (Entered: 01/17/2025) |
| 01/17/2025 | 233 | MOTION by Defendants West Monroe Partners, Inc., The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., Argent Trust Company for summary judgment<br><br>(Attachments: # 1 Declaration of Lars C. Golumbic, # 2 Text of Proposed Order) (Golumbic, Lars) (Entered: 01/17/2025) |
| 01/17/2025 | 234 | SEALED EXHIBIT by Defendant Argent Trust Company regarding Rule 56 statement,,,,, 232 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62)(Katz, Zeke) (Entered: 01/17/2025) |
| 01/17/2025 | 235 | MOTION by Defendant Argent Trust Company to seal document exhibit,,,,, 234<br><br>(Katz, Zeke) (Entered: 01/17/2025) |

| | | |
|---|---|---|
| 01/17/2025 | 236 | NOTICE of Motion by Zeke Nathaniel Katz for presentment of motion for summary judgment 228 , motion to seal document 235 before Honorable John Robert Blakey on 1/31/2025 at 11:00 AM. (Katz, Zeke) (Entered: 01/17/2025) |
| 01/17/2025 | 237 | SEALED DOCUMENT by Defendants West Monroe Partners, Inc., The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., Argent Trust Company *Memorandum In Support of Motion for Summary Judgment* (Attachments: # 1 Statement of Material Facts, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6, # 8 Exhibit 6, continued, # 9 Exhibit 7, # 10 Exhibit 8, # 11 Exhibit 9, # 12 Exhibit 10, # 13 Exhibit 11, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 14, # 17 Exhibit 15, # 18 Exhibit 15, continued, # 19 Exhibit 15, continued, # 20 Exhibit 16, # 21 Exhibit 17, # 22 Exhibit 18, # 23 Exhibit 19, # 24 Exhibit 20, # 25 Exhibit 21, # 26 Exhibit 22, # 27 Exhibit 23, # 28 Exhibit 24, # 29 Exhibit 25, # 30 Exhibit 26, # 31 Exhibit 27, # 32 Exhibit 28, # 33 Exhibit 29, # 34 Exhibit 30, # 35 Exhibit 31, # 36 Exhibit 32, # 37 Exhibit 33, # 38 Exhibit 34, # 39 Exhibit 35, # 40 Exhibit 36, # 41 Exhibit 37, # 42 Exhibit 38, # 43 Exhibit 39, # 44 Exhibit 40, # 45 Exhibit 41, # 46 Exhibit 42, # 47 Exhibit 43, # 48 Exhibit 44, # 49 Exhibit 45, # 50 Exhibit 46, # 51 Exhibit 47)(Golumbic, Lars) (Entered: 01/17/2025) |
| 01/17/2025 | 238 | NOTICE of Motion by Lars C. Golumbic for presentment of motion for summary judgment, 233 before Honorable John Robert Blakey on 1/31/2025 at 11:00 AM. (Golumbic, Lars) (Entered: 01/17/2025) |
| 01/22/2025 | 239 | MINUTE entry before the Honorable John Robert Blakey: The Court grants the parties' motions to seal 225 , 230 , 235 , and strikes the 1/31/25 Notice of Motion date as to all motions. The Court takes the parties' summary judgment motions 221 , 228 , 233 under advisement; the parties shall brief these motions according to the briefing schedule previously set by the Court, see 210 . Mailed notice. (evw, ) (Entered: 01/23/2025) |
| 03/18/2025 | 240 | MOTION by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. for leave to file *Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment, Response to Plaintiff's Statement of Material Facts, and Supporting Exhibits Provisionally Under Seal* (Attachments: # 1 Text of Proposed Order)(Golumbic, Lars) (Entered: 03/18/2025) |
| 03/18/2025 | 241 | NOTICE of Motion by Lars C. Golumbic for presentment of motion for leave to file, 240 before Honorable John Robert Blakey on 3/26/2025 at 11:00 AM. (Golumbic, Lars) (Entered: 03/18/2025) |
| 03/18/2025 | 242 | SEALED DOCUMENT by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. *Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment* (Attachments: # 1 Response to Statement of Material Facts, # 2 Declaration of Lars C. Golumbic, # 3 Exhibit 48, # 4 Exhibit 49)(Golumbic, Lars) (Entered: 03/18/2025) |
| 03/18/2025 | 243 | MEMORANDUM by Argent Trust Company in Opposition to motion for partial summary judgment 221 (Harrell, Katelyn) (Entered: 03/18/2025) |
| 03/18/2025 | 244 | RESPONSE by Matthew Dalyin Opposition to MOTION by Defendants West Monroe Partners, Inc., The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., Argent Trust Company for summary judgment 233 (Attachments: # 1 Statement of Additional Facts, # 2 Response to Statement of Undisputed Material Facts)(Kornblith, Russell) (Entered: 03/18/2025) |

| | | |
|---|---|---|
| 03/18/2025 | 245 | RESPONSE by Matthew Dalyin Opposition to MOTION by Defendant Argent Trust Company for summary judgment<br><br>228 (Attachments: # 1 Statement of Additional Facts, # 2 Response to Statement of Undisputed Material Facts)(Kornblith, Russell) (Entered: 03/18/2025) |
| 03/18/2025 | 246 | DECLARATION of Russell Kornblith *in Support of Responses in Opposition to Defendants' Motions for Summary Judgment* (Attachments: # 1 Exhibit 01, # 2 Exhibit 02, # 3 Exhibit 03, # 4 Exhibit 04, # 5 Exhibit 05, # 6 Exhibit 06, # 7 Exhibit 07, # 8 Exhibit 08, # 9 Exhibit 09, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46, # 47 Exhibit 47, # 48 Exhibit 48, # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73)(Kornblith, Russell) (Entered: 03/18/2025) |
| 03/18/2025 | 247 | MOTION by Plaintiff Matthew Daly to seal<br><br>(Kornblith, Russell) (Entered: 03/18/2025) |
| 03/18/2025 | 248 | NOTICE of Motion by Russell Kornblith for presentment of motion to seal 247 before Honorable John Robert Blakey on 4/1/2025 at 11:00 AM. (Kornblith, Russell) (Entered: 03/18/2025) |
| 03/18/2025 | 249 | SEALED DOCUMENT by Plaintiff Matthew Daly *Memorandum of Law Opposing West Monroe MSJ* (Attachments: # 1 West Monroe Statement of Additional Facts, # 2 Response to West Monroe Statement of Undisputed Material Facts, # 3 Memorandum of Law Opposing Argent MSJ, # 4 Argent Statement of Additional Facts, # 5 Response to Argent Statement of Undisputed Material Facts, # 6 Declaration of R. Kornblith ISO Responses to MSJ, # 7 Exhibit 01, # 8 Exhibit 02, # 9 Exhibit 03, # 10 Exhibit 04, # 11 Exhibit 05, # 12 Exhibit 06, # 13 Exhibit 08, # 14 Exhibit 12, # 15 Exhibit 13, # 16 Exhibit 15, # 17 Exhibit 16, # 18 Exhibit 17, # 19 Exhibit 18, # 20 Exhibit 19, # 21 Exhibit 20, # 22 Exhibit 21, # 23 Exhibit 22, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 32, # 31 Exhibit 33, # 32 Exhibit 34, # 33 Exhibit 35, # 34 Exhibit 36, # 35 Exhibit 37, # 36 Exhibit 38, # 37 Exhibit 39, # 38 Exhibit 40, # 39 Exhibit 41, # 40 Exhibit 42, # 41 Exhibit 43, # 42 Exhibit 44, # 43 Exhibit 45, # 44 Exhibit 46, # 45 Exhibit 47, # 46 Exhibit 48, # 47 Exhibit 49, # 48 Exhibit 50, # 49 Exhibit 51, # 50 Exhibit 52, # 51 Exhibit 53, # 52 Exhibit 54, # 53 Exhibit 55, # 54 Exhibit 56, # 55 Exhibit 57, # 56 Exhibit 58, # 57 Exhibit 59, # 58 Exhibit 61, # 59 Exhibit 63, # 60 Exhibit 64, # 61 Exhibit 65, # 62 Exhibit 66, # 63 Exhibit 67, # 64 Exhibit 69, # 65 Exhibit 70, # 66 Exhibit 71, # 67 Exhibit 73)(Kornblith, Russell) (Entered: 03/18/2025) |
| 03/19/2025 | 250 | MOTION by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to seal *Docket Numbers 244, 244-1, 245, 245-1, 245-2, 246-2, 246-31, and 246-68 Provisionally* |

| | | |
|---|---|---|
| | | (Attachments: # 1 Text of Proposed Order, # 2 Redacted Dkt. 244, # 3 Redacted Dkt. 245, # 4 Redacted Dkt. 245-2, # 5 Redacted Dkt. 246-2)(Golumbic, Lars) (Entered: 03/19/2025) |
| 03/24/2025 | 251 | MINUTE entry before the Honorable John Robert Blakey: The Court grants the parties' motions to seal 240 , 247 , 250 and strikes the 3/26/25 and 4/1/25 Notice of Motion dates. Mailed notice. (evw, ) (Entered: 03/24/2025) |
| 04/17/2025 | 252 | REPLY by Plaintiff Matthew Daly to memorandum in opposition to motion 243 , sealed document, 242 (Kornblith, Russell) (Entered: 04/17/2025) |
| 04/17/2025 | 253 | MOTION by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. for leave to file *Reply Brief in Support of their Motion for Summary Judgment, Response to Plaintiff's Statement of Additional Facts, and Supporting Exhibits Provisionally Under Seal* <br><br>(Attachments: # 1 Text of Proposed Order)(Golumbic, Lars) (Entered: 04/17/2025) |
| 04/17/2025 | 254 | NOTICE of Motion by Lars C. Golumbic for presentment of motion for leave to file, 253 before Honorable John Robert Blakey on 4/23/2025 at 11:00 AM. (Golumbic, Lars) (Entered: 04/17/2025) |
| 04/17/2025 | 255 | SEALED DOCUMENT by Defendants The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. *Reply in Support of their Motion for Summary Judgment* (Attachments: # 1 Response to Plaintiff's L.R. 56.1 Statement of Additional Material Facts, # 2 Declaration of Lars C. Golumbic, # 3 Corrected Statement of Undisputed Material Facts, # 4 Exhibit 50, # 5 Exhibit 51)(Golumbic, Lars) (Entered: 04/17/2025) |
| 04/17/2025 | 256 | REPLY by Defendant Argent Trust Company to motion for summary judgment 228 (Attachments: # 1 Declaration Declaration of K. Harrell, # 2 Exhibit Exhibit 63, # 3 Exhibit Exhibit 64)(Harrell, Katelyn) (Entered: 04/17/2025) |
| 04/17/2025 | 257 | SEALED DOCUMENT by Defendant Argent Trust Company *Response to Plaintiff's Statement of Additional Facts* (Attachments: # 1 63, # 2 64)(Harrell, Katelyn) (Entered: 04/17/2025) |
| 04/17/2025 | 258 | MOTION by Defendant Argent Trust Company to seal *Dkt. 257* <br><br>(Attachments: # 1 Text of Proposed Order)(Harrell, Katelyn) (Entered: 04/17/2025) |
| 04/18/2025 | 259 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Defendant Argent's unopposed motion to seal 258 , grants the West Monroe Defendants' unopposed motion for leave to file a reply brief 253 , and strikes the 4/23/25 Notice of Motion date. Mailed notice. (evw, ) (Entered: 04/18/2025) |
| 04/18/2025 | 260 | MOTION by Defendant Argent Trust Company to seal *Docket No. 256* <br><br>(Attachments: # 1 Text of Proposed Order)(Harrell, Katelyn) (Entered: 04/18/2025) |
| 04/18/2025 | 261 | SEALED DOCUMENT by Defendant Argent Trust Company *Reply Memorandum In Support of Argent Trust Company's Motion for Summary Judgment* (Harrell, Katelyn) (Entered: 04/18/2025) |
| 04/18/2025 | 262 | NOTICE of Motion by Katelyn W Harrell for presentment of motion to seal 260 before Honorable John Robert Blakey on 5/1/2025 at 11:00 AM. (Harrell, Katelyn) (Entered: 04/18/2025) |

| | | |
|---|---|---|
| 04/28/2025 | 263 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Defendant Argent's unopposed motion to seal 260 and strikes the 5/1/25 Notice of Motion date. The Court also reminds counsel that civil motions must be noticed for Wednesdays, not Thursdays. Mailed notice. (evw, ) (Entered: 04/28/2025) |
| 05/12/2025 | 264 | STIPULATION *Joint Stipulation and Motion to File Permanently Under Seal* (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10, # 11 Exhibit 11, # 12 Exhibit 12, # 13 Exhibit 13, # 14 Exhibit 14, # 15 Exhibit 15, # 16 Exhibit 16, # 17 Exhibit 17, # 18 Exhibit 18, # 19 Exhibit 19, # 20 Exhibit 20, # 21 Exhibit 21, # 22 Exhibit 22, # 23 Exhibit 23, # 24 Exhibit 24, # 25 Exhibit 25, # 26 Exhibit 26, # 27 Exhibit 27, # 28 Exhibit 28, # 29 Exhibit 29, # 30 Exhibit 30, # 31 Exhibit 31, # 32 Exhibit 32, # 33 Exhibit 33, # 34 Exhibit 34, # 35 Exhibit 35, # 36 Exhibit 36, # 37 Exhibit 37, # 38 Exhibit 38, # 39 Exhibit 39, # 40 Exhibit 40, # 41 Exhibit 41, # 42 Exhibit 42, # 43 Exhibit 43, # 44 Exhibit 44, # 45 Exhibit 45, # 46 Exhibit 46 (Part 1), # 47 Exhibit 47 (Part 2), # 48 Exhibit 48 (Part 3), # 49 Exhibit 49, # 50 Exhibit 50, # 51 Exhibit 51, # 52 Exhibit 52, # 53 Exhibit 53, # 54 Exhibit 54, # 55 Exhibit 55, # 56 Exhibit 56, # 57 Exhibit 57, # 58 Exhibit 58, # 59 Exhibit 59, # 60 Exhibit 60, # 61 Exhibit 61, # 62 Exhibit 62, # 63 Exhibit 63, # 64 Exhibit 64, # 65 Exhibit 65, # 66 Exhibit 66, # 67 Exhibit 67, # 68 Exhibit 68, # 69 Exhibit 69, # 70 Exhibit 70, # 71 Exhibit 71, # 72 Exhibit 72, # 73 Exhibit 73, # 74 Exhibit 74, # 75 Exhibit 75, # 76 Exhibit 76, # 77 Exhibit 77, # 78 Exhibit 78, # 79 Exhibit 79, # 80 Exhibit 80, # 81 Exhibit 81, # 82 Exhibit 82, # 83 Exhibit 83, # 84 Exhibit 84, # 85 Exhibit 85, # 86 Exhibit 86, # 87 Exhibit 87, # 88 Exhibit 88, # 89 Exhibit 89, # 90 Exhibit 90, # 91 Exhibit 91, # 92 Exhibit 92, # 93 Exhibit 93, # 94 Exhibit 94, # 95 Exhibit 95, # 96 Exhibit 96, # 97 Exhibit 97, # 98 Exhibit 98, # 99 Exhibit 99, # 100 Exhibit 100, # 101 Exhibit 101, # 102 Exhibit 102, # 103 Exhibit 103, # 104 Exhibit 104 (Part 1), # 105 Exhibit 105 (Part 2), # 106 Exhibit 106 (Part 3), # 107 Exhibit 107, # 108 Exhibit 108, # 109 Exhibit 109, # 110 Exhibit 110, # 111 Exhibit 111, # 112 Exhibit 112, # 113 Exhibit 113, # 114 Exhibit 114, # 115 Exhibit 115)(Golumbic, Lars) (Entered: 05/12/2025) |
| 06/17/2025 | 265 | MOTION by Plaintiff Matthew Daly to withdraw *James Hannaway as Counsel of Record* (Kornblith, Russell) (Entered: 06/17/2025) |
| 06/17/2025 | 266 | NOTICE of Motion by Russell Kornblith for presentment of motion to withdraw 265 before Honorable John Robert Blakey on 6/25/2025 at 11:00 AM. (Kornblith, Russell) (Entered: 06/17/2025) |
| 06/18/2025 | 267 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Plaintiff's motion to withdraw the appearance of James Hannaway 265 , strikes the 6/25/25 Notice of Motion date, and directs the clerk to terminate Attorney Hannaway on the docket. Mailed notice. (evw, ) (Entered: 06/18/2025) |
| 07/22/2025 | 268 | MOTION by Defendant Argent Trust Company to withdraw *Zeke Katz as Counsel of Record* (Harrell, Katelyn) (Entered: 07/22/2025) |
| 07/22/2025 | 269 | NOTICE of Motion by Katelyn W Harrell for presentment of motion to withdraw 268 before Honorable John Robert Blakey on 7/30/2025 at 11:00 AM. (Harrell, Katelyn) (Entered: 07/22/2025) |
| 07/25/2025 | 270 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Defendant Argent's motion to withdraw the appearance of Zeke Nathaniel Katz 268 , strikes the 7/30/25 Notice of Motion date, and directs the clerk to terminate Attorney Katz's |

| | | |
|---|---|---|
| | | appearance on the docket. Argent remains represented by other counsel of record. Mailed notice. (evw, ) (Entered: 07/28/2025) |
| 10/06/2025 | 271 | MOTION by Plaintiff Matthew Daly for leave to file *Supplemental Authority in Support of Plaintiff's Motion for Class Certification*<br><br>(Attachments: # 1 Exhibit A)(Kornblith, Russell) (Entered: 10/06/2025) |
| 10/06/2025 | 272 | NOTICE of Motion by Russell Kornblith for presentment of motion for leave to file 271 before Honorable John Robert Blakey on 10/15/2025 at 11:00 AM. (Kornblith, Russell) (Entered: 10/06/2025) |
| 10/08/2025 | 273 | MINUTE entry before the Honorable John Robert Blakey: The Court grants Plaintiff's unopposed motion for leave to file supplemental authority 271 and strikes the 10/15/25 Notice of Motion date. Mailed notice. (evw, ) (Entered: 10/10/2025) |
| 10/10/2025 | 274 | RESPONSE by Defendants Argent Trust Company, The Benefits Committee of West Monroe Partners, Inc., The Board of Directors of West Monroe Partners, Inc., West Monroe Partners, Inc. to notice of motion 272 *and* 271 (Golumbic, Lars) (Entered: 10/10/2025) |
| 12/31/2025 | 275 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this process, this LINK will provide additional information. Signed by the Honorable Virginia M. Kendall on 12/31/2025: Mailed notice. (tg, ) (Entered: 12/31/2025) |
| 03/27/2026 | 276 | MINUTE entry before the Honorable John Robert Blakey: For the reasons explained in the accompanying Memorandum Opinion and Order, the Court grants Plaintiff's renewed motion for class certification, 188 . Enter Order. The parties' summary judgment motions 221 , 228 , 233 , remain under advisement, and the Court will issue a ruling in due course. Mailed notice. (evw, ) (Entered: 03/27/2026) |
| 03/27/2026 | 277 | MEMORANDUM Opinion and Order. Signed by the Honorable John Robert Blakey on 3/27/2026. Mailed notice. (evw, ) (Entered: 03/27/2026) |